**Commonwealth of Massachusetts**
**MIDDLESEX SUPERIOR COURT DEPARTMENT**
**THE TRIAL COURT**
**Woburn**

**Civil Docket#2081CV02483**

I, C. Andrew Johnson, Deputy Assistant Clerk of the Superior Court, Within and for said County

of Middlesex, do certify that the annexed papers are true copies made by photographic process of

pleadings in **2081CV02483** entered in the Superior Court on the **15th** day of **October** in the year

of our Lord 2020.

In testimony whereof, I hereunto set my hand and affix seal of said Middlesex Superior Court at

Woburn in said county, this **7th** day of **July**, in the year of our Lord **Two Thousand**

**Twenty-Three.**



C. Andrew Johnson
Deputy Assistant Clerk

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

**2081CV02483 Cullinane, Scott vs. Town of Concord**

| | | | |
|---|---|---|---|
| **CASE TYPE:** | Actions Involving the State/Municipality | **FILE DATE:** | 10/15/2020 |
| **ACTION CODE:** AB1 | | **CASE TRACK:** | A - Average |
| **DESCRIPTION:** Tortious Action involving the Commonwealth, Municipality, MBTA, etc. | | | |
| **CASE DISPOSITION DATE:**07/10/2023 | | **CASE STATUS:** | Closed |
| **CASE DISPOSITION:** | Transferred to another Court | **STATUS DATE:** | 07/10/2023 |
| **CASE JUDGE:** | | **CASE SESSION:** | Civil H Rm 710 |

| PARTIES |
|---|

| | |
|---|---|
| **Plaintiff**<br>Cullinane, Scott<br><br>Lexington, MA 02173-0003 | **Attorney**                                                    556755<br>Lisa Brodeur-McGan<br>Brodeur-McGan, P.C.<br>Brodeur-McGan, P.C.<br>1380 Main St<br>Suite 202<br>Springfield, MA 01103<br>Work Phone (413) 735-1775<br>Added Date: 10/15/2020 |
| | **Private Counsel**                                            705877<br>Katharine E Shove<br>Brodeur-McGan, P.C.<br>Brodeur-McGan, P.C.<br>1380 Main St 2nd Floor<br>Springfield, MA 01103<br>Work Phone (413) 735-1775<br>Added Date: 09/12/2022 |
| **Defendant**<br>Town of Concord | **Private Counsel**                                            697232<br>Justin Amos<br>Pierce Davis and Perritano LLP<br>Pierce Davis and Perritano LLP<br>10 Post Off Square<br>Suite 1100N<br>Boston, MA 02109<br>Work Phone (617) 350-0950<br>Added Date: 08/23/2022 |



CRTR2709-CR

**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

| Date | Fees/Fines/Costs/Charge | Assessed | Paid | Dismissed | Balance |
|------|-------------------------|----------|------|-----------|---------|
| | FINANCIAL DETAILS | | | | |
| 10/15/2020 | Civil Filing Fee (per Plaintiff) | 240.00 | 240.00 | 0.00 | 0.00 |
| 10/15/2020 | Civil Security Fee (G.L. c. 262, § 4A) | 20.00 | 20.00 | 0.00 | 0.00 |
| 10/15/2020 | Civil Surcharge (G.L. c. 262, § 4C) | 15.00 | 15.00 | 0.00 | 0.00 |
| 10/15/2020 | Fee for Blank Summons or Writ (except Writ of Habeas Corpus) MGL 262 sec 4b | 5.00 | 5.00 | 0.00 | 0.00 |
| | **Total** | **280.00** | **280.00** | **0.00** | **0.00** |

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

| INFORMATIONAL DOCKET ENTRIES | | | |
|---|---|---|---|
| **Date** | **Ref** | **Description** | **Judge** |
| 10/15/2020 | | Attorney appearance<br>On this date Lisa Brodeur-McGan, Esq. added for Plaintiff Scott Cullinane | |
| 10/15/2020 | | Case assigned to:<br>DCM Track A - Average was added on 10/15/2020 | |
| 10/15/2020 | 1 | Original civil complaint filed. | |
| 10/15/2020 | 2 | Civil action cover sheet filed. | |
| 10/15/2020 | | Demand for jury trial entered. | |
| 10/15/2020 | 3 | RESTRICTED INFORMATION - Affidavit of Indigency and request for waiver substitution of state payment of fees and costs filed without Supplemental affidavit<br>Dated 10/15/2020 DENIED. In light of fact that Counsel for Plaintiff has Paid the fee. (Kazanjian,J.) Copy mailed to Plaintiff's Counsel. | |
| 11/16/2020 | 4 | Service Returned for<br>Defendant Town of Concord: Service via certified mail; | |
| 12/18/2020 | 5 | Received from<br>Defendant Town of Concord: Answer with claim for trial by jury; | |
| 12/18/2020 | | Attorney appearance<br>On this date Seth Barnett, Esq. added as Private Counsel for Defendant Town of Concord | |
| 08/23/2022 | | Attorney appearance electronically filed. | |
| 08/23/2022 | | Attorney appearance<br>On this date Justin Amos, Esq. added as Private Counsel for Defendant Town of Concord | |
| 09/12/2022 | | Attorney appearance<br>On this date Katharine E Shove, Esq. added as Private Counsel for Plaintiff Scott Cullinane | |
| 10/11/2022 | 6 | Plaintiff, Defendant Scott Cullinane, Town of Concord's Joint Motion to Extend Discovery and Rule 56 Deadline | |
| 10/14/2022 | | Endorsement on Motion to Extend Discovery and Rule 56 Deadline (#6.0):<br>ALLOWED<br>Joint motion allowed in part as follows: 1) Discovery by 3/1/23, 2) Rule 56 motion served by 4/1/23 and filed by 5/1/23. The parties have not justified a seven month extension of discovery, given the age of the case. So ordered. (Dated: 10/13/22 notice sent 10/14/22<br><br>Judge: Barry-Smith, Hon. Christopher K | Barry-Smith |
| 10/14/2022 | | EDocument sent:<br>A Clerk's Notice (eDoc) was generated and sent to:<br>Plaintiff, Attorney:  Lisa Brodeur-McGan, Esq. lbm@brodeurmcgan.com<br>Plaintiff, Attorney:  Katharine E Shove, Esq. kes@brodeurmcgan.com<br>Defendant, Attorney:  Seth Barnett, Esq. sbarnett@meeb.com<br>Defendant, Attorney:  Justin Amos, Esq. jamos@piercedavis.com | |

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 01/04/2023 | 7 | Defendant Town of Concord's Motion for judgment on the pleadings MRCP 12(c) |
| 01/04/2023 | 7.1 | Town of Concord's Memorandum of Law in support of its Motion for Judgment on the Pleadings |
| 01/04/2023 | 7.2 | Opposition to Defendant's Motion for Judgment on the Pleadings and Plaintiff's Cross-Motion to Amend the Complaint filed by

Applies To: Cullinane, Scott (Plaintiff) |
| 01/04/2023 | 7.3 | Town of Concord's Reply Memorandum in support of its Motion for Judgment on the Pleadings |
| 01/04/2023 | 7.4 | Scott Cullinane's Reply Memorandum in support of Cross-Motion to Amend the Complaint |
| 01/04/2023 | 7.5 | Affidavit of compliance with Superior Court Rule 9A

Applies To: Amos, Esq., Justin (Attorney) on behalf of Town of Concord (Defendant) |
| 01/10/2023 | | The following form was generated:

Notice to Appear
Sent On:  01/10/2023 14:43:41 |
| 02/03/2023 | 8 | Plaintiff, Defendant Scott Cullinane, Town of Concord's Joint Motion to stay or extend discovery pending the town's motion for judgement on the pleadings and the Plaintiff's Cross-Motion to amend. |
| 03/08/2023 | | Matter taken under advisement:  Hearing for Judgment on Pleading scheduled on:
        03/08/2023 02:30 PM
Has been: Held - Under advisement
Hon. David A Deakin, Presiding | Deakin |
| 03/08/2023 | | Endorsement on Motion to stay or extend discovery (#8.0): ALLOWED after hearing, the joint motion is allowed. The discovery deadline shall be extended to sixty days after the issuance of the pending decision on the defendant's motion for judgment on the pleadings. (paper no.7)/ The summary judgment deadline shall be extended by the same period.

Judge: Deakin, Hon. David A | Deakin |
| 03/08/2023 | | EDocument sent:
A Clerk's Notice (eDoc) was generated and sent to:
Plaintiff, Attorney:  Lisa Brodeur-McGan, Esq. lbm@brodeurmcgan.com
Plaintiff, Attorney:  Katharine E Shove, Esq. kes@brodeurmcgan.com
Defendant, Attorney:  Seth Barnett, Esq. sbarnett@meeb.com
Defendant, Attorney:  Justin Amos, Esq. jamos@piercedavis.com |
| 03/17/2023 | 9 | Defendant Town of Concord's Supplemental for briefing in support of its motion for judgment on the pleadings. |
| 03/24/2023 | 10 | Plaintiff Scott Cullinane's Response to Town of Concord's Supplemental Briefing |

CRTR2709-CR



**COMMONWEALTH OF MASSACHUSETTS**
**MIDDLESEX COUNTY**
**Docket Report**

| | | |
|---|---|---|
| 06/29/2023 | Endorsement on Motion for judgment on the pleadings (#7.0): ALLOWED see memo and order. Dated June 27, 2023 | Deakin |
| 06/29/2023 | EDocument sent: | |
| | Clerk's Notice (eDoc) Sent On: 06/29/2023 11:44:57 Notice Sent To: Lisa Brodeur-McGan, Esq. lbm@brodeurmcgan.com Notice Sent To: Katharine E Shove, Esq. kes@brodeurmcgan.com Notice Sent To: Seth Barnett, Esq. sbarnett@meeb.com Notice Sent To: Justin Amos, Esq. jamos@piercedavis.com | |
| 06/29/2023 | Endorsement on Motion to amend (#7.2): ALLOWED see memo and order. Dated June 27, 2023 | Deakin |
| 06/29/2023 | EDocument sent: | |
| | Clerk's Notice (eDoc) Sent On: 06/29/2023 11:50:06 Notice Sent To: Lisa Brodeur-McGan, Esq. lbm@brodeurmcgan.com Notice Sent To: Katharine E Shove, Esq. kes@brodeurmcgan.com Notice Sent To: Seth Barnett, Esq. sbarnett@meeb.com Notice Sent To: Justin Amos, Esq. jamos@piercedavis.com | |
| 06/29/2023   11 | MEMORANDUM & ORDER: | Deakin |
| | ON DEFENDANTS MOTION TO JUDGMENT ON THE PLEADING AND PLAINTIFF CROSS-MOTION TO AMEND COMPLAINT: CONCLUSION   For the foregoing reasons, the Town of Concord's Motion for Judgment on the Pleadings is ALLOWED, and Cullinane's claim under the Wage Act is DISMISSED. Cullinane's Cross-Motion to Amend is also ALLOWED. | |
| | Judge: Deakin, Hon. David A | |
| 06/29/2023 | EDocument sent: | |
| | Clerk's Notice (eDoc) Sent On: 06/29/2023 11:52:31 Notice Sent To: Lisa Brodeur-McGan, Esq. lbm@brodeurmcgan.com Notice Sent To: Katharine E Shove, Esq. kes@brodeurmcgan.com Notice Sent To: Seth Barnett, Esq. sbarnett@meeb.com Notice Sent To: Justin Amos, Esq. jamos@piercedavis.com | |
| 06/30/2023   12 | Amended: amended complaint filed by Scott Cullinane | |

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH

Middlesex, ss.

Superior Court Department
Civil Action No. ᒿ o- 2�५83

Scott Cullinane,
                    Plaintiff

v.

Town of Concord,
                    Defendant

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

OCT 15 2020

CLERK

## COMPLAINT AND DEMAND FOR JURY TRIAL

### THE PARTIES

1) Scott Cullinane (hereinafter referred to as "Plaintiff" or "Cullinane") is a natural person residing in Lexington, Middlesex County, Massachusetts.

2) The Town of Concord, Massachusetts ("Concord" or "the Town") is a duly established municipality in the Commonwealth, located in Middlesex County, Massachusetts.

### FACTS

3) Scott Cullinane was a long-time employee of Concord.

4) Specifically, since 1997 Cullinane was employed as a grounds specialist doing tree maintenance and removal, grounds work, and aerial lift operation work, a position in the Town of Concord's Department of Public Works.

5) In his role as a grounds specialist, Cullinane was required to be on call for emergencies, such as tree removal due to storm damage.

6) As part of his employment agreement, Cullinane was supposed to be paid an extra amount of money for every call to which he responded under certain circumstances.

7)   In October 2017, the Department of Public works was overseen by Dan Rowley and his assistant Keith Baldinger.

8)   On a day in the late fall of 2017, on or about October 29, Cullinane was not working but was on call for the Town.

9)   Cullinane was called to a job to remove a tree.

10)  He completed the job and left the site after being cleared from this call and proceeded home.

11)  On the same night after he was home, he was called again to another job for the Town.

12)  He went to that job, completed the work, and went home.

13)  At the end of the week, Cullinane put in for payment for the two calls, which he reasonably believed was owed to him as wages under his employment agreement with the Town.

14)  After this time sheet was put in by Cullinane, Baldinger came into work area where Cullinane was sitting and slammed the time sheet paper on Cullinane's desk and stated "we are not fucking paying you for this."

15)  Cullinane responded that he had been called out twice and these are wages due under the agreement.

16)  Baldinger repeated that he was not paying for the two calls, to which Cullinane responded that he had to, it was "illegal" and that he had worked the calls and would complain to the Town administrators about this pay issue.

17)  Indeed, Cullinane immediately verbally complained about the above referenced events to Pete Flynn, a Town department manager, and then also on the same day complained about the above referenced events by reporting them to the Town's Human Resource

2

Director Amy Foley by phone. Cullinane advised both that his wages were due and owed under this employment agreement with the Town.

18)  Amy Foley stated that she would look into it.

19)  Days later Pete Flynn advised Cullinane to come in to the lunch room at work early to once again discuss this pay issue.

20)  Supervisors Baldinger and Rowley and the Director of Public Works Rich Reine were in attendance.

21)  At this meeting Reine told Cullinane that "we are going to pay you" but there is not going to be a next time.

22)  At this meeting both Baldinger and Rowley were visibly agitated and angry.

23)  At one point after this meeting on the same day, Baldinger threatened Cullinane and stated "the next time I am going to make you sit there for eight hours even if it takes you fifteen minutes and pay you for four."

24)  Cullinane stated once again that such was not legal, nor would it motivate him to come into work in the middle of the night to take care of an emergency call.

25)  The Town ultimately paid Cullinane for this work, but thereafter supervisors Baldinger and Rowley gave Cullinane ugly dagger-like looks as well as the cold shoulder.

26)  Rowley and Baldinger were both involved in the process whereby Cullinane claimed that the wages were required to be paid.

27)  After Cullinane's complaint/report of this illegal wage event, Cullinane experienced other retaliation from Rowley and Baldinger, including that listed above.

3

28)   On or about December 5, 2017, Cullinane was working for the Town at the direction of his supervisors cleaning up assorted piles of scrap in the Town yard that the Town was throwing in the trash.

29)   Doing this work, Cullinane was working under Jeffrey Koranda ("Koranda"), a line supervisor with the Town's Highway Department.

30)   Koranda directed Cullinane to put the trash in a dumpster so that it could be taken away.

31)   In doing this work, Cullinane came across several items of scrap that he believed would be useful to him in his home and as scrap metal.

32)   Given that the items were just going to be thrown away, Cullinane asked Koranda if he could take some of the pieces.

33)   Koranda told Cullinane to take whatever he wanted because it was just going to be thrown out, but to do so on his own time.

34)   Specifically, Koranda told Cullinane to "take what you want" and confirmed that it was "trash."

35)   With permission, Cullinane took the trash and placed it in the back of his truck during his lunchtime which was "his own time."

36)   Cullinane did not conceal or hide this trash and it remained in the back of his truck open and visible from December 7.

37)   At some point thereafter, Rowley and Baldinger saw that Cullinane had the scrap in his truck.

38)   On or about December 7, 2017, Rowley went to Concord Chief of Police, Joseph O'Connor, and reported that Cullinane was stealing town property.

4

39) Neither Rowley nor Baldinger ever asked Cullinane if he had permission to take the items.

40) In fact, Rowley and Baldinger never asked Cullinane anything about the items before Rowley went to Chief O'Connor to report this event as a "crime."

41) At the time Rowley and Baldinger reported this "crime," the items had been in Cullinane's truck for two days and no one else from the Town had said anything to Cullinane, despite the fact that Cullinane was going back to the Town yard to continue the clean up each day and the items were open and obvious.

42) As a result of Rowley's report to O'Connor, on December 17, 2017, Cullinane was arrested in a highly public and unusual manner.

43) Cullinane was pulled over on his way into the DPW about 500 yards from the property by a cruiser. He was placed in handcuffs by the arresting officers and placed in a back of a cruiser and then a jail cell.

44) Officers in the police department hearing of the order to arrest Cullinane refused to participate in the call, and the arresting officers apologized for their part in this plan.

45) Upon information and belief, the scrap had no value and in any event had a value of less than $250.00 and it was custom and practice at the Town to seek a criminal complaint or show cause on such "crimes" and not place a person under arrest in the manner Cullinane experienced.

46) At all times relevant, Defendant's agents did not act in good faith, nor did they have a good faith belief in their report of a "crime."

47) Town agents with improper motive sought application for a criminal complaint drafted against Cullinane; this hearing proceeded on the Monday after the December 17 arrest.

48) Based on the evidence presented at hearing, which mirrored the facts as stated above, the magistrate who heard the matter declined to issue a criminal complaint, calling the situation "ridiculous." The court also made statements that should have alerted the Town that its allegations of a crime were frivolous and fraudulent and should not be pursued.

49) Despite the court colloquy, the Town continued to correspond with Cullinane, allowing the threat of future criminal action to linger over his head.

50) On December 7, 2017, the Town issued other legal process against Cullinane, including a No Trespass notice that prohibited Cullinane from "non-public areas of Town of Concord Facilities, grounds and job sites."

51) On or about December 8, 2017, the Town also suspended him from his job pending an "investigation" concerning the removal of the trash.

52) Rowley and Baldinger maliciously and falsely accused Cullinane of theft in retaliation for Cullinane's wage claim/petitioning activity.

53) Rowley and Baldinger's conduct constitutes illegal and improper retaliation in violation of General Laws Chapter 149.

54) Based on information and belief, the manner of the arrest was a deviation from routine Town and police practices, especially in light of the fact that Cullinane was a longstanding, highly respected "integral" part of the Town DPW team.

55) The above conduct constitutes illegal retaliation by agents of the Town of Concord in violation of General Laws Chapter 149, Section 148A.

56) As a result of this retaliation for complaining about a violation of Chapter 149, Cullinane suffered personal injuries (workers compensation injury), including but not limited to

6

insomnia, high blood pressure, shortness of breath, dizziness, nausea, loss of appetite, and other gastrointestinal issues.

57) Cullinane also suffered significant emotional distress.

58) Cullinane's physical and emotional condition prevented him from working and he sought a medical leave of absence.

59) On December 19, 2017, the Town placed Cullinane "provisionally" on a FMLA leave of absence.

60) On or about December 29, 2017, Cullinane notified the Town's HR Director of his workers compensation injuries arising out of the above-referenced conduct.

61) The Town acknowledged on January 16, 2018, that the claim had been "filed electronically" with the state and that the insurer had already "denied" the claim.

62) While Cullinane was out on his leave of absence, the Town continued to retaliate, harass, and threaten him.

63) On May 1, 2018, the Town notified Cullinane that Public Works Director Reine recommended his termination based on "job abandonment" and notified Cullinane that they intended to have a hearing on the matter. In this same letter, the Town again alluded to its ongoing "investigation" and criminal prosecution, and its "right to act on that matter if circumstances warrant."

64) The May 1 letter instructed that Cullinane could not bring an attorney to this job abandonment hearing.

65) The May 1 letter was ongoing retaliation, due to fact that Cullinane exercised his wage and hour rights under Chapter 149 and for his complaints to both management and HR.

This constitutes retaliation in violation of General Laws Chapter 149, Section 148A, for which Cullinane has a private right of action.

66) The Town caused the constructive discharge of Cullinane and/or terminated Cullinane in violation of Chapter 149, Section 148A, in May 2018.

67) No reasonable person could or would have returned to this workplace given Defendant's conduct and ongoing threats of malicious prosecution, and no reasonable person with an ongoing threat of criminal prosecution would have "testified" in the Town's planned hearing referenced in its May 1, 2018, letter.

68) After this letter of May 1, 2018, Cullinane knew he would not get due process for any of the legitimate concerns he had and resigned.

69) The Town's accepted his "resignation" and discharged him, advising him that their investigation results would be placed in his personnel file.

70) The Town knew or should have known that Cullinane's absence from work was caused by Defendant's illegal, improper, and retaliatory conduct.

71) At all times relevant, Cullinane had met or exceeded his performance standards.

72) Cullinane's constructive discharge/discharge was in retaliation for claiming/reporting his rightfully owed wages or, in the alternative, for his petitioning activity surrounding his right to be paid for his work and his right to be compensated for injuries sustained arising out of his complaint process.

73) At all times relevant, there was a strong public policy supporting the right to be paid for work performed.

74) Cullinane incurred legal fees arising out of the retaliation.

75) Cullinane filed a claim for retaliation in the Office of the Attorney General in or about January 2019 and sought and received a Private Right of Action notice in February 2019.

## COUNT 1
### Retaliation, M.G.L. c. 149, § 148A

76) Plaintiff repeats and re-alleges paragraphs 1-75 above and incorporates same by reference as if originally stated herein.

77) Plaintiff complained to agents of Defendant, his employer, about wages rightfully owed to him under General Laws Chapter 149.

78) At all times relevant. Plaintiff had a good faith belief that these monies were owed and were wages within meaning of the law.

79) After Plaintiff made those complaints, Defendant retaliated against Plaintiff by wrongfully accusing him of a crime, arresting him in a highly unusual and public manner, treating him poorly while out on medical leave, issuing a no trespass order, and ultimately terminating him.

80) By these actions, Defendant violated Section 148A of Massachusetts General Laws Chapter 149.

81) As a result of Defendant's discriminatory conduct, Plaintiff suffered severe emotional distress, bodily injuries, economic harm, lost wages, and earning capacity, incurred attorney fees, and suffered other damages.

**WHEREFORE,** Plaintiff Scott Cullinane demands judgment as against Defendant Town of Concord in an amount the Court deems just, including but not limited to equitable relief, reinstatement with back pay, front pay, loss of retirement and other benefits, and any other relief that this Court deems appropriate, including compensatory damages, punitive damages, attorney fees, and interest.

9

PLAINTIFF DEMANDS A JURY TRIAL ON ALL TRIABLE ISSUES.

PLAINTIFF, Scott Cullinane, on his behalf
and on behalf of all other similarly situated
individuals

Date: October ___, 2020

_____
Lisa Brodeur-McGan (BBO# 556755)
Brodeur-McGan, P.C.
1380 Main Street, Suite 202
Springfield, MA  01103
(413) 735-1775; Fax: (413) 735-1772
lbm@brodeurmcgan.com

MIDDLESEX, ss.   **Commonwealth of Massachusetts**
SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT

In testimony that the foregoing is a true copy on file
and of record made by photographic process, I hereunto
set my hand and affix the seal of said Superior Court
this 10th day of July 2023.

_____
Deputy Assistant Clerk

**CIVIL ACTION COVER SHEET**

DOCKET NUMBER  2⌐-24ᴐ₃

**Trial Court of Massachusetts**
**The Superior Court**

PLAINTIFF(S): SCOTT CULLINANE

ADDRESS:

COUNTY  Middlesex

DEFENDANT(S): TOWN OF CONCORD

ATTORNEY: LISA BRODEUR-MCGAN

ADDRESS: 1380 MAIN STREET, SUITE 202, SPRINGFIELD, MA 01103

ADDRESS:

BBO: 556755

### TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| A B 1 | Tortious Action/municipality | A | ☒ YES  ☐ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?   ☐ YES   ☒ NO

Is this a class action under Mass. R. Civ. P. 23?   ☐ YES   ☒ NO

### STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

FILED
TORT CLAIMS OFFICE OF THE
(attach additional CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

OCT 15 2020

_____ A. _____
CLERK

A. Documented medical expenses to date:
1. Total hospital expenses ............................................. $
2. Total doctor expenses ............................................. $1000.
3. Total chiropractic expenses ..................................... $
4. Total physical therapy expenses ............................. $
5. Total other expenses (describe below) ..................... $
                  Subtotal (A): $ 1000.
B. Documented lost wages and compensation to date 3 yrs annual wages lost (65,000)  $ 195,000
C. Documented property damages to date ............................................. $
D. Reasonably anticipated future medical and hospital expenses .......... $
E. Reasonably anticipated lost wages ............................................. $
F. Other documented items of damages (describe below) at least 10 years/   $ 320,000
retirement lost % over $32,000 annually

G. Briefly describe plaintiff's injury, including the nature and extent of injury:

TOTAL (A-F): $ 516,000

### CONTRACT CLAIMS
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $

Signature of Attorney/ Unrepresented Plaintiff: X _____   Date: 10/14/2020

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

### CERTIFICATION PURSUANT TO SJC RULE 1:18

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____   Date: 10/14/2020

| CIVIL TRACKING ORDER (STANDING ORDER 1-88) | DOCKET NUMBER 2081CV02483 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Cullinane, Scott vs. Town of Concord | | Michael A. Sullivan, Clerk of Court Middlesex County |
| TO: File Copy | | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |

### TRACKING ORDER - A - Average

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

| STAGES OF LITIGATION | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 01/13/2021 | |
| Response to the complaint filed (also see MRCP 12) | | 02/12/2021 | |
| All motions under MRCP 12, 19, and 20 | 02/12/2021 | 03/15/2021 | 04/13/2021 |
| All motions under MRCP 15 | 12/09/2021 | 01/10/2022 | 01/10/2022 |
| All discovery requests **and depositions** served and non-expert depositions completed | 10/05/2022 | | |
| All motions under MRCP 56 | 11/04/2022 | 12/05/2022 | |
| Final pre-trial conference held and/or firm trial date set | | | 04/03/2023 |
| Case shall be resolved and judgment shall issue by | | | 10/16/2023 |

**The final pre-trial deadline is <u>not the scheduled date of the conference</u>.** You will be notified of that date at a later time.

**Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.**

This case is assigned to

| DATE ISSUED 10/15/2020 | ASSISTANT CLERK Dia S Roberts-Tyler | PHONE (781)939-2745 |
|---|---|---|

Commonwealth of Massachusetts **IMPOUNDED**

IMPOUNDED **AFFIDAVIT OF INDIGENCY**

AND REQUEST FOR WAIVER, SUBSTITUTION **IMPOUNDED**
OR STATE PAYMENT OF FEES & COSTS

*(Note: If you are currently confined in a prison or jail and are not seeking immediate release under G.L. c. 248 §1, but you are suing correctional staff and wish to request court payment of "normal" fees (for initial filing and service), **do not use this form**. Obtain separate forms from the clerk.)*

| Middlesex | Scott Cullinane v. Town of Concord |
|---|---|
| Court | Case Name and Number (if known) |

Name of applicant: **Scott Cullinane**

Address: **14 Springdale Road**        **Lexington**        MA 02421

(Street and number)        (City or town)        (State and Zip)

> FILED
> IN THE OFFICE OF THE
> CLERK OF COURTS
> FOR THE COUNTY OF MIDDLESEX
>
> OCT 1 5 2020
>
> ~~CLERK~~

SECTION 1:    Under the provisions of General Laws, Chapter 261, Sections 27A-27G, I swear (or affirm) as follows:
**I AM INDIGENT** in that (*check only one*):

☐ (A) I receive public assistance under (*check form of public assistance received*):

☐ Transitional Aid to Families with Dependent Children (TAFDC)    ☐ Medicaid (MassHealth)

☐ Emergency Aid to Elderly, Disabled or Children (EAEDC)    ☐ Supplemental Security Income (SSI)

☐ Massachusetts Veterans Benefits Programs; or

☒ (B) ✱ RETIREMENT *ONLY*  My income, less taxes deducted from my pay, is $ **1366.00** ✱✱ per ☐ week ☐ biweekly ☒ month ☐ year
(*check the period that applies*) for a household of **3** persons, consisting of myself and **2** dependents;

which income is at or below the court system's poverty level; (*Note: The court system's poverty levels for households of various sizes must be posted in this courthouse. If you cannot find it, ask the clerk or check online at: http://www.mass.gov/courts/sjc/docs/povertyguidelines.pdf. The court system's poverty level is updated each year.*)

✱✱ I pay alimony and child support of $750 out of the $1366, leaving $616 per month.
(List any other available household income for the checked period on this line: $ _____ ); **or**

☐ (C) I am unable to pay the fees and costs of this proceeding, or I am unable to do so without depriving myself or my dependents of the necessities of life, including food, shelter and clothing.

IF YOU CHECKED (C), YOU MUST ALSO COMPLETE THE SUPPLEMENT TO THE AFFIDAVIT OF INDIGENCY.

✱ *This is NoT earned iNcome.*

*[handwritten left margin: Denied in light of fact that counsel for plaintiff has paid the fee. H. Kazanjian]*

*[handwritten left margin: 10-15-20]*

SECTION 2:    (*Note: In completing this form, please be as specific as possible as to fees and costs known at the time of filing this request. A supplementary request may be filed at a later time, if necessary.*)

I request that the following **NORMAL FEES AND COSTS** be waived (not charged) by the court, or paid by the state, or that the court order that a document, service or object be substituted at no cost (or a lower cost, paid for by the state): *(Check all that apply and, in any "$____" blank, indicate your best guess as to the cost, if known.)*

▣ Filing fee and any surcharge. $ 275.00

☐ Filing fee and any surcharge for appeal. $ _____

▣ Fees or costs for serving court summons, witness subpoenas or other court papers. $ 5.00

☐ Other fees or costs of $ _____ for *(specify):* _____

_____

☐ Substitution *(specify):* _____

_____

SECTION 3:    I request that the following **EXTRA FEES AND COSTS** either be waived (not charged), substituted or paid for by the state:

☐ Cost, $ _____ , of expert services for testing, examination, testimony or other assistance *(specify):*

_____

☐ Cost, $ _____ , of taking and/or transcribing a deposition of *(specify name of person):*

_____

☐ Cassette copies of tape recording of trial or other proceeding, needed to prepare appeal for applicant not represented by Committee for Public Counsel Services (CPCS-public defender).

☐ Appeal bond

☐ Cost, $ _____ , of preparing written transcript of trial or other proceeding

☐ Other fees and costs, $ _____ , for *(specify):* _____

_____

☐ Substitution *(specify)* _____

| Date signed | Signed under the penalties of perjury |
|---|---|
| 10-7-2020 | x _[signature]_ |

By order of the Supreme Judicial Court, all information in this affidavit is **CONFIDENTIAL.** Except by special order of a court, it shall not be disclosed to anyone other than authorized court personnel, the applicant, applicant's counsel or anyone authorized in writing by the applicant.

This form prescribed by the Chief Justice of the SJC pursuant to G.L. c. 261, § 27B. Promulgated March  , 2003. Fillable PDF created August 2013.

FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX

NOV 1 6 2020

**Commonwealth of Massachusetts**

MIDDLESEX,SS.

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2081- CV- 02483

Scott Cullinane , PLAINTIFF(S),

v.

Town of Concord , DEFENDANT(S)

**SUMMONS**

THIS SUMMONS IS DIRECTED TO Town of Concord . (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the
Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been
filed in the Middlesex Superior Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**
Woburn

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide
the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the
opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect
to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an
extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a
copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:

a. Filing your **signed original** response with the Clerk's Office for Civil Business, Superior Court, Woburn
200 Trade Ctr (address), by mail or in person, **AND**
Woburn MA 01801

b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following
address: 1380 Main St, Ste 202, Springfield MA 01103

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer
must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint.
Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to
use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are
based on the same facts or transaction described in the Complaint, then you must include those claims
in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this
lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your
Answer or in a written demand for a jury trial that you must send to the other side and file with the
court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a
**"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion
to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If
you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions"
described in the rules of the Court in which the complaint was filed, available at
www.mass.gov.courts/case-legal-res/rules of court.

FILED
CLERK
FOR THE
NOV 1 6 20



| SENDER: *COMPLETE THIS SECTION* | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ **Complete items 1, 2, and 3.** ■ Print your name and address on the reverse so that we can return the card to you. ■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature X Al Robison ☐ Agent ☐ Addressee B. Received by (Printed Name) C. Date of Delivery 11-2-20 |
| 1. Article Addressed to: Kaari Mai Tari City Clerk Concord City Hall 22 Monument Sq PO Box 535 Concord MA 01742 | D. Is delivery address different from item 1? ☐ Yes If YES, enter delivery address below: ☐ No |
| ‖‖‖‖‖‖‖‖‖ 9590 9402 5009 9063 5822 50 | 3. Service Type ☐ Adult Signature ☐ Adult Signature Restricted Delivery ☐ Certified Mail® ☐ Certified Mail Restricted Delivery ☐ Collect on Delivery ☐ Collect on Delivery Restricted Delivery ☐ Insured Mail ☐ Insured Mail Restricted Delivery (over $500) | ☐ Priority Mail Express® ☐ Registered Mail™ ☐ Registered Mail Restricted Delivery ☐ Return Receipt for Merchandise ☐ Signature Confirmation™ ☐ Signature Confirmation Restricted Delivery |
| 2. Article Number (Transfer from service label) 7011 2000 0000 3608 8073 | |

PS Form 3811, July 2015 PSN 7530-02-000-9053    30677    Domestic Return Receipt



**U.S. Postal Service**™
**CERTIFIED MAIL**™ **RECEIPT**
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com®

O F F I C I A L   U S E

| | |
|---|---|
| Postage | $ 1.40 |
| Certified Fee | 3.55 |
| Return Receipt Fee (Endorsement Required) | 2.85 |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ 7.80 |

Postmark Here

Sent To City Clerk / Concord
Street, Apt. No.; or PO Box No. 22 Monument Sq PO Bo 535
City, State, ZIP+4 Concord MA 01742

PS Form 3800, August 2006    See Reverse for Instructions

7011 2000 0000 3608 8073

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH

Middlesex, ss.                                      Superior Court Department
                                                   Civil Action No. 2081-CV-02483

SCOTT CULLINANE,
                    Plaintiff

v.

TOWN OF CONCORD,
                    Defendant



## AFFIDAVIT OF CERTIFIED SERVICE PURSUANT TO MASS. R. CIV. P. 4(d)(4)

I, Lisa Brodeur-McGan, counsel of record for Plaintiffs, submit this Affidavit under the

pains and penalties of perjury and state that that statements made below are true of my own

knowledge, information, and belief.

On October 30, 2020, I caused a true copy of the Complaint and Summons in the above-

referenced case to be mailed to Defendant Town of Concord, c/o Concord City Clerk, 22

Monument Square, PO Box 535, Concord, Massachusetts, 01742, by certified mail, return

receipt requested and postage prepaid.

Annexed hereto is the Summons with original receipt for certified mail and return receipt.

This Affidavit is dated November , 2020.

                         PLAINTIFF, Scott Cullinane, on his behalf
                         and on behalf of all other similarly situated
                         individuals

                         Lisa Brodeur-McGan (BBO# 556755)
                         Brodeur-McGan, P.C.
                         1380 Main Street, Suite 202
                         Springfield, MA  01103
                         (413) 735-1775; Fax: (413) 735-1772
                         lbm@brodeurmcgan.com



## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.

SUPERIOR COURT DEPARTMENT
C.A. NO. 2081CV02483

SCOTT CULLINANE,   )
    Plaintiff,   )
       )
VS.   )
       )
TOWN OF CONCORD,   )
    Defendant.   )

DEC 18 2020

## TOWN OF CONCORD'S ANSWER TO PLAINTIFF'S COMPLAINT, AFFIRMATIVE DEFENSES & JURY DEMAND

### First Defense

Plaintiff's Complaint fails to state a claim against the Town of Concord (hereinafter, the "Town") upon which relief can be granted and, therefore, must be dismissed.

### Second Defense

The Plaintiff's Complaint fails to state a claim against the Town upon which relief can be granted and, therefore, the Town has no obligation to pay the Plaintiff any amount of the damages alleged.

### Third Defense

The Town responds to the allegations contained in the Plaintiff's Complaint, paragraph by paragraph, as follows:

### THE PARTIES

1. Admitted.

2. Admitted.

### FACTS

1

3. Admitted.

4. Admitted.

5. Admitted.

6. The Town denies that Cullinane had an employment agreement that called for him to be paid extra money for emergency calls. The provisions applicable to pay for call back is set forth in the applicable collective bargaining agreement.

7. The Town admits that Mr. Rowley and Mr. Baldinger held supervisory positions with the Department of Public Works, under the direction of the Director of Public Works, Richard Reine.

8. Admitted.

9. The Town admits that Plaintiff was called in by Keith Baldinger to remove a tree during a wind and heavy rain storm the evening of October 29, 2017 until early October 30, 2017.

10. The Town denies Cullinane was cleared to return home after removing the tree as Cullinane did not contact Mr. Baldinger to receive clearance to return home. The Town further denies Cullinane returned home.

11. The Town denies that Cullinane returned home. Cullinane was driving home when contacted by Mr. Baldinger that there was another tree to remove before he was cleared for his shift assignment.

12. The Town admits that Cullinane drove to that second location, performed the work, contacted Mr. Baldinger and was then cleared by Mr. Baldinger to return home.

13. The Town admits that Cullinane sought two separate payments but denies he was entitled to both payments.

14. The Town admits that Cullinane sought two separate payments but denies he was entitled

to both payments.  The Town denies the remainder of the allegations in Paragraph 14.

15. The Town admits that Cullinane sought two separate payments but denies he was entitled to both payments.  The Town denies the remainder of the allegations in Paragraph 15.

16. The Town admits that Cullinane sought two separate payments but denies he was entitled to both payments.  The Town denies the remainder of the allegations in Paragraph 16.

17. The Town admits that Cullinane sought two separate payments and contacted Town officials seeking such payment, but denies he was entitled to both payments.  The Town denies the remainder of the allegations in Paragraph 17.

18. The Town admits that Cullinane sought two separate payments but denies he was entitled to both payments.

19. Denied.  On November 15, 2017 Cullinane and his union representative Tish Hopkins met with Mr. Reine and Mr. Rowley to discuss the overtime compensation for the call-in on October 29-30th.

20. Denied.  On November 15, 2017 Cullinane and his union representative Tish Hopkins met with Mr. Reine and Mr. Rowley to discuss the overtime compensation for the call-in on October 29-30th.

21. The Town denies the Plaintiff's characterization on Reine's statements.  Mr. Reine authorized payment to Cullinane for two separate call-ins because there was ambiguity as Cullinane only called the police department and not Mr. Baldinger after he completed the first tree removal to seek clearance to return home.

22. Denied.

23. Denied.

24. The Town neither admits nor denies the allegations contained in Paragraph 23 of Plaintiff's

Complaint because it has no actual knowledge of same and, therefore, calls upon Plaintiff to prove same.

25. The Town admits that Mr. Reine authorized payment to Cullinane for two separate call-ins because there was ambiguity as Cullinane only called the police department and not Mr. Baldinger after he completed the first tree removal to seek clearance to return home. The Town denies the remainder of the allegations contained in Paragraph 25.

26. Denied.

27. Denied.

28. The Town admits that Cullinane requested to provide assistance within the Department on or about December 6, 2017, to place scrap metal from a disassembled heavy vehicle lift into a dumpster that did not belong to the Town of Concord. The Town denies the remainder of the allegations contained in Paragraph 28.

29. The Town admits that Cullinane request to assist Mr. Koranda.

30. Koranda assigned Cullinane to move the old lift arms and other scrap metal from its location and place it in the large dumpster left in the yard on December 4, 2017. Koranda also told Cullinane to break up an old truck body and place all the pieces in the dumpster as well.

31. The Town neither admits nor denies the allegations contained in Paragraph 31 of Plaintiff's Complaint because it has no actual knowledge of same and, therefore, calls upon Plaintiff to prove same.

32. Denied.

33. Denied.

34. Denied.

4

35. Denied.

36. The Town neither admits nor denies the allegations contained in Paragraph 36 of Plaintiff's Complaint because it has no actual knowledge of same and, therefore, calls upon Plaintiff to prove same.

37. Admitted.

38. The Town admits that Reine informed Town officials, including the Police Chief that Cullinane had placed the lift arms, plow blade edges and street signs in his truck. The Police Chief decided that it would be handled as a police matter. Rowley submitted a written report to the police department on December 7, 2017, as requested.

39. Denied. Furthermore, neither Rowley nor Baldinger had ever given Cullinane permission. No Town employee gave Cullinane permission to take the property or materials for his own personal use or place the materials in his personal vehicle.

40. The Chief of Police advised Town officials, including Mr. Reine the matter should be handled as a police matter.

41. The Town neither admits nor denies the allegations contained in Paragraph 41 of Plaintiff's Complaint because it has no actual knowledge of same and, therefore, calls upon Plaintiff to prove same.

42. Cullinane was stopped by the police at the end of his shift on December 7, 2017, the Town property found in his truck was removed from his truck and secured on Police Department property.

43. The Town admits that Cullinane was arrested but denies the remainder of the allegations contained in Paragraph 43.

44. The Town neither admits nor denies the allegations contained in Paragraph 41 of Plaintiff's

Complaint because it has no actual knowledge of same and, therefore, calls upon Plaintiff to prove same.

45. Denied.

46. Denied.

47. Denied.

48. The Town neither admits nor denies the allegations contained in Paragraph 48 of Plaintiff's Complaint because it has no actual knowledge of same and, therefore, calls upon Plaintiff to prove same.

49. Denied. The referenced correspondence between the Town and Cullinane are written documents, the contents of which speak for themselves.

50. The Town admits that on December 7, 2017, the Town's HR Director wrote to Cullinane placing him on administrative leave pending an internal investigation into allegations that he took Town property without authorization. At the same time, the Town Managed issued Cullinane a No Trespass Notice, dated December 7, 2017, while he was on administrative leave.

51. The Town admits that on December 7, 2017, the Town's HR Director wrote to Cullinane placing him on administrative leave pending an internal investigation into allegations that he took Town property without authorization. The referenced correspondence between the Town and Cullinane are written documents, the contents of which speak for themselves.

52. Denied.

53. Denied.

54. Denied.

55. Denied.

6

56. Denied.

57. Denied.

58. Denied.

59. The Town's investigation into Cullinane's conduct was placed on hold after Cullinane provided medical documentation that he was unable to participate in an investigatory interview due to medical reasons. Due to his unavailability, Cullinane was placed on unpaid administrative leave effective December 18, 2017, and was permitted to use accrued sick and vacation leave to receive pay during his absence. His absence was designate as FMLA leave.

60. While Cullinane was on administrative leave, he filed a Report of Work-Related Injury or Illness with the Town on December 29, 2017.

61. The Town neither admits nor denies the allegations contained in Paragraph 61 as the referenced correspondence between the Town and Cullinane are written documents, the contents of which speak for themselves.

62. Denied.

63. The Town neither admits nor denies the allegations contained in Paragraph 61 as the referenced correspondence of May 1, 2018, between the Town and Cullinane is a written document, the contents of which speak for themselves.

64. The Town neither admits nor denies the allegations contained in Paragraph 61 as the referenced correspondence of May 1, 2018, between the Town and Cullinane is a written document, the contents of which speak for themselves. Cullinane had a right to appeal the termination decision in accordance with the Employee Appeal Procedure.

65. Denied.

66. Denied.

67. Denied.

68. Denied.

69. The Town's May 16, 2018 letter to Cullinane stated, in part, that Town Manager Whelan accepted Cullinane's voluntary resignation effective May 10, 2018. The Town neither admits nor denies the remainder of the allegations contained in Paragraph 69 as the referenced correspondence of May 16, 2018, between the Town and Cullinane is a written document, the contents of which speak for themselves.

70. Denied.

71. Denied.

72. Denied.

73. Denied.

74. Denied.

75. The Town neither admits nor denies the allegations contained in Paragraph 75 of Plaintiff's Complaint because it has no actual knowledge of same and, therefore, calls upon Plaintiff to prove same.

## COUNT I
### Retaliation, M.G.L. c. 149, § 148A

76. The Town repeats and incorporates by reference its responses to Paragraphs 1 through 75 above.

77. Denied.

78. Denied.

79. Denied.

80. Denied.

8

81. Denied.

### FOURTH AFFIRMATIVE DEFENSE

Plaintiff's Complaint is barred in whole or in part because, at all relevant times, the actions of the Defendant were legal, proper, reasonable, and in conformity with all applicable state and federal statutory, regulatory, and decisional law, including without limitations Mass. Gen. L. c. 149, § 148A.

### FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claims are barred, in whole or in part, for failure to exhaust required administrative remedies.

### SIXTH AFFIRMATIVE DEFENSE

The Complaint is barred, in whole or in part, because it requires relief which exceeds that available under applicable law.

### SEVENTH AFFIRMATIVE DEFENSE

The Complaint is or may become barred by evidence of the wrongdoing of Plaintiff.

### EIGHTH AFFIRMATIVE DEFENSE

The Complaint is barred by the equitable doctrines of laches, waiver, estoppel and/or unclean hands.

### NINTH AFFIRMATIVE DEFENSE

Defendants acted in good faith and in accordance with all applicable statutes and regulations.

### TENTH AFFIRMATIVE DEFENSE

Some or all of the relief sought in the Complaint is barred in whole or in part because Defendant's actions were not malicious, egregious, in bad faith, intentional, willful, or recklessly

indifferent to any legal rights of Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed as any harm the plaintiff suffered is a result of his own actions, inactions, errors and/or omissions.

## TWELFTH AFFIRMATIVE DEFENSE

The Defendant states that the plaintiff is judicially estopped from claiming that the defendant's actions were motivated by a desire to retaliate against him for engaging in protected activity.

## THIRTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims must be dismissed because the Defendant had a legitimate, nondiscriminatory reason for each job action it took regarding Plaintiff.

## FOURTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims must be dismissed because he did not suffer from retaliatory action.

## FIFTEENTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed because Plaintiff did not suffer any damages.

## SIXTEENTH AFFIRMATIVE DEFENSE

Plaintiff has failed to mitigate his damages, and therefore any damages award that he may receive must be decreased based on that failure to mitigate his damages.

## SEVENTEENTH AFFIRMATIVE DEFENSE

The Complaint should be dismissed because any damages that the Plaintiff may have suffered were not actually or proximately caused by any act(s) or omission(s) on the part of the Defendant.

## EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff's claims must be dismissed because he did not engage in any protected activity.

## NINETEENTH AFFIRMATIVE DEFENSE

Plaintiff's claim of retaliation fails because there is no causal connection between any protected conduct and an adverse employment action.

## TWENTIETH AFFIRMATIVE DEFENSE

Defendant reserves the right to plead, assert, and rely upon all proper affirmative defenses lawfully available, including those which may be disclosed or discovered through further assertions by Plaintiff or discovery.

## JURY DEMAND

The Defendant Town of Concord demands a trial by jury as to all counts so triable.

TOWN OF CONCORD
By their Attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

*/s/ Seth B. Barnett*

_____

Seth B. Barnett, BBO #661497
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
sbarnett@piercedavis.com

Dated: December 14, 2020

11

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2020 a true copy of this document was served upon each attorney of record via electronic mail.

/s/ Seth B. Barnett

Seth B. Barnett

6

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH

Middlesex, ss.                                    Superior Court Department
                                                 Civil Action No. 2081-CV-02483

SCOTT CULLINANE,
                        Plaintiff          **JOINT MOTION TO EXTEND
                                            DISCOVERY AND RULE 56 DEADLINE**

v.

TOWN OF CONCORD,
                        Defendant

NOW COME the parties in the above-captioned matter and respectfully move for an extension of the fact discovery and summary judgment deadlines in this matter for a period of seven (7) months. The parties request that (a) the discovery deadline be extended from October 5, 2022, to May 1, 2023; (b) the deadline for serving summary judgment motions be extended from November 4, 2022, to June 5, 2023; and (c) the deadline for filing summary judgment motions be extended from December 5, 2022, to July 3, 2023. As grounds therefor, the parties state the following:

1.  This action involves a retaliation claim under G.L. c. 149, § 148A, arising from the Plaintiff's employment with the Town of Concord.

2.  The Plaintiffs' Complaint was filed on or about October 15, 2020, and served on or about November 2, 2020 by means of certified service.

3.  The Defendant filed an Answer on or about December 18, 2020.

4.  The parties have conducted paper discovery in this matter.

5.  Each of the parties in this case has experienced in change in counsel.

6.  On or about August 23, 2022, Attorney Justin Amos was added as new counsel for the

1

Defendant.

7. On or about September 12, 2022, Attorney Katharine Shove was added as new counsel for the Plaintiff.

8. As a result, the parties need additional time to complete depositions in this matter.

9. This is the first time that the parties have requested that the discovery deadline of this matter be extended.

10. Neither party shall be prejudiced by the allowance of this motion.

11. Both parties join in this motion.

WHEREFORE, and for the foregoing reasons, the parties respectfully request that the fact discovery and summary judgment deadlines in this matter be extended by seven (7) months.

Respectfully submitted, this the 7th day of October, 2022

TOWN OF CONCORD.
By its attorneys,

_____
Seth B. Barnett, BBO #: 661497
Justin L. Amos, BBO #: 697232
Pierce Davis & Perritano LLP
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950

SCOTT CULLINANE
By his attorneys,

_____
Lisa Brodeur-McGan, BBO #: 556755
Katharine E. Shove, BBO #: 705877
Brodeur-McGan, P.C.
1380 Main Street, 2nd Floor
Springfield, MA 01103
(413) 735-1775

CERTIFICATE OF SERVICE

I, Katharine E. Shove, do hereby certify that I made service of the foregoing document on this 7th day of October, 2022, by email AND/OR first class mail, postage prepaid, to: Seth B. Barnett, Esq. (sbarnett@piercedavis.com), Justin L. Amos, Esq. (jamos@piercedavis.com), Pierce Davis & Perritano, LLP, 10 Post Office Square, Suite 1100N, Boston, MA 02109.

_____
Katharine E. Shove

2

Date Filed 1/~/2023 9:36 AM
Superior Court - Middlesex Case 1:23-cv-11526-JEK    Document 7    Filed 07/13/23    Page 38 of 168
Docket Number 2081CV02483

318
e 2.30    H
7

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                          SUPERIOR COURT DEPARTMENT
                                        C.A. NO. 2081-CV-02483

SCOTT CULLINANE,          )
        *Plaintiff,*      )             **RECEIVED**
                          )
VS.                       )
                          )
TOWN OF CONCORD,          )
        *Defendant.*      )             01/04/23

### TOWN OF CONCORD'S MOTION FOR JUDGMENT ON THE PLEADINGS

NOW COMES the defendant Town of Concord and, pursuant to Mass.R.Civ.P. 12(c), hereby respectfully moves this Honorable Court enter judgment on the pleadings in its favor. In support thereof, the Town of Concord states as follows:

1. The Town of Concord is entitled to sovereign immunity from suit on the sole count of the Complaint alleging retaliation under the Massachusetts Wage Act, M.G.L. c. 149, § 148A, pursuant to Harrison vs. Mass. Bay Transp. Auth., Mass. App. Ct., No. 21-P-457 (September 13, 2022).

**WHEREFORE**, the defendant Town of Concord hereby requests that this Honorable Court allow its Motion for Judgment on the Pleadings as set forth above, enter Judgment in the Town's favor on the sole count of the Plaintiff's Complaint, and grant any other such relief as it deems just and proper.

The defendant Town of Concord further relies upon their memorandum of law.

### REQUEST FOR A HEARING

In accordance with Superior Court Rule 9A(c)(3), the defendant Town of Concord, hereby requests a hearing on their Motion for Judgment on the Pleadings.

*[handwritten in left margin: 2022 June 21 motion allowed. See memo and order (Deakin J) Attest Eva Roberts Taylor asst Clerk.]*

1                                                              JB

Respectfully submitted,

TOWN OF CONCORD

By their Attorney,

**PIERCE, DAVIS & PERRITANO, LLP**

*/s/ Justin L. Amos*

_____

Justin L. Amos, BBO #697232
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jamos@piercedavis.com

## SUPERIOR COURT RULE 9C CERTIFICATION

I hereby certify that on October 17, 2022, I conducted a 9C conference by telephone with counsel for the plaintiffs. Despite good faith efforts by all counsel, the parties were not able to effectively narrow the disputes, thus necessitating this motion.

*/s/ Justin L. Amos*

_____

Justin L. Amos

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2022 a true copy of this document was served upon each attorney of record via electronic mail as follows:

Lisa Brodeur-McGan, Esq.
Katharine Shove, Esq.
**BRODEUR-MCGAN, P.C.**
1380 Main Street, Suite 202
Springfield, MA  01103
lbm@brodeurmcgan.com
kes@brodeurmcgan.com

*/s/ Justin L. Amos*

_____

Justin L. Amos

2

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT DEPARTMENT
                                                 C.A. NO. 2081-CV-02483

SCOTT CULLINANE,                    )
     *Plaintiff,*                      )
                                    )            **RECEIVED**
VS.                                 )
                                    )            **01/04/23**
TOWN OF CONCORD,                    )
     *Defendant.*                     )

### TOWN OF CONCORD'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

### INTRODUCTION

Plaintiff's Complaint brings a single Count alleging employment retaliation in violation of the Massachusetts Wage Act. See Complaint at Count 1 ¶¶76-81 (citing Mass. Gen. L. ch. 149 §148A). The Appeals Court recently ruled that governmental employers were immune from liability and not subject to claims of retaliation under the Wage Act. See Harrison v. Mass. Bay. Transp. Authy., 101 Mass. App. Ct. 659 (2022) (affirming dismissal of Wage Act retaliation claim against the MBTA because the claims were barred by sovereign immunity). The Harrison decision and its supporting precedent mandate judgment for the Town of Concord in this case as well.

### FACTUAL ALLEGATIONS[1]

The plaintiff, Scott Cullinane, was employed by the Town of Concord as a grounds specialist from approximately 1997-May 2018. See Complaint at ¶¶ 4, 66. In this role, Cullinane would from time to time be called on an emergency basis to perform tree removal due to storm damage. See Complaint at ¶ 5. When called upon to perform emergency tree removal, Cullinane's

---

[1] Although the Town disputes many of the allegations, for this Motion only, it acknowledges that this Court is required to accept the veracity of Plaintiff's "well-pleaded" allegations. See, e.g. Jarosz v. Palmer, 436 Mass. 526, 529-530 (2002) ("In deciding a rule 12(c) motion, all facts pleaded by the nonmoving party must be accepted as true.")

JB

employment agreement required that he be paid "an extra amount of money for every call to which he responded under certain circumstances." Complaint at ¶ 6. In the fall of 2019, a dispute arose as to the precise amount of money owed to Cullinane for two jobs, both performed on the same day. See Complaint at ¶¶ 7-13. Cullinane claimed that, since he was called two times in one day for two separate jobs, he was entitled to pay for two separate calls. See Complaint at ¶ 13. The Town took the initial position that the two calls should be treated as a single call because they were generated on the same day, close in time, Cullinane had not returned home from the first call when the second one was made, and Cullinane had not cleared his return home after the first call with his supervisor. However, due to what the Town viewed as an ambiguity in its policy, it ultimately paid Cullinane for two separate calls. See Complaint at ¶ 21.

Cullinane alleges that as a result of his complaints to Human Resources, certain members of the Town's Department of Public Works retaliated against him. Specifically, Cullinane alleges that he was falsely arrested for taking scrap metal from a work site. See Complaint at ¶¶ 41-43. Cullinane claims a line supervisor with the Town's Highway Department gave him permission to take the scrap metal. See Complaint at ¶¶ 33-34.

On December 7, 2017, the Town placed Cullinane on paid administrative leave pending an internal investigation into whether he took Town property (*i.e.* the scrap metal) without proper authorization. See Exhibit 1, December 7, 2017 Letter to Cullinane.[2] On December 12, Cullinane was notified that the Town had retained an independent investigator to look into the allegations and that an investigatory interview would take place the following day, December 13, 2017.

---

[2] This letter is referenced in the Complaint at paragraph 50. It therefore may be considered as a part of this Court's review upon a Rule 12 Motion. See Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 224 (2011).

Exhibit 2, December 12, 2017 Letter to Cullinane.[3] However, the interview never took place

because Cullinane took a period of FMLA leave and sought worker's compensation benefits. See

Complaint at ¶¶ 59-60. Cullinane's FMLA leave and accumulated sick and vacation time expired

on March 26, 2018; however, Cullinane did not return to work. See Exhibit 3, May 1, 2018 Letter

to Cullinane.[4] By letter dated May 1, 2018, the Town notified Cullinane that it intended to hold an

informal hearing on May 10, 2018 to determine whether Cullinane should be terminated from his

position for job abandonment based on Cullinane's unauthorized leave and failure to communicate

with the Town. See Exhibit 3, May 1, 2018 Letter to Cullinane. The letter enclosed a

recommendation from Cullinane's supervisor for termination based on: Cullinane's exhaustion of

FMLA, accrued sick time, and accrued vacation time expiring on March 25, 2018, documentation

that Cullinane could return to work as of March 26, 2018, and Cullinane's refusal to respond to

the Town's inquiries regarding his return to work or further medical documentation necessitating

further leave. See Exhibit 4, May 1, 2018 Memorandum.[5] In lieu of appearing at the informal

hearing, Cullinane tendered his resignation. See Complaint at ¶ 68.

## STANDARD OF REVIEW

A motion for judgment on the pleadings pursuant to Mass.R.Civ.P. 12(c) is a challenge to

the legal sufficiency of a complaint. See, e.g., Welch v. Sudbury Youth Soccer Assn. Inc., 453

Mass. 352, 353 (2009); Burlington v. Dist. Atty. for the N. Dist., 381 Mass. 717, 717-718 (1980).

In effect, "[a] defendant's rule 12(c) motion is 'actually a motion to dismiss . . . [that] argues that

the complaint fails to state a claim upon which relief can be granted.'" Jarosz v. Palmer, 436 Mass.

526, 529 (2002) (quoting J.W. Smith & H.B. Zobel, Rules Practice § 12.16 (1974)); see also

---

[3] See note 2 supra.
[4] See note 2 supra.
[5] See note 2 supra.

Iannacchino v. Ford Motor Co., 451 Mass. 623, 625 n. 7 (2008). To survive a Rule 12(c) motion,

the Complaint must contain "a short and plaint statement of the claim showing that the pleader is

entitled to relief . . . establishes a plaintiff's obligation to provide the grounds of this entitle[ment]

to relief which requires more than labels and conclusions . . . Factual allegations must be enough

to raise a right to relief above the speculative level . . . [based] on the assumption that all the

allegations in the complaint are true (even if doubtful in fact). . . ." Iannacchino, 451 Mass., at 636

(quoting Bell Atl. Corp. v. Twombley, 550 U.S. 544, 555 (2007)) (internal quotations omitted).

Ultimately, "[j]udgment on the pleadings may be entered if a plaintiff fails to present sufficient

facts in the complaint to support the legal claims made." Flomenbaum v. Commonwealth, 451

Mass. 740, 742 (2008). In certain circumstances, a court may consider matters outside of the

pleadings when ruling on a Motion for Judgment on the Pleadings without converting the motion

into one for summary judgment. For example, conversion is not required where a plaintiff has

notice of an extrinsic document and relies upon such document in framing the Complaint. E.g.,

Golchin v. Liberty Mut. Ins. Co., 460 Mass. 222, 224 (2011) (holding court may consider a copy

of the auto policy, plaintiff's G.L. c. 93A demand letter, and insurer's written response when ruling

upon Rule 12(b)(6) Motion to Dismiss).

## ARGUMENT

### A. A Motion for Judgment on the Pleadings is the Appropriate Procedural Mechanism to Assert Sovereign Immunity.

In Brum v. Town of Dartmouth, 428 Mass. 684 (1999), the Supreme Judicial Court stressed

that issues of immunity should be resolved "quickly" and, if possible, before discovery. 428 Mass.

684, 688 (1999). This is because municipal immunity is not merely a protection from liability,

but also a protection from suit. Id. See Duarte v. Healy, 405 Mass. 43, 44 n.2 (1989) (immunity

is designed to protect public officials from "harassing litigation"); Caron v. Silvia, 32 Mass. App.

4

Ct. 271, 273 (1992) (it is "important" that issues of immunity "be resolved at the earliest possible

stage of litigation . . .."). According to the Brum Court, the "preferred" mechanism for resolving

immunity issues is a motion to dismiss. Indeed, early resolution of immunity issues is so paramount

that, under the doctrine of present execution, denial of a motion to dismiss based on immunity

grounds is immediately appealable as a matter of right. Brum, 428 Mass. at 688. See Shapiro v.

City of Worcester, 464 Mass. 261, 264 (2013) ("right to immunity from suit would be lost forever

if such orders were not appealable until the close of litigation"); Benoit v. Frederickson, 454 Mass.

148, 151 (2009) (doctrine of present execution permits immediate appeal of interlocutory order

which interferes with rights in way that cannot be remedied on appeal from final judgment); Caron,

32 Mass. App. Ct. at 273. Immediate appeal is even available when resolution of the immunity

issue will not dispose of the entire case. Kent v. Commonwealth, 437 Mass. 312, 316-317 (2002).

> **B.    The Town's Sovereign Immunity Was Not Waived Because Anti-Retaliation Provisions of the Wage Act Do Not Apply to Public Employers.**

Cullinane's claim against the Town for violation of the anti-retaliation provision of the

Massachusetts Wage Act, M.G.L. c. 149, § 148A, par. 1, should be dismissed because the Town

is immune from suit pursuant to sovereign immunity. Municipalities are "protected from liability

in . . . civil suit[s] unless [their] sovereign immunity has been waived." Bain v. City of Springfield,

424 Mass. 758, 762 (1997). Stated another way, sovereign immunity applies to bar civil claims

against a municipality "unless consent to suit has been 'expressed by the terms of a statute, or

appears by necessary implication from them.'" Id. at 763 (quoting C & M Constr. Co. v.

Commonwealth, 396 Mass. 390, 392 (1985)). The dispositive question here is whether the Town's

sovereign immunity was waived by the Wage Act's anti-retaliation provision. As the Appeals

Court recently decided, sovereign immunity was not waived either expressly or by necessary

implication. Harrison v. Mass. Bay. Transp. Authy., 101 Mass. App. Ct. 659 (2022).[6] In reading

statutes to determine whether there has been an implied waiver of sovereign immunity, courts have

applied "stringent" rules of construction. Woodbridge v. Worcester State Hosp., 384 Mass. 38, 42

(1981). Additionally, courts are "reluctant to infer a private cause of action from a statute in the

absence of some indication from the Legislature supporting such an inference." Loffredo v. Center

for Addictive Behaviors, 426 Mass. 541, 544 (1998).

In Harrison, the Appeals Court was confronted with a question of first impression, namely

whether Section 148A waived sovereign immunity for the MBTA.[7] The Appeals Court first noted

that, although the anti-retaliation provision "uses the terms 'employee' and 'employer,' it is silent

as to whether public employment is covered by its provisions." 101 Mass. App. Ct. at *2. Where

the anti-retaliation provision does not separately define "employee" or "employer," there was an

ambiguity as to whether a public employer qualifies as an employer. Id. To address the ambiguity,

the Appeals Court was "guided by the Legislature's use of the word 'whoever' in the remedial

provision of the statute[,]" which the Legislature has separately defined to "'include corporations,

societies, associations, and partnerships.'" Id. at 663 (quoting M.G. L. c. 4, § 7, par. 23). The

Appeals Court viewed this generally applicable definition in conjunction with several canons of

statutory construction, including that it is "widely accepted . . . that general words in a statute

. . . will not ordinarily be construed to include the State or political subdivisions thereof."

Hansen v. Commonwealth, 344 Mass. 214, 219 (1962). The Appeals Court additionally noted that

---

[6] On October 3, 2022, Harrison filed a petition for further appellate review with the Supreme Judicial Court. As of the Rule 9A service date of this memorandum, the petition remains pending.
[7] "In November 2009, the Legislature added the MBTA to the list of 'public employers' covered by the Massachusetts Tort Claims Act, . . . thereby leaving no doubt as to the MBTA's status as a State entity and 'public employer'. . . ." Harrison, 101 Mass. App. Ct. at 662 (citing St. 2009, c. 25, §§ 112-113, 123).

6

"many sections of c. 149 expressly cover public employers and public employees." Id. Under the

surplusage cannon, interpreting courts must "give effect to each word" in the statute "and no word

shall be regarded as surplusage." Ropes & Gray LLP v. Jalbert, 454 Mass. 407, 412 (2009).

Reading the Wage Act's anti-retaliation provision as applying to public employers even where not

expressly stated would render meaningless the other sections of Chapter 149 that are expressly

applicable to public employers and public employees,[8] in violation of the surplusage canon. See,

e.g., Commonwealth v. Maher, 408 Mass. 34, 37 (1990) (courts avoid a construction that would

"make statutory language meaningless"). It would also insert language into Section 148A that the

Legislature did not include. See Mui v. Mass. Port Authy., 478 Mass. 710, 712 (2018) (courts

ordinarily "will not add language to a statute where the Legislature itself has not done so.").

Finally, the Appeals Court remarked that: "Given the number of public employees impacted and

the potential danger to the public fisc, we believe that the Legislature would have used more

precise language if it had intended to waive immunity." Harrison, 101 Mass. App. Ct. at n.8 (and

cases cited).

Harrison applies on all fours with the allegations in this case.[9] Here, Cullinane brought a

single count against the Town for violation of the anti-retaliation provision of the Wage Act. See

Complaint at ¶¶ 76-81. The Town is a municipality that, like the MBTA in Harrison, is a public

employer. See Complaint at ¶ 2. As was true for the allegations of retaliation against the MBTA

in Harrison, the allegations of retaliation against the Town here are predicated on a violation of

---

[8] See Harrison, 101 Mass. App. Ct. at 663 n.11 (collecting provisions of Chapter 149 that expressly apply to public employers and/or public employees).

[9] The only difference is that here Cullinane's claim is based on retaliation as a result of his complaint about overtime wages, where Harrison addressed both misclassification as an independent contractor and alleged retaliation for a complaint about misclassification as independent contractors. However, the sovereign immunity argument does not turn on this distinction.

M.G.L. c. 149, § 148A. See Complaint at ¶¶ 76-81. And finally, the same concerns about protection of the public fisc apply equally to a municipality like the Town as applied to the MBTA in Harrison. The Appeals Court's holding in Harrison is therefore equally applicable to the Town as it is to the MBTA. In line with Harrison, this Court must conclude that the Legislature did not waive the Town's sovereign immunity from anti-retaliation claims, barring the Plaintiff "grounds specialist" lawsuit brought pursuant to M.G.L. c. 149, § 148A.

## CONCLUSION

**WHEREFORE**, the defendant Town of Concord respectfully moves this Honorable Court to Dismiss the sole count of the plaintiff's Complaint against it, and enter Judgment in favor of the Town, with prejudice and costs, attorney's fees, and such other relief this Honorable Court deems just and proper.

Respectfully submitted,

TOWN OF CONCORD

By its Attorneys,

**PIERCE, DAVIS & PERRITANO, LLP**

*/s/ Justin L. Amos*

Justin L. Amos, BBO #697232
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jamos@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2022 a true copy of this document was served upon each attorney of record via electronic mail.

*/s/ Justin L. Amos*

Justin L. Amos

8

Date Filed 1/4/2023 9:36 AM
Superior Court - Middlesex
Docket Number 2081CV02483

# Exhibit 1



**TOWN OF CONCORD**
**Human Resources Department**
TOWN HOUSE
P.O. BOX 535
CONCORD, MASSACHUSETTS 01742

TEL: 978-318-3025
FAX: 978-318-3024
*hr@concordma.gov*

December 7, 2017

Scott Cullinane
6 Kruse Rd.
Hubbardston, MA 01452

Dear Scott,

This is to advise you that you have been placed on paid administrative leave pending an internal investigation into allegations that you have taken Town property without authorization by the Town.

While on administrative leave and until such time as you have been advised by me otherwise, the following directives apply to you:

1. You may not engage in communications or duties related to your role as Park & Tree Specialist (Aerial) for the Town.

2. You must remain out of non-public areas of Town of Concord facilities; grounds, and job sites.

3. You may not communicate with any potential witnesses related to this investigation, nor may you engage other individuals to contact such persons to discuss this matter on your behalf; however, you or your representative may communicate with me, the Public Works Director, or the Town Manager.

4. You must be available during your regular work hours for any meetings that the Town may schedule with you. You must also promptly respond to any communications you receive from me, the Public Works Director, or the Town Manager.

5. By noon on December 8, 2017, you are to contact me at afoley@concordma.gov or 978-318-3025 to advise me of any and all Town property in your possession and make arrangements with me to turn such property over as the Town deems appropriate at this time.

Please provide me with a phone number at which you can be reached during business hours. If you have a personal email address at which you would like to receive communications, please provide that as well.

If you have any questions you may contact me directly at 978-318-3025.

Sincerely,

Amy Foley
Human Resources Director

Cc:    Christopher Whelan, Town Manager
       Richard Reine, Public Works Director
       Daniel Rowley, Highway & Ground Superintendent
       Personnel file

# Exhibit 2



# TOWN OF CONCORD

### HUMAN RESOURCES DEPARTMENT

TOWN HOUSE
P.O. BOX 535
22 MONUMENT SQUARE
CONCORD, MASSACHUSETTS 01742-0535

TEL: 978-318-3025
FAX: 978-318-3024
hr@concordma.gov

December 12, 2017

Scott Cullinane
14 Springdale Rd.
Lexington, MA  02420

     RE:  Notice of Required Appearance at Investigative Interview

Dear Scott:

Town Manager Christopher Whelan has appointed Michael Gardner, an independent contractor, to be the investigative officer relative to the allegations that you took Town property without authorization by the Town.

You are hereby ordered to report to the **Human Resources Department on the 2nd Floor of the Concord Town House on Wednesday, December 13, 2017, at 1:55 p.m.** to participate in an investigatory interview regarding this matter.  You are entitled to have a Union representative at the interview.  You should not arrive before the scheduled time.  You are required to cooperate fully with the investigator, answering his questions truthfully and completely.

Since the investigation will not yet be complete at the end of your interview, you are directed not to discuss this matter with any potential witnesses.  Furthermore, the other directives outlined in my December 7, 2017 letter to you will remain in effect until further notice.

Sincerely,

Amy Foley
Human Resources Director

CC:    Chris Whelan, Town Manager
       Rich Reine, Public Works Director
       Michael Gardner, Investigating Officer
       Joan Corey, Teamster Business Agent
       Personnel File

# Exhibit 3



**TOWN OF CONCORD**
**Human Resources Department**
TOWN HOUSE
P.O. BOX 535
CONCORD, MASSACHUSETTS 01742

TEL: 978-318-3025
FAX: 978-318-3024
hr@concordma.gov

May 1, 2018


Scott Cullinane
14 Springdale Road
Lexington, MA 02420

Dear Scott:

Public Works Director Rich Reine has recommended that Town Manager Christopher Whelan, as the appointing authority, terminate your employment based on job abandonment (unauthorized leave and failure to communicate with the Town). This recommendation is without prejudice to the fact that there is still an open investigation in which you are involved, and the Town reserves its right to act on that matter if circumstances warrant.

Therefore, the Town Manager will hold an informal hearing on <u>Thursday, May 10, 2018 at 9:00 a.m.</u> in the Select Board's Room at the Concord Town House, 22 Monument Square, Concord, Massachusetts, to consider whether there is cause to terminate your employment as Park & Tree Specialist (Aerial) with the Town of Concord.

At the hearing, Mr. Reine will present the reasons why he recommends that your employment be terminated, and you will be provided an opportunity to present any reasons through oral argument or documentation why you feel your employment should not be terminated. You may bring another individual with you to observe the hearing but that person may not respond on your behalf and, since this is an informal hearing, may not be an attorney of law.

Mr. Whelan will consider all information presented to him at the informal hearing in determining whether or not to terminate your employment with the Town. If you choose not to attend the hearing or not to present any information to the Town Manager, he will make his determination based on the information presented by Mr. Reine.

If Mr. Whelan determines there is cause to terminate your employment, such termination will be effective immediately upon notice of his decision. He typically issues a decision

Scott Cullinane
May 1, 2018
Page 2


within 48 hours of the hearing. In that case, you would then have the right to appeal the termination decision in accordance with the attached Employee Appeal Procedure.

If you have any questions, or if you have any information that you wish the Town to consider before the informal hearing, please contact me at 978-318-3025 or forward the information to me immediately.

Sincerely,

Amy Foley
Human Resources Director


Cc:  Christopher Whelan, Town Manager
     Richard Reine, Public Works Director
     Personnel file


Enclosure

# Exhibit 4

CONCORD PUBLIC WORKS
DIRECTOR'S OFFICE
133 Keyes Road
Concord, MA 01742

Tel: (978) 318 - 3201
Fax: (978) 287 - 4762



DATE: May 1, 2018

**MEMORANDUM**

**TO:** Christopher Whelan, Town Manager

**VIA:** Amy Foley, Human Resources Director

**FROM:** Richard Reine, Public Works Director

**SUBJECT:** Scott Cullinane – Recommendation to Terminate Employment

---

I am writing to recommend that you terminate Scott Cullinane's employment as Park & Tree Specialist (Aerial) for the Town of Concord.

As you are aware, on December 7, 2017 Scott was placed on paid administrative leave pending an internal investigation into allegations that he took Town property without authorization of the Town. That investigation was placed on hold after Scott provided medical documentation indicating that he was unable to participate in an investigatory interview due to medical reasons. Due to his unavailability, he was placed on unpaid administrative leave effective December 18, 2017, and was permitted to use accrued sick and vacation leave to receive pay during his absence. His absence was designated as Family and Medical Leave Act (FMLA) leave. Effective January 3, 2018, Scott was placed on unpaid leave because his paid leave accrual was exhausted. Scott's twelve weeks of FMLA leave entitlement expired March 25, 2018.

On two different occasions during his absence, 1/13/18 and 2/27/18, the Town received updated medical documentation indicating Scott's inability to perform the essential functions of his position or to participate in an investigatory interview. The last medical documentation provided expired on or about March 26, 2018.

It is my understanding that the Town, via the Human Resource Director Amy Foley and Attorney Kim Rozak, has made multiple attempts to contact Scott, both directly and via his legal counsel to obtain updated information regarding Scott's medical status and availability. In a letter sent to Scott and copied to his attorney on April 11, 2018, Amy Foley advised Scott that updated medical documentation was needed, the Town intended to schedule an interactive conference with him, and if she did not hear from him by noon on April 13, 2018, the Town would review his

CONCORD PUBLIC WORKS
DIRECTOR'S OFFICE
133 Keyes Road
Concord, MA 01742

Tel: (978) 318 - 3201
Fax: (978) 287 - 4762



DATE: May 1, 2018                                    **MEMORANDUM**

employment status without his input. Neither Scott nor his attorneys have responded to the Town's inquiries, nor has Scott requested a continuation of leave.

The Town has met its obligation to provide FMLA leave and reasonably accommodate Scott's medical condition. Concord Public Works is not able to hold open indefinitely the Park & Tree Specialist (Aerial) position, or an internal investigation. Furthermore, we cannot allow an employee to be absent from work without a request for and approval of leave, or any indication of whether/when the individual will be able to return to duty, or ignore the Town's attempts to communicate with the employee. Accordingly, I recommend that you terminate Scott Cullinane's employment with the Town of Concord.

7.2

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH

Middlesex, ss.

Superior Court Department
Civil Action No. 2081-CV-02483

SCOTT CULLINANE,
                    Plaintiff

v.

TOWN OF CONCORD,
                    Defendant

**PLAINTIFF'S OPPOSITION TO
DEFENDANT'S MOTION FOR
JUDGMENT ON THE PLEADINGS &
PLAINTIFF'S CROSS MOTION TO
AMEND THE COMPLAINT**

**RECEIVED**

01/04/23

NOW COMES Scott Cullinane ("Cullinane"), Plaintiff in the above-captioned matter, and

opposes the Town of Concord's ("Town") Motion for Judgment on the Pleadings ("Motion").

Because the Appeal's Court decision in Harrison v. Massachusetts Bay Transportation Authority[1]

does not apply to the present case, the Town is not immune from Cullinane's retaliation claim

under G.L. c. 149, § 148A. Therefore, Cullinane respectfully requests that this Honorable Court

deny the Town's Motion.

By cross motion, Cullinane requests that he be granted leave of court to amend his

complaint to plead claims of Unlawful Retaliation in Violation of the Fair Labor Standards Act

(29 U.S.C. § 215(a)(3)), and, alternatively, if the Fair Labor Standards Act does not apply,

Wrongful Termination in Violation of a Public Policy, and Violation of 42 U.S.C. § 1983.

**FACTUAL BACKGROUND**[2]

---

[1] 101 Mass. App. Ct. 659 (2022).
[2] The following facts are drawn from Cullinane's Complaint. Citation to the correspondence
allegations in Cullinane's Complaint is made in the following format with "X" corresponding to
the numbered paragraphs thereof: C. ¶ X.

1                                                                    JB

2083 June 3rd
Motion allowed. See memo and order (Deakin, J.)
Attest Qua facto 2y by
asst Clerk

Cullinane was a long-time employee of the Town. (C. ¶ 3) Specifically, beginning in 1997, Cullinane worked as a grounds specialist for the Town's Department of Public Works ("DPW"). This position required him to perform maintenance and tree removal, grounds work, and aerial lift operation work. (C. ¶ 4) As a grounds specialist, Cullinane was required to be on call for emergencies such as tree removal due to storm damage. (C. ¶ 5)

Cullinane's employment agreement with the Town provided that Cullinane was to be paid an extra amount of money for every call to which he responded to under certain circumstances. (C. ¶ 6) One day in October 2017, Cullinane was not working, but was on call. (C. ¶ 8) He was called to a job to remove a tree. After he completed the job, he went home. (C. ¶ 10) Later that night, he was called again for another job which he went to and completed. (C. ¶¶ 11-12) Thereafter, Cullinane put in for payment for the two calls. Cullinane reasonably believed payment was owed to him as wages. (C. ¶ 13) One of Cullinane's supervisors, Keith Baldinger, approached Cullinane, slammed Cullinane's time sheet on the desk, and stated "we are not fucking paying you for this." (C. ¶ 14) Despite Cullinane's statement that these were wages, Baldinger repeated that Cullinane would not be paid for the two calls. (C. ¶¶ 15-16).

Cullinane reported this matter a department manager of the Town, as well as Human Resources, and advised both that he was due the wages. (C. ¶ 17-18) Shortly after, Cullinane attended a meeting with Baldinger, another supervisor, Daniel Rowley ("Rowley"), and the Director of Public Works, Rich Reine ("Reine"). Reine told Cullinane that the Town would pay him for the calls, but that there is not going to be a next time. (C. ¶ 22)

The Town ultimately paid Cullinane for the calls, but thereafter, he experienced retaliatory conduct by Rowley and Baldinger. (C. ¶ 27) Specifically, on or about December 5, 2017, Cullinane was working at the direction of his supervisors cleaning up assorted piles of scrap in the Town that

2

the Town was throwing in the trash. (C. ¶ 28) While doing this work, Cullinane came across several items of scrap that he believed would be useful to him as scrap metal. (C. ¶ 31) Since the items were going to be thrown away, Cullinane asked Jeffrey Koranda ("Koranda"), a line supervisor with the Town's highway department, whether Cullinane could take some of the pieces. (C. ¶ 32) Koranda told him to "take what you want" and confirmed that the pieces were trash. (C. ¶ 34) With Koranda's permission, took the trash and placed it in the back of his truck during his lunch time. (C. ¶ 35)

Days later, on December 7, 2017, after having seen the scrap metal in Cullinane's truck, Rowley reported to the Town's chief of police that Cullinane was stealing the Town's property. (C. ¶ 38) As a result, on December 17, 2017, Cullinane was arrested in a highly public and unusual manner. (C. ¶ 42) Specifically, he was pulled over on his way into the DPW about 500 yards from the property. (C. ¶ 43) After the arrest, agents of the Town sought application for a criminal complaint against Cullinane. (C. ¶ 47) During the hearing on the application, the magistrate who heard the matter declined to issue a criminal complaint, calling the situation "ridiculous" and suggested that the Town's allegations were frivolous, fraudulent, and should not be pursued. (p. 48)

The Town took further action against Cullinane including a no trespass notice that prohibited Cullinane from "non-public areas of [the Town's] Facilities, grounds, and job sites, and suspending him from his job pending an investigation. (C. ¶¶ 50-51) These actions, coupled with the arrest and threat of prosecution, created an intolerable work environment that no reasonable person could or would have returned to. (C. ¶ 66) As a result of these actions, Cullinane suffered personal injuries and significant emotional distress, which prevented him from working. (C. ¶¶ 56-58) Consequently, Cullinane sought a medical leave of absence and was placed on FMLA leave

3

(C. ¶ 59). In a letter dated May 1, 2018, the Town notified Cullinane that his termination from

employment with the Town had been recommended based on job abandonment. (C. ¶ 63) Notably,

the letter instructed Cullinane that there would be a hearing on the matter, but that he could not

bring an attorney. (C. ¶¶ 63-64) As a result of this letter, knowing that he would not get due process

for the legitimate concerns he had, Cullinane resigned. (C. ¶ 68)

**ARGUMENT**

I.    <u>**The Town is Not Immune from Cullinane's Retaliation Claim.**</u>

The Town claims that it is immune from suit for Cullinane's retaliation claim under G.L.

c. 149, § 148A based on the Appeals Court's recent holding in <u>Harrison v. Massachusetts Bay</u>

<u>Transportation Authority</u>, 101 Mass. App. Ct. 659 (2022). In <u>Harrison</u>, the Appeals Court held that

the Massachusetts Bay Transportation Authority ("MBTA") was immune from claims under G.L.

c. 149, § 148A (the anti-retaliation provision of the Massachusetts Wage Act), due to the doctrine

of sovereign immunity. In reaching this conclusion, the Court determined that since the statute

does not expressly state that it applies to state agencies such as the MBTA, the rules of statutory

construction suggest that it does not. The Court relied almost exclusively on the concept of

sovereign immunity.

The doctrine of sovereign immunity holds that, "[i]n general, the Commonwealth or one

of its agencies 'cannot be impleaded in its own courts except with its consent.'" <u>Smith v.</u>

<u>Massachusetts Bay Transportation Authority</u>, 462 Mass. 370, 373 (2012). However, "'[t]here is a

distinction between the Commonwealth and its agencies on the one hand and political subdivisions

of the Commonwealth on the other.' . . . 'Political subdivision of the Commonwealth' is a term of

art traditionally associated with cities, towns, and other units of local government, ***which are***

4

*neither the Commonwealth itself nor its agencies.*" Daveiga v. Boston Public Health Commission, 449 Mass. 434, 441-42 (2007) (emphases added).

In Harrison, the MBTA challenged the applicability G.L. c. 149, § 148A. The MBTA is a is a division of the Massachusetts Department of Transportation and is therefore a state agency. *See* G.L. c. 6C, §§ 1 et seq. The Harrison ruling is therefore limited to state agencies such as the MBTA. See Smith, 461 Mass. at 373 ("[T]he MBTA "is funded in part from the Commonwealth's treasury . . . and in part from the budgets of the cities and towns that it serves. . . . Under the doctrine of sovereign immunity, therefore, the MBTA is not amenable to suit without the Commonwealth's express consent"). Since the Harrison decision does not address its application to municipalities, it is informative to look at federal law as state law may not contravene federal law. *See* U.S. Const. Art. VI, cl. 2 (the Constitution and laws of the United States are the supreme Law of the Land). The United States Supreme Court has repeatedly refused to extend sovereign immunity to counties, and municipalities do not enjoy any constitutionally protected immunity from suits under federal law. *See* Lake Country Estates, Inc. v. Tahoe Regional Planning Agency, 440 U.S. 391, 401 (1979); Jinks v. Richland County, S.C., 538 U.S. 456, 466 (2003).[3]

Therefore, since it is clearly established that a distinction lies between (1) the Commonwealth and its agencies and (2) political subdivisions such as towns and cities, and where the doctrine of sovereign immunity has been held inapplicable to municipalities, its application to the Town is not as clear-cut as the Town seems to assert in its Motion. Therefore, the Town's

---

[3] *See also* Morash & Sons, Inc. v. Com., 363 Mass. 616 (1973). In Morash, the Supreme Judicial Court first articulated its belief that it was advisable to abolish the doctrine of government immunity as applied to the Commonwealth and its various political subdivisions. Later, n Morrissey v. New England Deacones Ass'n—Abundant Life Communities, Inc., the Court reiterated the concept of abolishing sovereign immunity and "the crazy quilt of exceptions to sovereign immunity" that courts had "stitched together." 458 Mass. 580, 587 (2010).

liability for Cullinane's retaliation under § 148A claim is, and should not be, affected by the

Harrison ruling. Thus, the Cullinane has sufficiently plead facts to support his claim for retaliation

in violation of G.L. c. 149, § 148A, and the Town's Motion should be dismissed.

**II.    Cullinane Should be Granted Leave of Court to Amend His Complaint.**

Should this Court determine that the Harrison ruling applies to the instant case and the

Town is immune from suit on Cullinane's retaliation claim, Cullinane has plead an alternative

theory of liability, and by this motion asks this Court grant him leave to amend his complaint. A

copy of the proposed amended complaint is attached hereto as Exhibit A.

Massachusetts Rule of Civil Procedure 15(a) allows a party to amend a pleading under

broadly stated circumstances. Specifically, the rule provides that a Court, upon motion of a party,

shall "freely" permit leave to amend a pleading "when justice so requires." Mass. R. Civ. P. 15(a).

It is well settled that leave to amend should be granted unless there appears some good reason for

denying the motion, such as undue delay, bad faith, dilatory motive on the part of the movant,

repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the

opposing party, or futility of amendment. Goulet v. Whitin Machine Works, Inc., 399 Mass. 547,

549-50 (1987), *citing* Castellucci v. USF&G Co., 372 Mass. 288, 289-290 (1977). Thus, the

burden falls upon the party opposing the motion to establish the reason for denying it. DiGregorio

v. Commonwealth, 10 Mass. App. Ct. 861, 407 N.E.2d 1323 (1980). The decision to grant a motion

to amend a complaint lies within the discretion of the trial judge, Harvard Law School Coalition

for Civil Rights v. President and Fellows of Harvard College, 413 Mass. 66, 72 (1992), and the

judge should be generously disposed to grant such motions. DiVenuti v. Reardon, 37 Mass. App.

Ct. 73, 637 N.E.2d 234 (1994). In this case, justice requires that Cullinane's complaint be amended.

6

Cullinane's proposed amendment is not futile, will not cause undue prejudice to the Town, and is made in good faith.

### A. The Amendment Will Not be Futile.

In considering whether an amendment is futile, the Court should evaluate the proposed claim using the 12(b)(6) standard—that is, whether the claim, if added, would survive a motion to dismiss for failure to state a claim. Mancuso v. Kinchla, 60 Mass. App. Ct. 558, 572 (2004). *See* Mass. R. Civ. P. 12(b)(6). When evaluating the sufficiency of a complaint pursuant to Mass. R. Civ. P. 12(b)(6), the Court must accept as true the factual allegations of the Complaint and all reasonable inferences favorable to the plaintiff which can be drawn from those allegations. Fairneny v. Savogran, 422 Mass. 469, 470 (1996). The question is whether the facts alleged, generously construed in favor of the plaintiff, state a valid legal claim that would warrant relief under any theory of law. Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 285-86 (2007). Here, the facts alleged in the proposed amended complaint state a valid claim that would warrant relief under the common law claim of wrongful termination in violation of public policy.

1. <u>Unlawful Retaliation in Violation of the Fair Labor Standards Act</u>

The Fair Labor Standards Act ("FLSA") "requires an employer to record, credit, and compensate employees for all of the time which the employer requires or permits employees to work." Tum v. Barber Foods, Inc., 331 F.3d 1, 5 (1st Cir. 2003), *citing* 29 U.S.C. § 201, *et seq.* Section 215(a)(3) of the FLSA makes it unlawful for "any person . . . to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to th[e FLSA]." 29 U.S.C. § 215(a)(3). In the instant case, the proposed amended complaint alleges that Cullinane complained to agents of the Town that he had not been paid wages owed to him under the FLSA, and that after

7

Date Filed 1/4/2023 9:36 AM
Superior Court - Middlesex
Docket Number 2081CV02483

making such complaint, the Town retaliated against Cullinane by wrongfully accusing him of a crime, arresting him in a highly unusual and public manner, and ultimately constructing discharging/terminating him.

Under the FLSA "person" includes a corporation. 29 U.S.C. 203(a). Therefore, municipalities, otherwise known as municipal corporations, constitute "person"" within the meaning of § 215(a)(3). *See* Kearney v. Town of Wareham, 316 F.3d 18 (2002) (employee brought retaliation claim under § 215(a)(3) against municipal employer). *See also* Garcia v. San Antonio Metropolitan Transit Authority, 469 U.S. 528, 528, 556-57 (1985), *rehearing denied* 471 U.S. 1049 (1985) (local public transit authority subject to suit regarding minimum wage and overtime requirements of the FLSA); Alden v. State of Maine, 527 U.S. 706, 756 (1999) ("[Sovereign] immunity does not extend to suits prosecuted against a municipal corporation"). Consequently, Cullinane has asserted a valid claim for unlawful retaliation under the FLSA. Therefore, the proposed amendment asserting such a claim will not be futile, and Cullinane's request for leave to amend his complaint should be granted.

2. Wrongful Termination in Violation of Public Policy

This claim is plead in the alternative in the event that the claims under G.L. c. 149, § 148A, or the FLSA are found inapplicable. It is well established in Massachusetts that an employer is liable for terminating an at-will employee for a reason that violates clearly defined public policy. Wright v. Shriners Hospital for Crippled Children, 412 Mass. 469, 472 (1992); Flynn v. City of Boston, 59 Mass. App. Ct. 490, 493 (2003). Whether a clearly defined public policy exists is a question of law for the Court. Id. Courts have established that an employee must show the following to demonstrate a wrongful termination: (1) asserting a legally guaranteed right; (2) doing what the law requires; (3) refusing to do that which the law forbids; (4) reporting violations of

criminal law; or (5) cooperating with a law enforcement agency. Wright, 412 Mass. at 472; Flesner v. Technical Communications Corp., 410 Mass. 805, 810-11 (1991). Reporting the failure to pay wages is a report of a crime, as failure to pay wages is criminal under G.L. c. 149.

An employee's complaint regarding unpaid wages is protected conduct. Further, the Massachusetts Wage Act ("Wage Act") entitles all employees to wages earned for work performed and protects employees who are not paid such wages. G.L. c. 149, § 148. The law, therefore, makes payment wages for work performed a legally guaranteed right for all employees, including employees of public employers. *See* Newton v. Commissioner of Dept. of Youth Services, 62 Mass. App. Ct. 343, 346 (2007). *See also* G.L. c. 149, § 148 ("Every public officer whose duty it is to pay money, approve, audit or verify pay rolls, or perform any other official act relative to payment of any public employees, shall be deemed to be an employer of such employees, and shall be responsible under this section for any failure to perform his official duty relative to the payment of their wages or salaries, unless he is prevented from performing the same through no fault on his part").

The allegations in the proposed amended complaint claim that Cullinane was constructively discharged/terminated after petitioning for and asserting a legally guaranteed right—that is, complaining that he had not been paid wages he believed to be rightfully owed to him for work performed. Specifically, the proposed amended complaint alleges that shortly after asserting his legally guaranteed right to be paid wages owed to him, Cullinane was retaliated against, including, but not limited to, being arrested in a highly unusual and public manner and thereafter constructively discharged/terminated. Additionally, Cullinane was not provided due process required by law, including the right to notice or an opportunity to be heard in a pre-

deprivation setting. Therefore, Cullinane has asserted a valid legal claim for wrongful termination that warrants relief. Eigerman, 450 Mass. at 285-86.

Where a statute prescribes a remedy for employees terminated for exercising their rights under the statute, common law remedies are not necessary. Mello v. Stop & Shop Companies, Inc., 402 Mass. 505, 507 (1988). Based on this principle, Cullinane anticipates that the Town will argue that Cullinane cannot maintain a of claim wrongful termination in violation of public policy because there is a statutory preempting such a claim—that is, the anti-retaliation provision of the Wage Act.[4] Notably, in its Motion, the Town claims that the anti-retaliation provision of the Wage Act does not afford Cullinane any remedy based on the Appeals Court's ruling in Harrison. An instructive case on this issue is Melley v. Gillette Corp., 397 Mass. 1004 (1986), *affirming and adopting analysis and conclusion of* Melley v. Gillette Corp., 19 Mass. App. Ct. 511 (1985). In Melley, the Court restated the long-standing justification for public policy claims that "unless a [statutory] remedy is recognized, there is no other way to vindicate such public policy. Id. at 511-512.

If, as argued in the Town's Motion, the Harrison ruling applies and that the Town is immune from Cullinane's retaliation claim under the Wage Act, then the Wage Act provides no statutory remedy for Cullinane, and it cannot preempt his public policy claim. *See* Melley, 19 Mass. App. Ct. at 512-13 (focusing question of preemption on whether statutory scheme *actually* provides a remedy and holding that the public policy doctrine is not available only to a claimant who could have asserted a statutory claim to vindicate his rights). Therefore, the proposed amendment including a claim for wrongful termination in violation of public policy will not be

---

[4] G.L. c. 149, § 148A.

futile, and Cullinane's request for leave to amend his complaint to plead this as an alternative claim to claims under G.L. c. 149 and the FLSA should be granted.

### 3. Deprivation of Rights

As an additional claim to be plea in alternative to claims under G.L. c. 149 and the FLSA, Cullinane pleads a claim of constitutional deprivation. Section 1983 provides a remedy for the "deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S. C. § 1983. To succeed on a claim under section 1983, a plaintiff must show the following: (1) that he or she was deprived of a federally protected right, and (2) that the deprivation occurred under color of law (i.e., state action). Gomez v. Toledo, 466 U.S. 635, 640 (1980). The allegations in the proposed amended complaint claim that the Town, acting under the color of law, demonstrated a deliberate indifference to Cullinane's rights, deprived Cullinane of his federally protected right to pay under the Fair Labor Standards Act, and deprived him of his right to be free from retaliatory arrest under the Fourth and Fourteenth Amendments, and deprived him of his right to due process protected by the Fourteenth Amendment. Therefore, Cullinane has sufficiently plead that the Town deprived him of federally protected rights.

The proposed amended complaint also pleads the second element of a claim under Section 1983—that the deprivation occur under the color of law. "[A] public employee acts under color of state law while acting in his official capacity or while exercising his responsibilities pursuant to state law." West v. Atkins, 487 U.S. 42, 50 (1988). Unlike states, local government bodies such as municipalities are "persons" under section 1983 and may be sued directly. Monnell v. Social Servs. of N.Y., 436 U.S. 658, 662, 686 (1978). A municipality may be held liable when it implements an official policy, either formally adopted or adopted through custom and usage, and that policy is the moving force behind, or the cause of, a deprivation of federally protected rights. Id. at 690.

Here, specifically, supervisors informed Cullinane they would not pay him in the future if he was called in for work, which became a policy within the meaning of the law. Further, Cullinane plead that the Town failed to train, discipline, and prevent retaliation arising out of protected speech regarding pay.

Municipalities can be held liable under section 1983 for failure to adequately train and supervise its employees. City of Canton v. Harris, 489 U.S. 378, 378 (1989). Claims based on a municipality's failure to train, supervise, or discipline are actionably under section 1983 if the failure "evidences a 'deliberate indifference' to the rights of its inhabitants." DiRico v. City of Quincy, 404 F.3d 464, 469 n.12 (1st Cir. 2005), quoting City of Canton, 489 U.S. at 389. Here, the proposed amended complaint alleges that the Town, despite being on notice of former complaints relative to unpaid wages and retaliation for the same, failed to train, supervise, or discipline its agents regarding federally and constitutionally protected rights, and that such failure constitutes a deliberate indifference to Cullinane's rights. Therefore, the proposed amendment including a claim for deprivation of rights will not be futile, and Cullinane's request for leave to amend his complaint should be granted.

**B. The Town Will Not be Unduly Prejudiced by the Amendment.**

This case, despite having been filed more than two years ago, is still in its infancy, with only paper discovery completed and depositions not yet conducted. Importantly, delay alone is not usually sufficient to justify denial of a motion for leave to amend. Goulet, 399 Mass. at 550 n.3, 552 (citing with approval federal cases which have stated that delay alone is an insufficient reason to deny amendments unless the delay causes undue prejudice to the opposing party).

The proposed claims are based on an almost identical theory to that asserted in Cullinane's original complaint—that is, Cullinane that was constructively discharged/terminated after

12

asserting his right—and is based upon the same set of facts. *See* <u>Karatihy v. Commonwealth Flats</u> <u>Development Corp.</u>, 84 Mass. App. Ct. 253, 255 92013) (retaliation claim under the Wage Act requires the employee to show (1) the employee engaged in a protected activity; (2) the employee faced an adverse employment consequence; and (3) the protected activity caused the adverse employment action). The issue of Cullinane's separation from employment with the Town, as well as the events leading up to the same, have been discovered in this action during written discovery. Therefore, no further written discovery is necessary on the proposed claim. Because Cullinane's separation has been the issue since the original complaint was filed, amending the complaint to allow a cause of action for wrongful termination in violation of public policy will cause no prejudice to the Town. Further, no trial date has been scheduled, and there is no imminence of trial such that amending the complaint would affect the efficiency of moving this case forward. *See* <u>LaFleur v. Cicconi</u>, 2000 WL 33170937 (court allowed the filing of an amendment to the complaint three years after filing original complaint as a trial date had yet to be set). Certainly, this action has not moved beyond a point where amended the complaint would be harmful or prejudicial to the Town. Therefore, Cullinane's request for leave to amend should be allowed.

### C. The Proposed Amendment is Made in Good Faith.

This is Cullinane's first request for leave to amend, and it is sought in good faith. The proposed amended complaint contains a claim for wrongful termination in violation of public policy, which is an alternative theory of liability stemming from the same facts upon which Cullinane's original claim is based. Notably, if this Court determines that the <u>Harrison</u> ruling applies, without amendment, Cullinane will be without any redress for the Town's harms.

Because Cullinane only seeks to amend his complaint in light of the Town's motion for judgment on the pleadings and the recent <u>Harrison</u> ruling, Cullinane could not have brought his

13

request any sooner. Therefore, there has been no undue delay, bad faith, or dilatory motive on behalf of Cullinane in bringing this request to amend, and this Court should allow his request to amend.

## CONCLUSION

The Appeals Court's ruling in <u>Harrison</u> does not apply to the instant action because the <u>Harrison</u> decision is limited to liability by the Commonwealth and its agencies, not cities and towns. Therefore, the Town is not immune from suit for Cullinane's retaliation claim under G.L. c. 149, § 148A. Therefore, Cullinane respectfully requests that this Court deny the Town's Motion for Judgment on the Pleadings.

Alternatively, should this Court determine that the Harrison ruling does apply to the instant action, Cullinane respectfully requests that this Court allow him leave of court to amend his complaint to plead claims of Unlawful Retaliation in Violation of the Fair Labor Standards Act (29 U.S.C. § 215(a)(3)), and, alternatively, if the Fair Labor Standards Act does not apply, Wrongful Termination in Violation of a Public Policy, and Violation of 42 U.S.C. § 1983.

Date: November 23, 2022

PLAINTIFF, Scott Cullinane, on his behalf and on behalf of all other similarly situated individuals

Lisa Brodeur-McGan (BBO# 556755)
Katharine E. Shove (BBO# 705877)
Brodeur-McGan, P.C.
1380 Main Street, Suite 202
Springfield, MA 01103
(413) 735-1775; Fax: (413) 735-1772
lbm@brodeurmcgan.com
kes@brodeurmcgan.com

CERTIFICATE OF SERVICE

    I, Katharine E. Shove, do hereby certify that I made service of the foregoing document on this 23rd day of November, 2022, by email AND/OR first class mail, postage prepaid, to: Justin L. Amos, Esq. (jamos@piercedavis.com), Pierce Davis & Perritano, LLP, 10 Post Office Square, Suite 1100N, Boston, MA 02109.

Katharine E. Shove

# EXHIBIT A

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH

Middlesex, ss.
Superior Court Department
Civil Action No. 2081-CV-02483

SCOTT CULLINANE,
    Plaintiff

v.

TOWN OF CONCORD
    Defendant

**AMENDED COMPLAINT AND DEMAND
FOR JURY TRIAL**

### THE PARTIES

1.   Scott Cullinane ("Cullinane") is a natural person residing in Lexington, Middlesex County, Massachusetts.

2.   The Town of Concord, Massachusetts ("Town") is a duly established municipality in the Commonwealth, located in Middlesex County, Massachusetts.

### FACTS COMMON TO ALL COUNTS

3.   Cullinane was a long-time employee of the Town.

4.   Specifically, since 1997 Cullinane was employed as a grounds specialist performing tree maintenance and removal, grounds work, and aerial lift operation work, a position in the Town's Department of Public Works ("DPW").

5.   In his role as a grounds specialist, Cullinane was required to be on call for emergencies, such as tree removal due to storm damage.

6.   As part of his employment agreement, Cullinane was supposed to be paid an extra amount of money for every call to which he responded under certain circumstances.

7.  In October 2017, the Department of Public works was overseen by Daniel Rowley ("Rowley") and Rowley's assistant, Keith Baldinger ("Baldinger").

8.  On a day in the late fall of 2017, on or about October 29, Cullinane was not scheduled to work but was on call for the Town.

9.  On or about that date, Cullinane was called to a job to remove a tree.

10. Cullinane completed the job and after being cleared from this call by his supervisor, Cullinane left the site and proceeded home.

11. On the same night after Cullinane returned home, he was called again to another job for the Town.

12. Cullinane went to the second job, completed the work, and went home.

13. At the end of the week, Cullinane put in for payment for the two calls.

14. Cullinane reasonably believed that payment for the two calls was owed to him as wages under his employment agreement with the Town.

15. After Cullinane submitted his timesheet, Baldinger came into work area where Cullinane was sitting, slammed the time sheet paper on Cullinane's desk, and stated "we are not fucking paying you for this."

16. Cullinane responded that he had been called out twice and these were wages due under the agreement.

17. Baldinger repeated that he was not paying Cullinane for the two calls, to which Cullinane responded that he had to, it was "illegal" and that he had worked the calls and would complain to the Town administrators about this pay issue.

18. Indeed, Cullinane immediately verbally complained about the above referenced events to Pete Flynn ("Flynn"), a Town department manager.

19.   On the same day, Cullinane complained about the above-referenced events by reporting them by phone to the Town's Human Resource Director, Amy Foley ("Foley").

20.   Cullinane advised both Flynn and Foley that his wages were due and owed to him under his employment agreement with the Town.

21.   Foley stated that she would look into it.

22.   Days later, Flynn advised Cullinane to come into the lunchroom at work early to once again discuss this pay issue.

23.   Cullinane's supervisors, Baldinger and Rowley, as well as the Director of Public Works, Rich Reine ("Reine"), were in attendance.

24.   During this meeting, Reine told Cullinane that "we are going to pay you" but there is not going to be a next time.

25.   At this meeting both Baldinger and Rowley were visibly agitated and angry.

26.   At one point after this meeting on the same day, Baldinger threatened Cullinane and stated, "the next time I am going to make you sit there for eight hours even if it takes you fifteen minutes and pay you for four."

27.   Cullinane stated once again that such was not legal, nor would it motivate him to come into work in the middle of the night to take care of an emergency call.

28.   The Town ultimately paid Cullinane for this work, but thereafter his supervisors, Baldinger and Rowley, gave Cullinane ugly dagger-like looks as well as the cold shoulder.

29.   On or about December 5, 2017, Cullinane was working for the Town at the direction of his supervisors cleaning up assorted piles of scrap in the Town yard that the Town was throwing in the trash.

30. Doing this work, Cullinane was working under Jeffrey Koranda ("Koranda"), a line supervisor with the Town's Highway Department.

31. Koranda directed Cullinane to put the trash in a dumpster so that it could be taken away.

32. In doing this work, Cullinane came across several items of scrap that he believed would be useful to him in his home and as scrap metal.

33. Given that the items were just going to be thrown away, Cullinane asked Koranda if he could take some of the pieces.

34. Koranda told Cullinane to take whatever he wanted because it was just going to be thrown out, but to do so on his own time.

35. Specifically, Koranda told Cullinane to "take what you want" and confirmed that it was "trash."

36. With Koranda's permission, Cullinane took the trash and placed it in the back of his truck during his lunchtime which was "his own time."

37. Cullinane did not conceal or hide this trash and it remained in the back of his truck open and visible from December 7, 2017.

38. At some point, Rowley and Baldinger saw that Cullinane had the scrap in his truck.

39. On or about December 7, 2017, Rowley reported to the Town's Chief of Police, Joseph O'Connor ("Chief O'Connor"), that Cullinane was stealing the Town's property.

40. Neither Rowley nor Baldinger ever asked Cullinane if he had permission to take the items.

41. In fact, Rowley and Baldinger never asked Cullinane anything about the items before Rowley reported this event as a "crime" to Chief O'Connor.

42. At the time Rowley and Baldinger reported this "crime," the items had been in Cullinane's truck for two days and no one else from the Town had said anything to Cullinane, despite

the fact that Cullinane was going back to the Town yard to continue the clean up each day and the items were open and obvious.

43. As a result of Rowley's report to O'Connor, on December 17, 2017, Cullinane was arrested in a highly public and unusual manner.

44. Cullinane was pulled over by a police cruiser while on his way into the DPW about 500 yards from the DPW.

45. Cullinane was placed in handcuffs by the arresting officers and placed in a back of a cruiser and transported to the jail.

46. Officers in the police department hearing of the order to arrest Cullinane refused to participate in the call, and the arresting officers apologized for their part in this plan.

47. Upon information and belief, the scrap had no value and, in any event, had a value of less than $250.00.

48. Upon information and belief, it was custom and practice for the Town to seek a criminal complaint or show cause on such "crimes" and not to place a person under arrest in the manner Cullinane experienced.

49. At all times relevant, the Town's agents did not act in good faith, nor did they have a good faith belief in its report of a "crime."

50. The Town's agents, with improper motive, sought application for a criminal complaint drafted against Cullinane.

51. The hearing on their application for a criminal complaint proceeded on the Monday after the December 17, 2021, arrest.

52.  Based on the evidence presented at hearing, which mirrored the facts as stated above, the magistrate who heard the matter declined to issue a criminal complaint, calling the situation "ridiculous."

53.  The magistrate also made statements that should have alerted the Town that its allegations of a crime were frivolous and fraudulent and should not be pursued.

54.  Despite the magistrate's colloquy, the Town continued to correspond with Cullinane, allowing the threat of future criminal action to linger over his head.

55.  On December 7, 2017, the Town issued other legal process against Cullinane, including a No Trespass notice that prohibited Cullinane from "non-public areas of Town of Concord Facilities, grounds and job sites."

56.  On or about December 8, 2017, the Town also suspended Cullinane from his job pending an "investigation" concerning the removal of the trash.

57.  Rowley and Baldinger maliciously and falsely accused Cullinane of theft in retaliation for Cullinane's wage claim/petitioning activity.

58.  Based on information and belief, the manner of the arrest was a deviation from routine Town and police practices, especially in light of the fact that Cullinane was a longstanding, highly respected "integral" part of the Town DPW team.

59.  As a result of the Town's above conduct resulting from Cullinane's exercised his wage and hour rights under Chapter 149, Cullinane suffered personal injuries (workers compensation injury), including but not limited to insomnia, high blood pressure, shortness of breath, dizziness, nausea, loss of appetite, and other gastrointestinal issues.

60.  Cullinane also suffered significant emotional distress.

61.  Cullinane's physical and emotional condition prevented him from working.

62. As a result, Cullinane sought a medical leave of absence.

63. On December 19, 2017, the Town placed Cullinane "provisionally" on a leave of absence under the Family and Medical Leave Act.

64. On or about December 29, 2017, Cullinane notified the Town's Human Resources Director of his workers compensation injuries arising out of the above-referenced conduct.

65. The Town acknowledged on January 16, 2018, that the claim had been "filed electronically" with the state and that the insurer had already "denied" the claim.

66. While Cullinane was out on his leave of absence, the Town continued to retaliate, harass, and threaten him.

67. On May 1, 2018, the Town notified Cullinane by way of a letter that Public Works Director Reine recommended his termination based on "job abandonment" and notified Cullinane that they intended to have a hearing on the matter.

68. In this same letter, the Town again alluded to its ongoing "investigation" and criminal prosecution, and its "right to act on that matter if circumstances warrant."

69. The letter instructed that Cullinane could not bring an attorney to this job abandonment hearing.

70. The letter was ongoing retaliation due to fact that Cullinane exercised his wage and hour rights under Chapter 149 and for his complaints to both management and Human Resources.

71. The Town caused the constructive discharge of Cullinane and/or terminated Cullinane in in May 2018 in violation of a well-defined public policy.

72. No reasonable person could or would have returned to this workplace given the Town's conduct and ongoing threats of malicious prosecution, and no reasonable person with an

ongoing threat of criminal prosecution would have "testified" in the Town's planned

hearing referenced in its May 1, 2018, letter.

73.  After the letter of May 1, 2018, Cullinane knew he would not get due process for any of

the legitimate concerns he had and resigned.

74.  The Town's accepted Cullinane's "resignation" and discharged him, advising him that their

investigation results would be placed in his personnel file.

75.  The Town knew or should have known that Cullinane's absence from work was caused by

the Town's illegal, improper, and retaliatory conduct.

76.  At all times relevant, Cullinane had met or exceeded his performance standards.

77.  Cullinane's constructive discharge/termination was in retaliation for claiming/reporting his

rightfully owed wages or, in the alternative, for his petitioning activity surrounding his

right to be paid for his work and his right to be compensated for injuries sustained arising

out of his complaint process.

78.  At all times relevant, there was a strong public policy supporting the right to be paid for

work performed and/or the right to complain of the failure to be paid for work performed.

79.  At all times relevant, the Town had previously been sued specifically for wage and hour

violations and for retaliation in response to complaints for failure to pay wages.

### COUNT I
### Retaliation, G.L. c. 149, § 148A

80.  Cullinane repeats and re-alleges paragraphs 1-79 above and incorporates same by reference

as if originally stated herein.

81.  Cullinane complained to agents of the Town, his employer, that he had not been paid wages

rightfully owed to him under General Laws Chapter 149.

82.  At all times relevant, Cullinane had a good faith belief that these monies were owed and were wages within the meaning of the law.

83.  After Cullinane made those complaints, the Town retaliated against Cullinane by wrongfully accusing him of a crime, arresting him in a highly unusual and public manner, treating him poorly while out on medical leave, issuing a no trespass order, and ultimately terminating him.

84.  By these actions, the Town violated Section 148A of Massachusetts General Laws Chapter 149.

85.  As a result of the Town's retaliatory conduct, Cullinane suffered severe emotional distress, bodily injuries, economic harm, lost wages, and earning capacity, incurred attorney fees, and suffered other damages.

## COUNT II
### Wrongful Termination in Violation of Public Policy

86.  Cullinane repeats and re-alleges paragraphs 1-85 above and incorporates same by reference as if originally stated herein.

87.  Cullinane complained to agents of the Town, his employer, about wages rightfully owed to him under state and federal law.

88.  At all times relevant, Cullinane had a good faith belief that these monies were owed and were wages within meaning of the law.

89.  After Cullinane made the complaints, the Town retaliated against Cullinane by wrongfully accusing him of a crime without probable cause and in bad faith, arresting him in a highly unusual and public manner, treating him poorly while out on medical leave, issuing a no trespass order, and ultimately terminating him.

90.  By these actions, the Town constructively discharged/terminated Cullinane in violation of a well-defined public policy.

91.  As a result, Cullinane suffered severe emotional distress, bodily injuries, economic harm, lost wages, and earning capacity, incurred attorney fees, and suffered other damages.

## COUNT III
## Unlawful Retaliation in Violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 215(a)(3)

92.  Cullinane repeats and re-alleges paragraphs 1-91 above and incorporates same by reference as if originally stated herein.

93.  At all times relevant, the Town employed Cullinane within the meaning of the Fair Labor Standards Act ("FLSA").

94.  The Town is a municipal corporation.

95.  29 U.S.C. § 215(a)(3) prohibits an employer from discharging or discriminating against an employee for exercising rights under the FLSA.

96.  Cullinane complained to agents of the Town, his employer, that he had not been paid wages rightfully owed to him under the FLSA.

97.  At all times relevant, Cullinane had a good faith belief that these monies were owed and were wages within the meaning of the law.

98.  After Cullinane made those complaints, the Town retaliated against Cullinane by wrongfully accusing him of a crime without probable cause and in bad faith, arresting him in a highly unusual and public manner, treating him poorly while out on medical leave, issuing a no trespass order, and ultimately terminating him.

99.  The Town's conduct violated 29 U.S.C. § 215(a)(3).

100. As a result of the Town's retaliatory conduct, Cullinane suffered severe emotional distress, bodily injuries, economic harm, lost wages, and earning capacity, loss of reputation, incurred attorney fees, and suffered other damages.

## COUNT IV
### Deprivation of Rights, 42 U.S.C. § 1983

101. Cullinane repeats and re-alleges paragraphs 1-100 above and incorporates same by reference as if originally stated herein.

102. At all times relevant, Baldinger, Rowley, and Reine were supervisory agents of the DPW of the Town in relation to the above referenced allegations.

103. The Town is a municipal corporation.

104. At all times relevant, The Town's supervisory agents, Reine, its human resource agents, and others, had an obligation to supervise, train and discipline its agents: (a) to prevent violations of clearly established state and federal laws regarding pay (payment for work performed); and (b) to protect employees from retaliation from its agents arising out of good faith complaints concerning state and federally protected wage rights.

105. The Town had prior notice of similar wage and hour/retaliation complaints and, specifically, Cullinane's complaints that it failed to act upon the same in any manner.

106. The Town's failure to train, supervise, or discipline its agents despite notice in areas of the law that are federally/constitutionally protected such as the right to pay, demonstrates deliberate indifference.

107. The Town, acting under color of law, deprived Cullinane of his federally protected right to pay and his rights to due process as protected by the Fourteenth Amendment of the United States Constitution.

108. The Town's conduct demonstrated a deliberate indifference to Cullinane's rights, including his rights to: (a) pay under federal and state laws; (b) his right to petition or complain about the Town's refusal to pay him in violation of state or federal law; (c) Cullinane's right to complain about the Town's conduct as referenced above and to be free of threats intimidation or coercion in connection with his request for payment for time worked; (d) Cullinane's right to due process in connection with public employment; and (e) Cullinane's right to be free from an arrest made without probable cause and in bad faith with the motive to retaliate against Cullinane for his constitutionally and federally protected speech.

109. Cullinane had a right to be free from retaliatory conduct and the right to be free from a retaliatory arrest which violated the Fourth and Fourteenth Amendments of the United States Constitution.

110. The Town's conduct concerning the arrest not only lacked good faith, but also lacked any form of due process owed to Cullinane.

111. The Town's conduct as described above demonstrated and was part of the Town's custom, policy, and official practice.

112. The Town's conduct, in connection with its response to Cullinane's complaint about his wages, his arrest and his ultimate termination, was conscience shocking and exhibited not only deliberate indifference to Cullinane's rights but intentional interference with the Cullinane's substantive and procedural due process rights.

113. As such, the Town deprived Cullinane of a federally protected right in violation of 42 U.S.C. § 1983.

114.   As a result of the Town's violation of 42 U.S.C. § 1983, Cullinane suffered harm including

retaliatory arrest, personal injuries, emotional distress, constructive discharge, violation of

due process, harm to reputation, incurred attorney fees and otherwise suffered harm.

**WHEREFORE,** Plaintiff, Scott Cullinane, demands judgment as against Defendant,

Town of Concord, in an amount the Court deems just, including but not limited to equitable relief

for emotional distress damages, damages to reputation, personal injury in connection with

retaliatory and unconstitutional arrest, reinstatement with back pay, front pay, loss of retirement

and other benefits, and any other relief that this Court deems appropriate, including compensatory

damages, punitive damages, attorney fees, and interest.

### PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL TRIABLE ISSUES.


PLAINTIFF, Scott Cullinane, on his behalf
and on behalf of all other similarly situated
individuals

Date: November 23, 2022

Lisa Brodeur-McGan (BBO# 556755)
Katharine E. Shove (BBO# 705877)
Brodeur-McGan, P.C.
1380 Main Street, Suite 202
Springfield, MA 01103
(413) 735-1775; Fax: (413) 735-1772
lbm@brodeurmcgan.com
kes@brodeurmcgan.com

7.3

# COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                SUPERIOR COURT DEPARTMENT
                                              C.A. NO. 2081-CV-02483

SCOTT CULLINANE,                    )         **RECEIVED**
    *Plaintiff,*                     )
                                    )
VS.                                 )         SERVED ELECTRONICALLY
                                    )
TOWN OF CONCORD,                    )
    *Defendant.*                     )         **01/04/23**

## TOWN OF CONCORD'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

### AND

### OPPOSITION TO THE PLAINTIFF'S CROSS-MOTION TO AMEND

NOW COMES the Defendant, Town of Concord (the "Town") and, pursuant to Superior Court Rule 9A(b)(iv)(C), herby submits the Reply Memorandum in Support of its Motion for Judgment on the Pleadings and its Opposition to the Plaintiff's Cross-Motion for Leave to Amend.

## ARGUMENT

### I.   Reply Memorandum

In his Opposition, the Plaintiff, Scott Cullinane ("Cullinane"), argues that the Appeals Court's decision in Harrison v. Mass. Bay. Transp. Authy., 101 Mass. App. Ct. 659 (2022) does not apply for two reasons: (1) Harrison did not address sovereign immunity for a municipality; and (2) that municipalities do not enjoy the same sovereign immunity as does the Commonwealth or its agencies. [Opposition at 4-6]. Both arguments are without merit and the Town addresses them in turn.

### A.   Harrison v. Mass. Bay. Transp. Authy. Applies to All Public Employment.

First, in Harrison, the Appeals Court held that the Legislature did not waive sovereign immunity as to a claim for employment misclassification and retaliation under the Wage Act. 101

1

JB

Mass. App. Ct. at 672.[1] In so holding, the Harrison Court consistently referred to "public employees," not state employees of state agency employees. The Court reached its conclusion based on several factors, all of which apply equally to a municipality as to the MBTA—and none of which Cullinane addresses in his Opposition at all. First, the anti-retaliation provision "uses the terms 'employee' and 'employer,' [but] it is silent as to whether public employment is covered by its provisions." Id. at 662-663. As was true for the MBTA, "[t]he notable absence of any indication in the retaliation provisions that the Legislature intended to include within their scope public employers, such as [Town employees], militates against application of these provisions to the MBTA." Id. at 663. Second, numerous other provisions of the Wage Act expressly apply to public employers and public employees, which indicates a Legislative determination that only certain provisions were applicable to public employers/employees. Id. at 664 ("the Legislature did not include a definition section or other statutory language [in the anti-retaliation provision] that would demonstrate that waiver of sovereign immunity was intended, despite the fact that it clearly knew how to do so."). Finally, the Harrison Court correctly noted that "[t]he rules of construction governing statutory waivers of sovereign immunity are stringent" (alteration in original). Id. at 662 (quoting Grand Manor Condominium Assn. v. Lowell, 100 Mass. App. Ct. 765, 770 (2022) (further citation omitted). Cullinane does not cite—and the Town is not aware of—any cases establishing a distinction between the rules of construction governing statutory waivers of sovereign immunity of the Commonwealth or its agencies and of municipalities.

---

[1] Contrary to Cullinane's perfunctory argument to the contrary, Harrison applies to *all* public employment. 101 Mass. App. Ct. at 664 ("We address the plaintiffs' arguments that the Legislature nonetheless intended that the independent contractor statute and the antiretaliation provision to apply to *public employment*.") (emphasis added). Nothing in Harrison restricts or purports to restrict its holding only to public employment with the Commonwealth or its agencies, as opposed to any other type of public employment.

2

**B.    Municipalities are Entitled to the Same Sovereign Immunity as the Commonwealth.**

Cullinane next argues that municipalities do not enjoy the same sovereign immunity as does the Commonwealth or its agencies. In support of this argument, Cullinane cites to <u>Daveiga v. Boston Public Health Commission</u>, 449 Mass. 434 (2007) and a line of federal court decisions for the proposition that sovereign immunity does not apply to municipalities. These arguments are meritless.

The Supreme Judicial Court's decision in <u>Daveiga</u> did not address any distinction between sovereign immunity applied to the Commonwealth as opposed to a municipality. Instead, <u>Daveiga</u> addressed whether, in a suit against the Boston Public Health Commission, a presentment letter pursuant to M.G.L. c. 258, § 4 served on either the City of Boston's Mayor or the Attorney General was proper. <u>Id</u>. at 435. The portion of <u>Daveiga</u> that Cullinane quotes does not speak to a distinction between the Commonwealth and a municipality for purposes of sovereign immunity, but rather for determining whether the Boston Public Health Commission was a political subdivision of the Commonwealth such that presentment on the Attorney General was appropriate. <u>Id</u>. at 441-442. There is absolutely *no* analysis in <u>Daveiga</u> that supports Cullinane's argument that municipalities are somehow less deserving of sovereign immunity than the Commonwealth or its agencies. Likewise, Cullinane's position is hard to square with numerous decisions from the Supreme Judicial Court holding that municipalities are entitled to sovereign immunity. See, e.g., <u>Bain v. City of Springfield</u>, 424 Mass. 758, 762 (1997) ("The city is certainly correct that it is protected from liability in this civil suit unless its sovereign immunity has been waived."); <u>Todino v. Town of Wellfleet</u>, 448 Mass. 234, 238 (2007) ("Municipal liability implicates the doctrine of sovereign immunity, which protects the public treasury from unanticipated money judgments."); <u>M. O'Connor Contracting, Inc. v. City Of Brockton</u>, 61 Mass. App. Ct. 278, 283-285 (2004) (award

of double damages under Chapter 93A by arbitrator violated City of Brockton's sovereign immunity). Nor can it be squared with several statutory enactments that have waived sovereign immunity for municipalities. See, e.g., The Woodward Sch. For Girls, Inc. v. City Of Quincy, 469 Mass. 151, 177 (2014) (recognizing that M.G.L. c. 258, §§ 1 et seq. abrogated sovereign immunity for public employers, including municipalities, for negligence actions except as provided by Section 10); Ram v. Town of Charlton, 409 Mass. 481, 490 (1991) (recognizing that M.G.L. c. 84, § 15 was a limited waiver of sovereign immunity of the "Commonwealth and its political subdivisions" for injuries caused by roadway defects); Bain, 424 Mass. at 763 (recognizing that M.G.L. c. 151B abrogated sovereign immunity of "Commonwealth and all political subdivisions" for claims of discrimination).

Moreover, Cullinane's retreat to federal law provides him no purchase. The cases he cites deal with immunity under the Eleventh Amendment, which provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The United States Supreme Court has held that the Eleventh Amendment does not apply to municipalities. [Opposition at 5 (citing Lake Country Ests., Inc. v. Tahoe Regl. Plan. Agency, 440 U.S. 391, 401 (1979) and Jinks v. Richland Cnty., S.C., 538 U.S. 456, 466 (2003)]. Neither case deals with a state's authority to waive a municipality's sovereign immunity in its own courts for purely state claims; rather, they address the "power of *Congress* to override state-law immunity when subjecting a municipality to suit *under a federal cause of action*." Jinks, 538 U.S. at 466 (emphasis added); Lake Country Ests., Inc., 440 U.S. at 401 (same). The sole count of Cullinane's Complaint is a state statutory cause of action, not a federal cause of action.

## II.    Opposition to Plaintiff's Cross-Motion for Leave to Amend.

A motion for leave to amend a pleading under Mass.R.Civ.P. 15(a) "'should be granted unless there are good reasons for denying the motion.'" Doull v. Foster, 487 Mass. 1, 22 (2021) (quoting Mathis v. Massachusetts Elec. Co., 409 Mass. 256, 264 (1991)). Generally, reasons to deny a motion for leave to amend "include 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment. . . .'" Id. (quoting Castellucci v. United States Fid. & Guar. Co., 372 Mass. 288, 290 (1977)). Cullinane's Proposed Amended Complaint seeks to add three causes of action: Count II alleging wrongful termination in violation of public policy, Count III alleging unlawful retaliation in violation of the Fair Labor Standards Act of 1938 (29 U.S.C. § 215(a)(3)), and Count IV alleging deprivation of rights in violation of 42 U.S.C. § 1983. Cullinane's Cross-Motion for Leave to Amend should be denied because it is futile and untimely.

### A.    The Plaintiff's Cross-Motion to Amend Should be Denied as Futile.

#### 1.    Count II, Wrongful Termination in Violation of Public Policy.

Cullinane's Proposed Count II alleging wrongful termination in violation of public policy is futile because the Town is still entitled to sovereign immunity and because there is no well-defined public policy principles—and Cullinane does not attempt to identify one—that triggers liability.

##### a.    The Town is Entitled to Sovereign Immunity.

The Town is entitled to sovereign immunity as to a common law claim for wrongful termination in violation of public policy. "The general rule of law with respect to sovereign immunity is that the Commonwealth or any of its instrumentalities cannot be impleaded in its own courts except with its consent, and, when that consent is granted, it can be impleaded only in the

manner and to the extent expressed [by] statute[,]" DeRoche v. Massachusetts Commn. Against Discrimination, 447 Mass. 1, 12 (2006) (quotation and citation omitted), or judicially created doctrine, see Walter E. Fernald Corp. v. Governor, 471 Mass. 520, 524 (2015) ("sovereign immunity is a judicially created common law concept, . . . and, as such, is subject to judicial abrogation or limitation.") (ellipsis in original) (quotation omitted). Cullinane does not cite to any statutory or judicial authority evidencing that the Town consented to suit (and therefore waived/abrogated sovereign immunity) as to common law wrongful termination claims. Nor has the Town found any cases that discuss waiver/abrogation of sovereign immunity for common law wrongful termination claims. In the absence of statutory or judicial abrogation or limitation, the Town is immune from common law claims for wrongful termination.[2]

    b. *Cullinane Cannot Establish His Entitlement to this Narrow Exception.*

    "As an exception to the general rule that an employer may terminate an at-will employee at any time with or without cause, we have recognized that an at-will employee has a cause of action for wrongful termination only if the termination violates a clearly established public policy." King v. Driscoll, 418 Mass. 576, 582 (1994). As the Supreme Judicial Court has instructed, this exception must be interpreted narrowly, because "to do otherwise would convert the general rule . . . into a rule that requires just cause to terminate an at-will employee." Id. (ellipsis in original) (quotation omitted). Whether a particular termination violated public policy is a question of law

_____

[2] To the extent Cullinane argues that a claim for wrongful termination in violation of public policy is a tort falling within the scope of the Massachusetts Tort Claims Act, Apessos v. Meml. Press Grp., Mass. Super. Ct., No. CIV. A. 01-1474-A, 2002 WL 31324115, at *2 (Sept. 30, 2002) (Sikora, J.) ("Massachusetts recognizes a common law claim (sounding in tort) for wrongful termination of an at-will employee."), the proposed claim would nonetheless be futile because Cullinane failed to present the claim within 2 years of its occurrence, e.g. Rodriguez v. City of Somerville, 472 Mass. 1008, 1010 (2015), and because the Town is immune from suit for intentional acts, M.G.L. c. 258, § 10(c).

6

for the court. See, e.g., Mello v. Stop & Shop Co., 402 Mass. 555, 561 n. 7 (1988). To that end, public policy has been recognized in an extraordinarily limited set of circumstances, such as employees cooperating with criminal or administrative investigations, filing a worker's compensation claim, an employer's attempt to enforce state and municipal law and bylaws, refusing to testify at trial, or refusing to provide information to an employer. King, 418 Mass. at 582 (and cases cited).

However, appellate courts have routinely held that there is no claim where an employee complained internally about internal matters or policies. For instance, in Mello, the Supreme Judicial Court concluded there was no violation of public policy where a Stop and Shop employee complained to his superiors about misconduct by fellow employees and warehouse staff. 402 Mass. at 558-559. In so holding, the SJC noted that "claims within the company [that] concern internal matters" would not violate a "well defined public policy principle. . . ." Id. at 560-561. Likewise, in Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., the SJC concluded there was no public policy violation where an employee complained internally about an organizational restructuring that she believed "constituted a threat to the well-being of the institution and its residents." 404 Mass. 145, 151 (1989). This was, the SJC held, because restructuring the school was "a matter of opinion and of internal policy" and "internal matters, including internal policies, could not be the basis of a public policy exception to the at-will rule." Id. Similarly, in Wright v Srhiners Hosp. for Crippled Children, the SJC concluded that a nurse's internal complaints of alleged deficiencies in the hospitals' quality of patient care was insufficient to invoke the exception. 412 Mass. 469, 471-472 (1992). Notably, the SJC re-affirmed its holding from Smith-Pfeffer that ""[i]nternal matters," we have previously said, "could not be the basis of a public policy exception to the at-will rule." Id. at 474 (quoting Smith-Pfeffer, 404 Mass. at 151)). This

7

was so even where the safety of patients in a medical setting was, itself, an "appropriate, socially desirable" result. Id. at 475. Finally, in Mistishen v. Falcone Piano Co., Inc., the Appeals Court concluded the exception was inapplicable where an employee was terminated after complaining to upper management that the employer's warranty practices were unfair and deceptive. 36 Mass. App. Ct. 243, 245-256 (1994). The Appeals Court held both that the employee's action merely "concern[ed] internal matters, [i.e.] the manner in which it honored its warranties" and that her actions, while perhaps "appropriate and socially desirable, . . . fell far short of the level of importance necessary to warrant a conclusion that her discharge violates public policy." Id. at 246.

As these cases make clear, reporting or complaining about issues internally is insufficient standing alone to invoke the narrow public policy exception to at will employment. At its base, Cullinane's complaints were about how the Town interpreted a provision of the Collective Bargaining Agreement regarding how employees would be paid for multiple emergency calls performed within a single day. Cullinane's complaint to his management about his not being paid under the Collective Bargaining Agreement is no different than the complaints about internal policies made in Mello, Smith-Pfeffer, Wright, or Mistishen. And it is of no import that the complaint was about alleged unlawful, non-criminal conduct. See Mistishen, 36 Mass. App. Ct. at 246 (complaints about alleged Chapter 93A violations insufficient to invoke public policy exception). Finally, it matters not that Cullinane's complaints were admirable or socially desirable. See Wright, 404 Mass. at 151 (1989); Mistishen, 36 Mass. App. Ct. at 246.

Additionally, Cullinane has an alternative remedy by resort to the Collective Bargaining Agreement, which includes a comprehensive procedure for "dispute[s] arising as a result of the application or interpretation of one or more express terms of this Agreement." Exhibit 1, Collective

8

Bargaining Agreement at § 17.1, par. 2.[3] Massachusetts courts "have jurisdiction to entertain actions for damages for the wrongful termination of employment covered by a labor agreement" but "will ordinarily not exercise such jurisdiction until the grievance procedures provided for in the labor agreement have been exhausted." Berman v. Drake Motor Lines, Inc., 6 Mass. App. Ct. 438, 442 (1978); cf. Azzi v. W. Elec. Co., 19 Mass. App. Ct. 406, 408 (1985) ("Before bringing an action against his employer for a violation of a collective bargaining agreement, the employee is required to exhaust the grievance procedures."); Tortolano v. Lemuel Shattuck Hosp., 93 Mass. App. Ct. 773, 776 (2018) ("In general, where a collective bargaining agreement includes a grievance procedure, failure to pursue contractual grievance procedures bars suit against the employer. Employees may not simply disregard the grievance procedures set out in a collective labor contract and go direct to court for redress against the employer.") There is no argument in the Motion for Leave to Amend or any factual allegations in either the Complaint or the Proposed Amended Complaint that address whether Cullinane filed a grievance with his union related either to the call back payments or to his alleged constructive discharge.

   c. *There is No Claim for Wrongful Termination in Violation of Public Policy Where Other Statutory Remedies are Available.*

The existence of other remedies precludes invocation of a common law wrongful termination in violation of public policy claim. See, e.g., Bradley v. Quincy Community Action Program, Inc., 94 Mass. App. Ct. 1112, *4 (unpublished former Rule 1:28 decision) (2018) (claim for wrongful termination in violation of public policy is precluded by Wage Act); Gauthier v. Town of Dracut, Mass. Super. Ct., No. CIV.A. 03-2826, 2005 WL 1669121, at *9 (June 27, 2005) (Lemire, J.) (claim for wrongful termination in violation of public policy precluded by separate

---

[3] Due to its length, the Town attaches only the relevant portions of the Collective Bargaining Agreement upon which it relies. The Town will make the full document available to the Court at its request.

Whistleblower Act claim). Separate from the Wage Act, Cullinane could have field a grievance with his union pursuant to the Collective Bargaining Agreement.

> d. *A Common Law Claim for Wrongful Termination is Pre-empted by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a).*

Finally, it is very likely that Cullinane's proposed common law wrongful termination claim is preempted by the existence of the Collective Bargaining Agreement. The First Circuit recently explained "the doctrine of complete preemption: 'Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character.' Section 301 of the LMRA operates in this fashion." Lawless v. Steward Health Care Sys., LLC, 894 F.3d 9, 17 (1st Cir. 2018) (citing 29 U.S.C. § 185(a); Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63-64 (1987); Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 209-13 (1985)). Indeed:

> [I]t is by now black-letter law that the preemptive force of [section] 301 is so powerful as to displace entirely any state cause of action for violation of contracts between an employer and a labor organization. Any claim falling under the carapace of section 301 is therefore treated as purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [section] 301. Although state courts may exercise concurrent jurisdiction over claims completely preempted under section 301, they must look to federal common law for the substantive rules of decision.

Lawless v, 894 F.3d at 17 (citations and quotations omitted). The Supreme Court has expanded the doctrine beyond its original scope, holding that "the pre-emptive effect of § 301 must extend beyond suits alleging contract violations," to prevent plaintiffs from "evad[ing] the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract," i.e., to prevent them from avoiding complete preemption through artful pleading. Allis–Chalmers Corp., 471 U.S. at 210-211.

It is beyond dispute that Cullinane is a member of the Teamsters Local Union 25 and subject to a collective bargaining agreement in effect from July 1, 2017 through July 30, 2020. The claim at issue here relates to Cullinane's alleged complaint to the Town regarding the interpretation

of Section 3.5 of the Collective Bargaining Agreement, and the Town's alleged retaliation against Cullinane for said complaint. Therefore, a common law claim for wrongful termination stemming from a complaint about the interpretation of the Collective Bargaining Agreement is pre-empted by Section 301 of the Labor Management Relations Act.

    2. <u>Count III, Unlawful Retaliation in Violation of the Fair Labor Standards Act of 1938 (29 U.S.C. § 215(a)(3).</u>

Cullinane's proposed Count III alleging unlawful retaliation under the Fair Labor Standards Act (the "FLSA") is futile because Cullinane did not engage in statutorily protected activity. To state claim for unlawful retaliation under the FLSA, the plaintiff must "at a minimum, [make] a showing that (1) the plaintiff engaged in a statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in protected activity." <u>Claudio-Gotay v. Becton Dickinson Caribe, Ltd.</u>, 375 F.3d 99, 102 (1st Cir. 2004) (citing <u>Blackie v. Maine</u>, 75 F.3d 716, 722 (1st Cir.1996)). The ""assertion of statutory rights . . . by taking some action adverse to the company . . . is the hallmark of protected activity under § 215(<u>a</u>)(3)." <u>Id.</u> (ellipses in original) (quotation omitted).

The FLSA anti-retaliation provision does not apply to these circumstances for the inescapable reason that the FLSA does not protect or guarantee Cullinane any payments because of so-called call back work. Instead, the FLSA:

> [E]stablishes a comprehensive remedial scheme requiring a minimum wage and limiting the maximum number of hours worked, absent payment of an overtime wage for all hours worked in excess of the specified maximum number. Employers are generally required to compensate employees at a premium rate of 1.5 times the regular rate of hourly compensation for all hours worked in excess of 40 hours in a seven-day work period.

18 Mass. Prac., Municipal Law and Practice § 10.12 (5th ed. 2022 update) (citing 29 U.S.C. § 207(<u>a</u>)(1)). Here, there is no allegation in the Complaint or the Proposed Amended Complaint that the Town failed to pay Cullinane a minimum wage or overtime wage for all hours worked in

excess of 40 hours in seven-day work period. Instead, the crux of the Proposed Amended Complaint is that the Town initially failed to pay Cullinane for two separate call backs based on a disparate interpretation of the Collective Bargaining Agreement (for which he was subsequently paid), and the Town retaliated against him for making that complaint. In other words, the FLSA anti-retaliation provision protects an employee from retaliation for seeking to enforce rights protected by the FLSA itself. See Blackie, 75 F.3d at 722 ("The FLSA's anti-retaliation provision prohibits an employer from penalizing an employee who seeks to enforce rights guaranteed by the federal law."). Here, the FLSA does not protect or otherwise guarantee Cullinane any payment related to call backs; instead, that guarantee is embodied in the Collective Bargaining Agreement between the Town and Cullinane's union. There is thus no basis for an FLSA claim.

3.   Count IV, Deprivation of Rights in Violation of 42 U.S.C. § 1983.

Cullinane's proposed Count IV alleging a deprivation of rights rings hollow. The Town is alleged to have deprived Cullinane of wages in violation of the FLSA, retaliated against him in violation of the FLSA, arrested him in violation of the Fourth Amendment, and deprived him of due process of law. This proposed claim fails both because there is no basis to impose municipal liability and on the merits of the alleged constitutional deprivations. The Town addresses these in turn.

a.   Municipal Liability

It is well-settled that municipal liability under Section 1983 cannot be based on a theory of respondeat superior. See Monell v. Dept. of Soc. Servs., 436 U.S. 658 (1978). Instead, municipal liability "attaches where – and only where – a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question." Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986). "This requires that plaintiff demonstrate both the existence of a policy or custom and a

12

causal link between that policy and the constitutional harm." Tambolleo v. Town of W. Boylston,

34 Mass. App. Ct. 526, 528 (1993). As the First Circuit has noted:

> The Supreme Court, concerned that municipal liability based on fault by the City might collapse into de facto *respondeat superior*, has set a *very high bar* for assessing municipal liability under *Monell*. The alleged municipal action at issue must constitute a "policy or custom" attributable to the City. Further, the Supreme Court has imposed two additional requirements: 1) that the municipal policy or custom actually have caused the plaintiff's injury, and 2) that the municipality possessed the requisite level of fault, which is generally labeled in these sorts of cases as "deliberate indifference." Causation and deliberate indifference are separate requirements, although they are often intertwined in these cases.

Young v. City of Providence ex rel. Napolitano, 404 F.3d 4, 26 (1st Cir. 2005) (internal

citations omitted) (emphasis added).

Here, the Proposed Amended Complaint utterly fails to plausibly suggest that the Town or

its employees took any unconstitutional action against Cullinane pursuant to an unconstitutional

custom, policy, or practice. Indeed, neither the Motion for Leave to Amend nor the Proposed

Amended Complaint reference any official policy and does not allege a factual predicate for a

well-settled custom or policy, see, e.g., Bordanaro v. McLeod, 871 F.2d 1151, 1156 (1st Cir. 1989).

Absent such allegations, there can be no Monell liability against the Town.

>  *b.  Violation of the FLSA.*

It appears that Cullinane attempts to anchor his proposed Section 1983 claim on a failure

to pay wages owed to him under the FLSA and for unlawful retaliation in violation of the FLSA.

Both bases are utterly meritless. First, the allegation that Cullinane was deprived of his right to

pay under the FLSA is categorically false as a factual matter. Cullinane was, in fact, paid the

entirety of the disputed wages following a meeting between him and members of the DPW and

HR departments. [Proposed Amended Complaint at ¶¶ 22-24]. Moreover, as noted above, the

FLSA does not guarantee payment of call-back pay to Cullinane, so any complaint about the failure

to issue call-back pay cannot form a predicate for an FLSA violation or FLSA retaliation.

13

Additionally, "Congress prescribed exclusive remedies in the FLSA for violations of its mandates" and a party therefore cannot "enforce their FLSA rights by way of a § 1983 action. . . ." Anderson v. Sara Lee Corp., 508 F.3d 181, 194 (4th Cir. 2007).[4] For these reasons, Cullinane cannot anchor his proposed Section 1983 claim on alleged violations of the FLSA.

### c.  Retaliatory arrest.

The perfunctory claim that Cullinane was subject to retaliatory arrest fails on both causation and the existence of probable cause. "[A]s a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." Hartman v. Moore, 547 U.S. 250, 256 (2006). A plaintiff must "plead and prove the absence of probable cause for the underlying criminal charge." Nieves v. Bartlett, -- U.S. --, 139 S. Ct. 1715, 1723 (2019). "Absent such a showing, a retaliatory arrest claim fails." Id. at 1725.

Where an arrest is challenged as unsupported by probable cause, "it is deemed 'objectively reasonable' unless 'there clearly was no probable cause at the time the arrest was made.'" Sheehy v. Town of Plymouth, 191 F.3d 15, 19 (1st Cir. 1999) (quoting Topp v. Wolkowski, 994 F.2d 45, 48 (1st Cir. 1993)). "Probable cause exists if 'the facts and circumstances within [a police officer's] knowledge and of which [the officer] had reasonably trustworthy information [are] sufficient in themselves to warrant [a person] of reasonable caution' to believe that a crime has been committed or is being committed." Alexis v. McDonald's Restaurants, 67 F.3d 341, 351 (1st Cir. 1995)

---

[4] As the Fourth Circuit noted, it was "not alone in so concluding." Anderson, 508 F.3d at 194 (and cases cited); accord Roman v. Maietta Constr., Inc., 147 F.3d 71, 76 (1st Cir.1998) ("the FLSA is the exclusive remedy for enforcement of rights created under the FLSA"); Torres v. Vitale, 954 F.3d 866, 874 (6th Cir. 2020) (noting "that the FLSA's remedial scheme precluded suits for unpaid wages under § 1983"), reh'g denied (Apr. 24, 2020); Williamson v. Gen. Dynamics Corp., 208 F.3d 1144, 1154 (9th Cir. 2000) (suggesting, without holding, that "[c]laims that are directly covered by the FLSA (such as overtime and retaliation disputes) must be brought under the FLSA.").

(quoting Carroll v. United States, 267 U.S. 132, 162 (1925)). Probable cause to arrest exists if, at the time of the arrest, the facts and circumstances within the relevant actors' knowledge and of which they had reasonably reliable information were adequate to warrant a prudent person in believing that the object of his suspicions had perpetrated or was poised to perpetrate an offense. See Beck v. Ohio, 379 U.S. 89, 91 (1964); United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987).

Here, there was certainly probable cause to arrest Cullinane for alleged larceny under $250 in violation of M.G.L. c. 266, § 30(1). Numerous Concord police officers conducted an extensive investigation, including speaking to numerous Town employees, which indicated that Cullinane took certain scrap metal, valued less than $250, from a DPW lot without permission from the Town. See Exhibit 2, Police Report.[5] It is beside the probable cause point that the charges were later dismissed prior to arraignment; all that matters is whether there was sufficient information at the time of the arrest to believe that a crime was committed. Cf. Michigan v. DeFillippo, 443 U.S. 31, 36 (1979) ("The validity of the arrest does not depend on whether the suspect actually committed a crime; the mere fact that the suspect is later acquitted of the offense for which he is arrested is irrelevant to the validity of the arrest."); Gillis v. Chase, 894 F.3d 1, 3 (1st Cir. 2018) ("Nor does the acquittal—with conviction requiring the higher standard of proof beyond a reasonable doubt—establish that [police] lacked the requisite probable cause to support a charge against"); Goddard v. Kelley, 629 F. Supp. 2d 115, 125 (D. Mass. 2009) (for purposes of § 1983

---

[5] This Police Report has been redacted in part to protect certain confidential information of Cullinane. This report, which is a public record and is the subject matter of which is referenced within both the Complaint and Proposed Amended Complaint, may be considered at the pleadings stage.

15

false arrest claim, it is "irrelevant, in determining whether the arrest was lawful, that the plaintiff was later acquitted of the crimes for which he was arrested.").

     *d. Due process*

     Although the Motion for Leave to Amend and the Proposed Amended Complaint are not clear on this point, due process under the Fourteenth Amendment has a procedural and substantive component. Harron v. Town of Franklin, 660 F.3d 531, 535-536 (1st Cir. 2011). "'The former "ensures that government, when dealing with private persons, will use fair procedures.'" Id. (quoting DePoutot v. Raffaelly, 424 F.3d 112, 118 (1st Cir. 2005). "The latter 'safeguards individuals against certain offensive government actions, notwithstanding that facially fair procedures are used to implement them.'" Id. (quoting DePoutot, 424 F.3d at 118). As it is unclear which basis Cullinane asserts, the Town addresses each in turn.

     The "basic guarantee" of procedural due process is that, before a deprivation of a protected liberty or property interest can take place, a plaintiff "must be forewarned and afforded an opportunity to be heard at a meaningful time and in a meaningful manner." Amsden v. Moran, 904 F.2d 748, 753 (1st Cir. 1990) (quotation omitted). The proper focus is on how the state acted – *i.e.* "'how and when' the alleged deprivation was effected." Id. "Whether the deprivation . . . was itself erroneous is beside the procedural due process point." Id. Additionally, a plaintiff cannot prevail on a procedural due process claim "unless he can show that the state failed to provide him with an adequate post-deprivation remedy." Cronin v. Town of Amesbury, 81 F.3d 257, 260 (1st Cir. 1996). "But for this limitation, federal suits might be brought for countless local mistakes by officials administering the endless array of state laws and local ordinances." Herwins v. City of Revere, 163 F.3d 15, 19 (1st Cir. 1998). "Due process . . . is not a technical conception with a fixed content unrelated to time, place and circumstances." Matthews v. Eldridge, 424 U.S. 319, 333 (1976). Rather, the standard is flexible and "calls for such procedural protection as the particular

situation demands." Id. "The constitution does not require every procedural protection that might help; it simply requires that a private person have a basically fair opportunity to convince the decision-maker, by presenting proofs and arguments and evidence and replies to the arguments of others." Newman v. Burgin, 930 F.2d 955, 961 (1st Cir. 1991).

Cullinane's proposed due procedural due process claim fails first because there was no deprivation. As the Proposed Amended Complaint bears out, Cullinane was provided the opportunity to meet with his supervisors about the call back payments (Proposed Amended Complaint at ¶¶ 19-24), he was provided with notice of the Town's intent to terminate his employment (Proposed Amended Complaint at ¶ 67), and he was invited to attend a hearing on the matter (Proposed Amended Complaint at ¶ 67). Here, the basic tenets of procedural due process were fulfilled; Cullinane received notice and an opportunity to be heard.[6] Procedural due process requires no more. Additionally, Cullinane's procedural due process claim must fail because he has sufficient post-deprivation remedies including but not limited to filing a grievance with his union. See, e.g., Cronin, 81 F.3d at 260.

Violations of substantive due process require a showing "*both* that the acts were so egregious as to shock the conscience and that they deprived [plaintiff] of a protected interest in life, liberty, or property." Harron, 660 F.3d at 535-36 (emphasis in original) (quotation omitted). While courts have not adopted a precise formula for determining whether municipal acts (such as those by the Town) "shock the conscience," the First Circuit has held that such acts must be "truly outrageous, uncivilized and intolerable. . . ." Hasenfus v. LaJeunesse, 175 F.3d 68, 72 (1st Cir. 1999). Cases finding a substantive due process violation uniformly involve conduct well beyond

---

[6] The Town notes that Cullinane refused to attend the hearing and, instead, submitted his resignation mere hours before the hearing was scheduled to begin. [Proposed Amended Complaint at ¶¶ 73-74].

the allegations in the Proposed Amended Complaint. See, e.g., Harrington v. Almy, 977 F.2d 37, 43–44 (1st Cir. 1992) (requiring, as a condition of reemployment, a suspended police officer to undergo a penile plethysmograph); Rochin v. California, 342 U.S. 165, 172 (1952) (forcing an emetic solution through a tube into a person's stomach against their will). That conduct maybe be "despicable and wrongful" is not, standing alone, sufficient. E.g., Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991).[7] Indeed, the First Circuit has rejected a substantive due process claim based on months of harassment by police officers which included threats of physical violence, insults, the filing of unjustified burglary charge against plaintiff, and the pushing of plaintiff's pregnant daughter who two days thereafter suffered a miscarriage did not rise to the level of shocking the conscience. Cruz–Erazo v. Rivera–Montañez, 212 F.3d 617, 622–623 (1st Cir. 2000). Simply stated, the Town's alleged actions here do not come anywhere near "truly outrageous, uncivilized and intolerable" sufficient to sustain a violation of substantive due process. Pittsley, 927 F.2d at 7.

### B.   The Plaintiff's Cross-Motion to Amend Should be Denied as Untimely.

Under this Court's Tracking Order, the deadline to file any motions to amend pursuant to Mass.R.Civ.P. 15 was January 10, 2022. [See Order entered 10/15/2020]. No party has sought extension of this deadline. This request also comes only four months prior to the close of discovery. Finally, nothing about the newly proposed claims were unavailable to Cullinane at the time he first

---

[7] Indeed, the First Circuit has rejected substantive due process claims based on conduct more egregious that that asserted by Cullinane here. See Pittsley, 927 F.2d at 7 (police officer's verbal threat to young children that they would never see their mother's live-in-companion again and officer's refusal to allow the children to "hug and kiss" him goodbye was not sufficient to "shock the conscience"); Santiago de Castro v. Morales Medina, 943 F.2d 129, 131 (1st Cir.1991) (verbal harassment by supervisor which caused Plaintiff to become physically ill was not conscience shocking); Souza v. Pina, 53 F.3d 423, 427 (1st Cir. 1995) (no substantive due process violation where district attorney and members of his staff conducted numerous press conferences and other media interviews in which they linked petitioner's son to killings of nine young women even where the son subsequently killed himself).

filed his Complaint. Instead, this request is a clear attempt to salvage the Complaint following the Appeals Court's decision in <u>Harrison</u>.

## CONCLUSION

**WHEREFORE**, the defendant Town of Concord respectfully moves this Honorable Court:

1. Enter an order dismissing the sole count of the plaintiff's Complaint against it, with prejudice;

2. Enter an order denying the plaintiff's request for leave to file an amended complaint; and

3. Grant any other such relief this Honorable Court deems just and proper.

Respectfully submitted,

TOWN OF CONCORD

By their Attorney,

**PIERCE, DAVIS & PERRITANO, LLP**

*/s/ Justin L. Amos*

_____

Justin L. Amos, BBO #697232
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jamos@piercedavis.com

19

## CERTIFICATE OF SERVICE

I hereby certify that on December 15, 2022, a true copy of this document was served upon each attorney of record via electronic mail as follows:

Lisa Brodeur-McGan, Esq.
Katharine Shove, Esq.
**BRODEUR-MCGAN, P.C.**
1380 Main Street, Suite 202
Springfield, MA  01103
(413) 735-1775 x110
lbm@brodeurmcgan.com
kes@brodeurmcgan.com

*/s/ Justin L. Amos*
_____
Justin L. Amos

20

Date Filed 1/4/2023 9:36 AM
Superior Court - Middlesex
Docket Number 2081CV02483

Case 1:23-cv-11526-JEK    Document 7    Filed 07/13/23    Page 107 of 168

7.4

RECEIVED

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH          01/04/23

Middlesex, ss.                                    Superior Court Department
                                                  Civil Action No. 2081-CV-02483

| SCOTT CULLINANE, |
| Plaintiff |
| v. |
| TOWN OF CONCORD, |
| Defendant |

**PLAINTIFF'S REPLY MEMORANDUM
IN SUPPORT OF ITS CROSS-MOTION
TO AMEND THE COMPLAINT**

NOW COMES Scott Cullinane ("Cullinane") who submits this Reply Memorandum in response to the Town of Concord's ("Town") Opposition to Plaintiff's Cross-Motion to Amend the Complaint. Cullinane's proposed amendment is not futile, and Cullinane addresses the Town's opposition to each of his proposed claims in turn.

**A. Wrongful Termination in Violation of Public Policy**

The Town's opposition argues that Cullinane does not meet the exception required for the claim of wrongful termination in violation of public policy and cites cases where employees are terminated after complaining of internal, institutional policies and procedures. Cullinane's case, involving an employee's complaint about failing to be paid wages owed under the law, is entirely different. There is a significant difference between an institution's internal interests (such as those demonstrated in the cases cited by the Town) and Cullinane's complaints concerning not being paid wages owed under the Massachusetts Wage Act ("Wage Act") which expresses, codifies, and exemplifies a public interest in a certain topic—that is, employees being paid wages for work they perform. The public interest in timely payment of wages for work performed is evidenced by the Wage Act's statutory scheme. Because Cullinane claimed the right to be paid under that scheme, which is a public interest demonstrated by the statutory scheme, Cullinane has indeed met the narrow exception required to maintain a claim for wrongful termination in violation of public policy.

JB

The Town further argues that Cullinane's complaint of unpaid wages was about unlawful, non-criminal conduct. This is statement is false as under the Wage Act, an employer's failure to pay wages is subject to criminal punishment. G.L. c. 149, §§ 27C, 148. Therefore, Cullinane was, in fact, complaining about and/or reporting a violation criminal law. Consequently, his termination resulting from the same (as alleged in the proposed amended complaint) is grounds for a cause of action for wrongful termination in violation of public policy. *See* Ryan v. Holie Donut Inc., 82 Mas. 633, 636 (2012), *citing* Shea v. Emmanuel Coll., 425 Mass. 761, 763 (1997) (public policy exception of the at-will employment doctrine permits a cause of action where an employee is terminated for reporting a crime to company officials).

The Town further argues preemption by the Labor Management Relations Act (LMRA). This argument must also fail. The Town correctly states that the LMRA provides that there is no state cause of action for violations of contracts between employer and labor organization. However, by citing the cases the Town cites in section D of its opposition, the Town attempts to restyle Cullinane's claim as a claim for violation of the collective bargaining agreement and/or contract interpretation rather than a pay issue. Importantly, the heart of Cullinane's claim for wrongful termination is an issue of the Town's failure to pay Cullinane wages rightfully owed to him for work he performed. Cullinane's claim is neither a collecting bargaining agreement issue or an issue of contract interpretation as suggested by the Town in its opposition. Cullinane believed that he was entitled to pay for work he performed, and a collective bargaining agreement cannot preempt pay owed for work performed. *See* Newton v. Commissioner of Dept. of Youth Servs., 62 Mass. App. Ct. 343, 345 (2004). Therefore, Cullinane's proposed claim for wrongful termination in violation of public policy is not preempted by the LMRA and the claim is not futile.

**B.  Unlawful Retaliation – Fair Labor Standards Act (FLSA)**

The Town argues in its opposition that Cullinane did not engage in activity protected by the FLSA's anti-retaliation provision because the FLSA does not apply here, stating that the FLSA does not protect or guarantee Cullinane payments for "call back" work. This argument must fail. Here, the proposed amended complaint alleges that the Town failed to pay Cullinane for work performed.

The Town correctly points out that the FLSA requires employers to pay employees a minimum wage and limits the maximum number of hours employees may work. However, to say that FLSA does not apply here because Cullinane did not claim that the Town failed to pay him minimum wage but instead alleges that the Town failed to pay him at all, would allow employers to avoid the penalties of the FLSA by simply not paying their employees at all for work performed. Such a position would be contradictory to the legislative intent and public policy surrounding the FLSA. The fact that Cullinane's employment agreement with the Town provides the manner in which Cullinane is to be paid for call out jobs is of no consequence to this proposed claim. Any money owed to an employee for work performed is wages and must be paid to that employee as required by the FLSA. Consequently, the FLSA applies here and Cullinane was engaging in activity protected by the anti-retaliation provision of the FLSA when he requested that he be paid for work performed. Therefore, Cullinane's proposed claim for violation of FLSA is not futile.

**C. Deprivation of Rights, 42 U.S.C. § 1983**

The Town's argument that it does not have municipal liability for Cullinane's proposed claim must fail. The Town correctly states that municipal liability attaches "where . . . a deliberate choice to follow a course of action is made from among various alternatives by the official or officials responsible for establishing final policy." Pembaur v. Cincinnati, 475 U.S. 469, 483 (1986). Cullinane has plead sufficient facts in the proposed amended complaint to support that.

The proposed amended complaint alleges that the Town, by stating they will refuse to pay Cullinane for work he performs when responding to a job while on call in the future, created a policy relative to the same. *See* amended complaint ¶¶ 23-26, 111. Specifically, Cullinane alleges that the Town's conduct in failing to prevent violations of state and federal laws regarding pay was an official and final policy and "was part of the Town's custom, policy, and official practice." When Cullinane repeatedly complained to his superiors that he had not been paid for work performed, and several officials/supervisors finally advised him "we are going to pay you" but there is not going to be a next time, the Town, through its officials, created an official Town policy and/or practice relating to payment for on-call work. Further, because they were forced to pay him for work already performed due to the law, these same Town officials crafted a plan to retaliate against Cullinane and subjected him to threats, intimidation, and coercion from the time he complained right through the time he was terminated, including the time he was arrested.

Cullinane further alleges in the proposed amended complaint that the Town, by and through its officials, demonstrated a deliberate indifference to Cullinane's rights, including his right to pay and his constitutional right to be free from a retaliatory arrest. It is well established deliberate indifference by Town officials is a sufficient basis for a section 1983 claim against a municipality. City of Canton v. Harris, 489 U.S. 378, 388-91 (1989). Cullinane urges this Court to review paragraphs 104 – 112 of the proposed amended complaint which sufficiently plead this theory.

Turning to Cullinane's arrest, contrary to the proposed amended complaint which specifically alleges the lack of probable cause, the Town argues that there was probable cause for Cullinane's arrest and that it was not retaliatory. Importantly, the Court does not have sufficient evidence at this stage to determine if probable cause existed as the Court is not in possession of the statements of the individuals who allegedly spoke to the police or the statements of the arresting

officers. Therefore, it is premature for the Court to determine that the arrest was not retaliatory at the motion to amend stage. Instead, whether Cullinane's arrest was retaliatory is a question of fact for a jury. *See* King v. Boston, 71 Mass. App. Ct. 460, 475 (2008) (whether conduct was retaliatory is a question of fact for a jury where "a fact finder could find that the department intended to retaliate against" employee for engaging in protected activity). In support of his proposed section 1983 claim, Cullinane points to the police report attached to the Town's opposition. Notably, the report contains a summary of the arresting officers' interview with Koranda, during which states the following: "Koranda stated that Cullinane had asked him a few times whether or not the material placed in piles and in the dumpster were trash. Koranda confirmed to Cullinane that the material was in fact trash. . . . When asked if hypothetically he had been made aware that Cullinane was taking he material, if that were to be considered out of the ordinary or a violation of any policy, ***Koranda stated no***" (emphasis added).

Cullinane's proposed amended complaint alleges denial of due process in connection with his arrest and the lack of the opportunity to be heard. After the meetings Cullinane had with his supervisors regarding his requests for pay, although he had permission from his supervisor to take the scrap metal from the Town yard, these same supervisors had the Town's police department arrest Cullinane. No Town officials spoke with either Cullinane, respected Town employee of twenty years, or his supervisor prior to their allegations of crime to the police department, nor did they give Cullinane an opportunity to be heard on the matter prior to his arrest. Cullinane should have been afforded an opportunity to be heard at a "meaningful time and in a meaningful manner," *see* Mathews v. Eldridge, 424 U.S. 319, 333 (1976), and that time should have been before Cullinane was arrested and threatened with continued prosecution. For the foregoing reasons, Cullinane states that his proposed claim for deprivation of rights under section 1983 is not futile.

PLAINTIFF, Scott Cullinane, on his behalf
and on behalf of all other similarly situated
individuals

Date: December 28, 2022

*/s/ Katharine E. Shove*

Lisa Brodeur-McGan (BBO# 556755)
Katharine E. Shove (BBO# 705877)
Brodeur-McGan, P.C.
1380 Main Street, Suite 202
Springfield, MA 01103
(413) 735-1775; Fax: (413) 735-1772
lbm@brodeurmcgan.com
kes@brodeurmcgan.com

## CERTIFICATE OF SERVICE

I, Katharine E. Shove, do hereby certify that I made service of the foregoing document on this 28th day of December, 2022, by email AND/OR first class mail, postage prepaid, to: Justin L. Amos, Esq. (jamos@piercedavis.com), Pierce Davis & Perritano, LLP, 10 Post Office Square, Suite 1100N, Boston, MA 02109.

*/s/ Katharine E. Shove*

Katharine E. Shove

7.5

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                           SUPERIOR COURT DEPARTMENT
                                         C.A. NO. 2081-CV-02483

SCOTT CULLINANE,                    )    **RECEIVED**
        *Plaintiff,*                )
                                    )
VS.                                 )
                                    )
                                    )          01/04/23
TOWN OF CONCORD,                    )
        *Defendant.*                )

## AFFIDAVIT OF COMPLIANCE WITH SUPERIOR COURT RULE 9A

I, Justin L. Amos, being duly sworn, hereby depose and say:

1. I am an attorney at law, with offices located at 10 Post Office Square, Suite 1100N, Boston, MA 02109. I am duly licensed to practice law in the Commonwealth of Massachusetts.

2. I have been retained to represent the defendant, Town of Concord, in the above-captioned matter.

3. On November 1, 2022, this office served on the plaintiff's counsel of record a copy of Defendant's Motion for Judgment on the Pleadings with supporting documents.

4. Plaintiff served his Opposition along with a Cross-Motion for Leave to Amend on November 23, 2022.

5. The Town served its Reply Memorandum in Support of its Motion for Judgment on the Pleadings and Opposition to the Plaintiff's Cross-Motion for Leave to Amend on December 14, 2022.

6. The Plaintiff served his Reply Memorandum in Support of his Cross-Motion for Leave to Amend on December 28, 2022.

7. Considering the foregoing, the Town has complied with Superior Court Rule 9A, and I hereby file the following documents with this Court:

   - DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS;
   - DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS;
   - PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS & PLAINTIFF'S CROSS MOTION TO AMEND THE COMPLAINT;
   - TOWN OF CONCORD'S REPLY MEMORANDUM IN SUPPORT OF ITS

JB

MOTION FOR JUDGMENT ON THE PLEADINGS AND OPPOSITION TO THE PLAINTIFF'S CROSS-MOTION TO AMEND;

- PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS CROSS-MOTION TO AMEND
- DEFENDANT'S REQUEST FOR HEARING;
- AFFIDAVIT OF COMPLIANCE WITH SUPERIOR COURT RULE 9A;
- LIST OF DOCUMENTS FILED; and
- CERTIFICATE OF FILING.

Signed under the penalties of perjury this 4th day of January, 2023.

/s/ Justin L., Amos

_____

Justin L. Amos, BBO #697232

## CERTIFICATE OF SERVICE

I, Justin L. Amos, certify that on January 4, 2023, a true copy of the aforementioned document was served via electronic mail on all counsel of record.

/s/ Justin L. Amos

_____

Justin L. Amos, Esq.

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT DEPARTMENT
                                                 C.A. NO. 2081-CV-02483

SCOTT CULLINANE,                    )
        *Plaintiff,*                )
                                    )                   **RECEIVED**
VS.                                 )
                                    )
TOWN OF CONCORD,                    )
        *Defendant.*                )

## CERTIFICATE OF FILING

The defendant, Town of Concord, pursuant to Superior Court Rule 9A, hereby gives notice to all parties that on January 4, 2023, it filed the following papers with this Court:

- DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS;
- DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS;
- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS & PLAINTIFF'S CROSS MOTION TO AMEND THE COMPLAINT;
- TOWN OF CONCORD'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS AND OPPOSITION TO THE PLAINTIFF'S CROSS-MOTION TO AMEND;
- PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS CROSS-MOTION TO AMEND
- DEFENDANT'S REQUEST FOR HEARING;
- AFFIDAVIT OF COMPLIANCE WITH SUPERIOR COURT RULE 9A;
- LIST OF DOCUMENTS FILED; and
- CERTIFICATE OF FILING.

Respectfully submitted,

The Defendant,

TOWN OF CONCORD

By its Attorney,

/s/ Justin L. Amos

Justin L. Amos, BBO #697232
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jamos@piercedavis.com

## CERTIFICATE OF SERVICE

I, Justin L. Amos, certify that on January 4, 2023, a true copy of the aforementioned document was served via electronic mail on all counsel of record.

/s/ Justin L. Amos

Justin L. Amos, Esq.

## COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                          SUPERIOR COURT DEPARTMENT
                                        C.A. NO. 2081-CV-02483

SCOTT CULLINANE,                    )
        *Plaintiff*,                )
                                    )           **RECEIVED**
VS.                                 )
                                    )
TOWN OF CONCORD,                    )
        *Defendant.*                )

### LIST OF DOCUMENTS FILED

In accordance with Superior Court Rule 9A, the following papers are filed with the Court:

- DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS;
- DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS;
- PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS & PLAINTIFF'S CROSS MOTION TO AMEND THE COMPLAINT;
- TOWN OF CONCORD'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS AND OPPOSITION TO THE PLAINTIFF'S CROSS-MOTION TO AMEND;
- PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF HIS CROSS-MOTION TO AMEND
- DEFENDANT'S REQUEST FOR HEARING;
- AFFIDAVIT OF COMPLIANCE WITH SUPERIOR COURT RULE 9A;
- LIST OF DOCUMENTS FILED; and
- CERTIFICATE OF FILING.

Respectfully submitted,

The Defendant,

TOWN OF CONCORD

By its Attorney,

/s/ Justin L. Amos

Justin L. Amos, BBO #697232
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jamos@piercedavis.com

## CERTIFICATE OF SERVICE

I, Justin L. Amos, certify that on January 4, 2023, a true copy of the aforementioned document was served via electronic mail on all counsel of record.

/s/ Justin L. Amos

Justin L. Amos, Esq.

Date Filed 2/3/2023 11:48:05e 1:23-cv-11526-JEK    Document 7    Filed 07/13/23    Page 119 of 168
Superior Court - Middlesex
Docket Number 2081CV02483

8

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                    SUPERIOR COURT DEPARTMENT
                                                  C.A. NO. 2081-CV-02483

SCOTT CULLINANE,          )                       **RECEIVED**
        *Plaintiff,*      )
                          )
VS.                       )
                          )                       02/03/23
TOWN OF CONCORD,          )
        *Defendant.*      )

## JOINT MOTION TO STAY OR EXTEND DISCOVERY PENDING THE TOWN'S MOTION FOR JUDGMENT ON THE PLEADINGS AND THE PLAINTIFF'S CROSS-MOTION TO AMEND

**NOW COME** the plaintiff Scott Cullinane and the defendant Town of Concord and respectfully request that this Honorable Court stay discovery pending the outcome of the Town's Motion for Judgment on the Pleadings and the plaintiff's Cross-Motion to Amend. Alternatively, the parties request that this Honorable Court enter an order extending discovery and Rule 56 motions by 60 days following this Court's decision on the pending motions. In support thereof, the parties state as follows:

1.  This action involves a retaliation claim under M.G.L. c. 149, § 148A, arising from Cullinane's employment with the Town of Concord.

2.  Cullinane's complaint was filed on or about October 15, 2020, and served on or about November 2, 2020.

3.  The Town filed its answer on or about December 18, 2020.

4.  The parties have engaged in paper discovery.

5.  Each party has experienced a change in counsel. On or about August 23, 2022, Attorney Justin Amos took over representation of the Town. On or about September 12, 2022, Attorney Katherine Shove was added as new counsel for Cullinane.

JB

1

6. On January 4, 2023, the Town filed a Motion for Judgment on the Pleadings, raising sovereign immunity based on then-recent decision of the Massachusetts Appeals Court, Harrison v. MBTA, 101 Mass. App. Ct. 659 (2022), which held that a claim for wage act retaliation against the MBTA is barred by sovereign immunity. [Doc. No. 7-7.1, 7.3]. In response, Cullinane cross-moved for leave to file an amended complaint to assert new claims. [Doc. No. 7.2, 7.4].

7. This Court scheduled a hearing on March 8, 2023. [Order dated 01/10/2023].

8. The discovery deadline is currently scheduled for March 1, 2023. [Order dated 10/14/2022].

9. The parties now seek a stay of discovery pending the outcome of the pending motions. Such a stay will conserve the parties' resources by avoiding taking potentially unnecessary and costly depositions of numerous witnesses. Moreover, the scope of discovery may very well change if the Court grants Cullinane's Cross-Motion for Leave to Amend, which would affect the types and scope of questioning at depositions.

10. In the alternative, the parties request an order extending the discovery deadline by 60 days after this Court issues its rulings on the pending motions and extending the deadline to file Rule 56 motions accordingly.

11. This is the parties' second request to modify the discovery deadline. [Doc. No. 6].

12. Both parties join in this Motion.

13. Neither party would be prejudiced by allowing this motion.

**WHEREFORE**, for the foregoing reasons, the parties jointly request that this Honorable Court either enter a stay of discovery pending resolution of the Town's Motion for Judgment on the Pleadings and the plaintiff's Cross-Motion to Amend, or in the alternative enter an order

extending the discovery deadline to 60 days after this Court issues its rulings on the pending

motions and extend the deadline to file Rule 56 motions accordingly.

Respectfully submitted,

The Plaintiff,

SCOTT CULLINANE

By his attorneys,

**BRODEUR-MCGAN, P.C.**

*/s/ Katharine E. Shove*

Lisa Brodeur-McGan, BBO #556755
Katharine E. Shove, BBO #705877
1380 Main Street, 2nd Floor
Springfield, MA 01103
(413) 735-1775
lbm@brodeurmcgan.com
kes@brodeurmcgan.com

The Defendant

TOWN OF CONCORD

By its attorney,

**PIERCE, DAVIS, & PERRITANO, LLP**

*/s/ Justin L. Amos*

Justin L. Amos, BBO #697232
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jamos@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that on February 3, 2023, a copy of the foregoing document was filed electronically through the e-fileMA Tyler/Odyssey system, and service will be made on registered participants. For any non-registered participants, service will be made by electronic mail as follows:

Lisa Brodeur-McGan, Esq.
Katharine E. Shove, Esq.
**BRODEUR-MCGAN, P.C.**
1380 Main Street, 2nd Floor
Springfield, MA 01103
lbm@brodeurmcgan.com
kes@brodeurmcgan.com

*/s/ Justin L. Amos*

Justin L. Amos

3

Date Filed 3/17/2023 4:08 PM
Superior Court - Middlesex
Docket Number 2081CV02483

Case 1:23-cv-11526-JEK    Document 7    Filed 07/13/23    Page 122 of 168

9

RECEIVED

3/17/2023

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                    SUPERIOR COURT DEPARTMENT
                                 C.A. NO. 2081-CV-02483

H

| | |
|---|---|
| SCOTT CULLINANE, | ) |
| *Plaintiff,* | ) |
| | ) |
| VS. | ) SERVED ELECTRONICALLY |
| | ) |
| TOWN OF CONCORD, | ) |
| *Defendant.* | ) |

### TOWN OF CONCORD'S SUPPLEMENTAL BRIEFING IN SUPPORT OF ITS MOTION FOR JUDGMENT ON THE PLEADINGS

NOW COMES the Defendant, Town of Concord (the "Town") and, pursuant to this Court's

oral order from March 8, 2023, herby submits this Supplemental Briefing in Support of its Motion

for Judgment on the Pleadings and its Opposition to the Plaintiff's Cross-Motion for Leave to

Amend. At oral argument, a dispute arose as to whether the plaintiff, Scott Cullinane, was paid

for a single call-back or no call-back on October 29, 2017.[1] The Town submits two documents[2] in

support of the fact that Cullinane was initially paid for a single call-back: (1) a November 15, 2017

Memorandum from the Public Works Director, attached hereto as Exhibit 1; and (2) an excerpt

FW

_____

[1]    These call-backs are defined in the Collective Bargaining Agreement at § 3.5, as separate from base compensation (§ 3.3) or overtime (§ 3.4). A copy of this provision of the Collective Bargaining Agreement was previously provided as Exhibit 1 to the Town's Motion for Judgment on the Pleadings. Pursuant to the Collective Bargaining Agreement, an employee who is called back receives a minimum number of hours of pay, regardless of the actual time worked, that depends on how much notice was provided prior to the callback: if less than 8 hours' notice, then an employee was paid for a minimum of 4 hours; if more than 8 hours' notice, then an employee was paid for a minimum of 2 hours. See Collective Bargaining Agreement at § 3.5.1.

[2]    Both documents were produced in discovery on or about October 14, 2021, almost *15 months prior* to the Motion for Leave to Amend being filed. Cullinane was therefore well aware, when he prepared his Proposed Amended Complaint, that he was initially paid for a single call back for work performed on October 29. Any contrary allegation in the complaint is clearly belied by the documentary record.

1

from an Independent Investigator Report commissioned by the Town regarding Cullinane's alleged theft of Town property, attached hereto as Exhibit 2.

In the Town's Memorandum, Director Reine summarizes a meeting the Town had with Cullinane and his Union representative, Tish Hopkins. As is expressly stated: "The Town had initially advised you that you would only be compensated for one call-back period on October 29 because you had not been released by Keith Baldinger at the time that he gave you another assignment." See Exhibit 1. Likewise, in the Independent Investigative Report, Attorney Michael Gardner concluded that the Town "agreed only one call-in period should be paid." See Exhibit 2 at ¶ 69.

As both documents make clear, Cullinane was initially paid for a single call back based on the Town's interpretation of the Collective Bargaining Agreement. Because, as this Court noted during oral argument, the issue was one of interpreting a Collective Bargaining Agreement and not of payment for the call backs at all, the proposed Wrongful Termination in Violation of Public Policy count is futile. The Motion for Leave to Amend should be denied.

**WHEREFORE**, the defendant Town of Concord respectfully moves this Honorable Court:

1. Enter an order dismissing the sole count of the plaintiff's Complaint against it, with prejudice;

2. Enter an order denying the plaintiff's request for leave to file an amended complaint; and

3. Grant any other such relief this Honorable Court deems just and proper.

2

Respectfully submitted,

TOWN OF CONCORD

By their Attorney,

**PIERCE, DAVIS & PERRITANO, LLP**

*/s/ Justin L. Amos*

Justin L. Amos, BBO #697232
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jamos@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that on March 17, 2023, a true copy of this document was served upon each attorney of record via electronic mail as follows:

Lisa Brodeur-McGan, Esq.
Katharine Shove, Esq.
**BRODEUR-MCGAN, P.C.**
1380 Main Street, Suite 202
Springfield, MA  01103
(413) 735-1775 x110
lbm@brodeurmcgan.com
kes@brodeurmcgan.com

*/s/ Justin L. Amos*

Justin L. Amos

# Exhibit 1

CONCORD PUBLIC WORKS
DIRECTOR'S OFFICE
133 Keyes Road
Concord, MA 01742

Tel: (978) 318 - 3201
Fax: (978) 287 - 4762



DATE: November 15, 2017

**MEMORANDUM**

TO:        Scott Cullinane, CPW Park and Tree Specialist (Aerial)

FROM:      Richard Reine, Public Works Director

CC:        Dan Rowley, CPW Highway and Grounds Superintendent
           Keith Baldinger, CPW Assistant Highway and Grounds Superintendent
           Patricia Hopkins, CPW, Cemetery Supervisor, Union Representative
           Employee Personnel File

SUBJECT:   OT Call-in Incident on October 29, 2017

Thank you and your union representative Tish Hopkins for meeting with Highway and Grounds Superintendent Dan Rowley and me on November 1st to discuss the overtime call-in issue for a tree incident which occurred beginning at 10:50 PM on October 29th and continuing until 1:25 AM on October 30th. This call-in occurred during an active weather pattern at which time the region experienced high winds and heavy rain during the evening.

The Town had initially advised you that you would only be compensated for one call-back period on October 29 because you had not been released by Keith Baldinger at the time that he gave you another assignment. This concerned you because you had already left the workplace when called for a second assignment and, therefore, you felt that you should be paid for two call-back periods. The purpose of our November 1 meeting was to review the circumstances that led to the difference in opinion regarding how the policy should be applied.

At our meeting, you confirmed that you were initially called-in by Assistant Highway and Grounds Superintendent Keith Baldinger. You explained that after you completed that work you contacted Concord Police by radio and were informed that there were no other issues that they were aware of, so you proceeded to leave the facility. You were contacted again by Keith Baldinger at approximately 12:15 AM at which time you informed Keith that you were almost home. You then returned to Concord to respond to downed trees on Lowell Road and Strawberry Hill Road. This work was completed by 1:25 AM at which time you contacted Keith Baldinger again, as well as the Concord Police, and were released.

Recognizing that there may have been some ambiguity around the circumstances which occurred on October 29th – 30th which led to your leaving after the first call, I have authorized the payment of 2 separate 4 hour call-ins to be processed during this current pay period. I have done this in

Scott Cullinane
November 15, 2017
Page 1 of 2

recognition of an unusual circumstance and with the understanding that it will not set a precedent or past practice for any agreement or action in the future.

To clarify for the future, please be aware that it is the responsibility of each employee to directly contact the supervisor who assigned the call back before leaving. This check-in is required so the supervisor has an opportunity to provide further direction or work assignments before releasing the employee. Based on the individual circumstances of the call-in, it may be necessary to remain on site for the full duration of the 4 hour call-in.

# Exhibit 2

CONFIDENTIAL.  Review for redaction prior to transmittal to other parties or entry into Cullinane personnel record.

**FINAL REPORT**

To:     Amy Foley
        Human Resources Director
        Town of Concord

From:   Michael P. Gardner
        Investigator for the Town of Concord

Re:     Allegations of Possible Misconduct, Public Works Employee Scott Cullinane

Date:   May 5, 2019

**Introduction**

I was hired by the Town of Concord on December 11, 2017 to conduct an independent investigation into allegations that Concord Public Works (CPW) Park & Tree Specialist (Aerial) Scott Cullinane may have violated Town of Concord policies and/or the state Conflict of Interest Law and/or other statutes in connection with work performed on or about December 6 and 7, 2017. There were also allegations that a supervisory employee, Mr. Jeff Koranda, may have been involved. Mr. Koranda's actions were also investigated and are the subject of a separate report.

Scott Cullinane was assigned to remove surplus equipment and other accumulated material from the CPW yard as part of an equipment replacement and general clean-up of the yard ordered by the Public Works managerial staff. Mr. Cullinane was placed on administrative leave with pay on December 7, 2017 pending the investigation. On December 13, 2017, after conferring with Town officials and reviewing documents, I began interviewing employees who may have had information relevant to the investigation. I had no prior knowledge of or involvement with this incident or with any of the Public Works employees involved or interviewed in this matter.

The investigation went into a long hiatus after mid-December 2017, based upon Mr. Cullinane's assertion that he was unable to participate in an interview due to medical reasons. Subsequently, in May 2018 the Town notified Mr. Cullinane that it was recommending his termination based on job abandonment (unauthorized leave and failure to communicate with the Town).  Rather than appear at a hearing scheduled to consider that action, Mr. Cullinane, through counsel, submitted his voluntary resignation from the Town, effective on or about May 10, 2018. The Town subsequently requested that I prepare my final reports on the investigation, based upon the information gathered to date, without interviewing Mr. Cullinane, who never made himself available for interview. This is the report, as relates to Mr. Cullinane.

1

known that it was improper for him to use his position of employment to convert Town
property to his own use.

57.    The Appendix to APP #1 also provides that "No surplus materials may be given away,
auctioned off or otherwise sold without the permission of the Town Manager.

58.    Mr. Cullinane had also previously been counseled that he was not to collect scrap metal
for his own use while working or in connection with his employment. Rod Robison, the
Environmental Services Program Administrator, spoke to him about such behavior during
a Drop-Off & Swap-Off event in the spring or fall of 2008, shortly after Mr. Robison
began working for the Town. One of the volunteer citizen coordinators of that event (the
President of the volunteer group) complained to Mr. Robison that a Town employee was
going through one of the dumpsters at that event removing scrap metal and setting it
aside on the garage floor. Upon investigating, Mr. Robison saw Mr. Cullinane beside the
dumpster. There was a pile of metal near him, including some aluminum downspouts. He
told Mr. Cullinane that a volunteer had seen him taking metal out of the dumpster. Mr.
Cullinane did not deny it. Mr. Robison told him he was not permitted to take metal from
the dumpster. He left Mr. Cullinane to put the metal back in the dumpster. He had no
other contact with Mr. Cullinane over this issue.

59.    As a result of these two specific counseling sessions and Town directives as described
above, Mr. Cullinane knew or should have known it was a violation for him to place the
lift arms and other metal in his truck and take it away on December 6 and 7, 2018

60.    For the same reasons, Mr. Cullinane knew or should have known that such actions
amounted to theft of Town property.

**The Retaliation Defense**

Mr. Cullinane was scheduled for an interview on December 18. This interview was scheduled through his
union counsel. About two hours before the scheduled interview, the Town received notice from another,
private lawyer retained by Mr. Cullinane that "Mr. Cullinane is under the care of his physician and we
believe he is currently medically unable to return to work (we will confirm this with a doctor's note as
soon as this office obtains it)." His counsel further stated that

"…we feel Mr. Cullinane has been retaliated against for asking for wages rightly owed
under law. In short, several weeks ago, Mr. Cullinane earned wages pursuant to his
agreement with the Town. Agents of Concord, Dan Rowley and Keith Baldinger,
conspired to deny Mr. Cullinane those wages. After making a complaint for these wages,
an act protected under Chapter 149, the Town relented and Mr. Cullinane was paid for

15

what he was owed. Just weeks after that, Mr. Rowley made a false criminal complaint against Mr. Cullinane and Mr. Cullinane faced prosecution due to that complaint."

Because at least part of Mr. Cullinane's defense against the allegations that resulted in his being placed on administrative leave appears to be a claim of false charges resulting from an improper motive of retaliation for an assertion of rights, the original scope of the investigation was broadened to include a review of the alleged denial of pay and the subsequent ramifications of that.

Although Mr. Cullinane was unavailable for interview, Mr. Rowley and Mr. Baldinger were interviewed again about this overtime matter. A November 15, 2017 memo from CPW Director Reine to Mr. Cullinane entitled "OT Call-In incident on October 29, 2017" was also reviewed. Based upon this information, and taking into account Mr. Cullinane's failure to make himself available for an interview, even after there was no medical evidence supporting his failure to appear, I have made the following findings of fact concerning Mr. Rowley's and Mr. Baldinger's motivation in reporting what they found in Mr. Cullinane's truck on December 7, 2017 and any possible link between these actions and retaliation against Mr. Cullinane for complaining about his call-in pay.

61. Mr. Cullinane was called during his off-duty hours on the evening of October 29, 2017 and advised there was an overtime opportunity to respond to a tree incident during a windstorm. Mr. Baldinger is the Public Works supervisor who called him. Mr. Cullinane accepted the overtime opportunity and responded. Mr. Baldinger also contacted another employee, Steve Barter, and advised him of the same opportunity. Mr. Barter also accepted and responded.

62. Under Town of Concord rules, employees receive a minimum of four hours pay for such a call-in.

63. Mr. Cullinane was called in at approximately 10:50 pm. He completed his initial assignment in less than ninety minutes. He then contacted the Concord Police Department by radio and was advised that they knew of no other issues he had to deal with. He then left to return to his home.

64. Prior to leaving Mr. Cullinane did not contact Mr. Baldinger, the supervisor who had offered him the work.

65. At approximately 12:15 am Mr. Baldinger contacted Mr. Cullinane to advise him of additional work required by the windstorm. Mr. Cullinane said he was almost home, but turned around, came back to Concord and completed the assigned work by 1:25 am. Mr.

Barter, who had also left without contacting Mr. Baldinger, was also called back by Mr. Baldinger when it was clear there was additional work to be done.

66.  After completing this work, Mr. Cullinane then contacted the Concord Police and Mr. Baldinger and was advised there was no additional work. He then left for home. He was not called in again that morning. Mr. Barter also returned to his home and was not called in again that morning.

67.  For the next pay period, Mr. Cullinane put in for two call-ins (totaling eight hours) for the call-in of October 29-30. Mr. Barter also put in for pay for two call-ins. Mr. Baldinger had not encountered such requests during his time working for the Town. He sought guidance from Mr. Rowley.

68.  Mr. Rowley also did not think there had ever been an incident or claim such as this in his time working with the Town. It was a matter of first impression for each of them.

69.  Mr. Baldinger reviewed the requests with Mr. Rowley, and they agreed only one call-in period should be paid.

70.  Mr. Cullinane complained bitterly to Mr. Baldinger when told he would not be paid for two call-ins. Mr. Baldinger did not argue with him about it, merely restating that this was the direction he had been given. Mr. Barter did not complain.

71.  Mr. Cullinane subsequently made an oral complaint to Amy Foley, the Human Resources Director about not receiving pay for two call-ins. Ms. Foley, who had already been made aware of the dispute by Mr. Reine, advised Mr. Cullinane that Mr. Reine would be in contact with him about the issue.

72.  Although he had not complained, Ms. Foley was also aware that Steve Barter was in the same situation as Mr. Cullinane.

73.  Ms. Foley reviewed the matter with the Public Works Director, the Town Manager, Mr. Rowley, Mr. Cullinane and a union representative.

74.  The Town did not have a clear precedent about addressing Mr. Cullinane's claim for double call-in pay, after he had left the work site without the knowledge or permission of his supervisor.

75.  After this review, the Town agreed to pay for two call-ins, without precedent, citing the fact that there "may have been some ambiguity around the circumstances which occurred on October 29th -30th which led to [Mr. Cullinane] leaving after the first call...."[10]

---

[10] Richard Reine memo to Scott Cullinane 11-15-2017.

**·RECEIVED**

3/24/2023

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH

Middlesex, ss.

Superior Court Department
Civil Action No. 2081-CV-02483

|  |  |
|---|---|
| SCOTT CULLINANE, | **PLAINTIFF'S RESPONSE TO TOWN OF** |
|                   Plaintiff | **CONCORD'S SUPPLEMENTAL** |
| | **BRIEFING** |
| v. | |
| | |
| TOWN OF CONCORD, | |
|                    Defendant | |

NOW COMES Plaintiff Scott Cullinane ("Cullinane") who hereby submits this response to the Town of Concord's ("Town") Supplemental Briefing in Support of its Motion for Judgment on the Pleadings and its Opposition to the Plaintiff's Cross-Motion for Leave to Amend.

Cullinane submits the attached affidavit which reflects what his testimony will be at trial. Cullinane urges this Court to follow the well-established standard for reviewing a motion to amend, accepting as true the factual allegations contained in the complaint and all reasonable inferences favorable to Cullinane which can be drawn from those allegations. *See* Fairneny v. Savogran, 422 Mass. 469, 470 (1996). *See* Eigerman v. Putnam Investments, Inc., 450 Mass. 281, 285-86 (2007) (The question is whether the facts alleged, generously construed in favor of the plaintiff, state a valid legal claim that would warrant relief under any theory of law).[1]

Here, Cullinane has plead in the complaint that after submitting his timesheet, which included the two call-backs, he was informed by his supervisor that he would not be paid for the work he did during the call-backs. The question is not whether he was eventually paid for a single

---

[1] During oral argument, counsel for the Town suggested that the standard is different where the motion to amend is made after discovery. However, depositions have not yet been taken. Notably, depositions may shed more light on this disputed issue.

1

KO

call-back or no-call back, but rather whether he was first informed that he would not be paid at all

for the work he performed. As demonstrated during oral argument and by the parties' supplemental

briefing, whether Cullinane was told that he would be paid for one call-back or no call-back is a

disputed issue of fact for a jury and should not be resolved on a motion to amend.

WHEREFORE, Plaintiff Scott Cullinane respectfully requests that this Honorable Court

grant Cullinane's motion to amend the complaint and any other such relief this Court finds just

and proper.

PLAINTIFF, Scott Cullinane, on his behalf
and on behalf of all other similarly situated
individuals

Date: March 24, 2023               /s/ Katharine E. Shove
_____
Lisa Brodeur-McGan (BBO# 556755)
Katharine E. Shove (BBO# 705877)
Brodeur-McGan, P.C.
1380 Main Street, Suite 202
Springfield, MA  01103
(413) 735-1775; Fax: (413) 735-1772
lbm@brodeurmcgan.com
kes@brodeurmcgan.com


## CERTIFICATE OF SERVICE

I, Katharine E. Shove, do hereby certify that I made service of the foregoing document on
this 24th day of March, 2023, by email AND/OR first class mail, postage prepaid, to: Justin L.
Amos, Esq. (jamos@piercedavis.com), Pierce Davis & Perritano, LLP, 10 Post Office Square,
Suite 1100N, Boston, MA  02109.

/s/ Katharine E. Shove
_____
Katharine E. Shove

Date Filed 3/24/2023 1:45 PM
Superior Court - Middlesex
Docket Number 2081CV02483

Case 1:23-cv-11526-JEK    Document 7    Filed 07/13/23    Page 185 of 168
file:///C:/Users/User/Downloads/Cullinane%20Affidavit%202.pdf

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH

Middlesex, ss.                              Superior Court Department
                                           Civil Action No. 2081-CV-02483

SCOTT CULLINANE,
                    Plaintiff

v.

TOWN OF CONCORD,
                    Defendant

## AFFIDAVIT OF SCOTT CULLINANE IN SUPPORT OF REPLY TO DEFENDANT'S SUPPLEMENTAL BRIEFING

I, Scott Cullinane, making this Affidavit under the pains and penalties of perjury, state that the statements made below are based on my own knowledge or belief:

1. Following the October 29, 2017, call back jobs, I filled out my timesheet for payment for the two calls. I did so because I have been called out for two separate calls approximately twelve times during my 20-year career with the Town of Concord ("Town"), and I have always been paid for two separate calls.

2. Shortly thereafter, I was sitting at my desk in the tree shop when I was approached by Keith Baldinger ("Baldinger"). It is my understanding that Baldinger had spoken with Daniel Rowley ("Rowley") about my timesheet before coming to talk to me.

3. Baldinger slammed my timesheet down on the table and stated, "We're not fucking paying you for this." Because both calls were listed on my timesheet, this statement by Baldinger indicated to me that I would not be paid at all for the work I performed on either call.

4. I advised Baldinger that it was against the law not to pay me and that I would call the Town's Human Resources Director, Amy Foley, about the matter, which I did.

5. Approximately two days later, Baldinger approached me again and said that I would be paid for one call but not two.

Signed under the pains and penalties of perjury this 24 day of March 2023.

_Scott Cullinane_
Scott Cullinane

## COMMONWEALTH OF MASSACHUSETTS

**MIDDLESEX, ss.**

**SUPERIOR COURT**
**CIVIL ACTION**
**NO. 2081CV02483**

### SCOTT CULLINANE,

PLAINTIFF,

**vs.**

### TOWN OF CONCORD,

DEFENDANT.

### MEMORANDUM OF DECISION AND ORDER
### ON DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS
### AND PLAINTIFF'S CROSS[-]MOTION TO AMEND THE COMPLAINT

The plaintiff, Scott Cullinane, brought this one-count Complaint (Paper No. 1) under the Wage Act, G. L. c. 149, § 148A, alleging that his longtime employer, the Town of Concord ("Concord" or "the town"), discharged him in retaliation for complaining that he had not been paid according to the collective bargaining agreement that governed his employment. The town responded by denying Cullinane's allegations and interposing the doctrine of sovereign immunity as a bar to suit. Cullinane disputes that Concord is protected by sovereign immunity. In a cross-motion, he also seeks leave to amend his complaint to add causes of action for unlawful retaliation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3); wrongful termination in violation of public policy; and violation of 42 U.S.C. § 1983. The town urges me to deny the Plaintiff's Cross-Motion to Amend the Complaint ("Cross-Motion" or "Motion to Amend," Paper No. 7.2) as futile. As the town is protected by sovereign immunity against suit under the Wage Act, its Motion for Judgment on the Pleadings ("Motion," Paper No. 7) is **ALLOWED**.

Because the town has not demonstrated that the claims that Cullinane seeks to add to his cause of action are futile, the Cross-Motion to Amend also is **ALLOWED**.

### BACKGROUND[1]

Cullinane began working for the town in 1997 as a grounds specialist. He worked in that capacity until he was terminated in May 2018. The terms of Cullinane's employment were governed by a collective bargaining agreement ("the agreement").[2] In 2017, the agreement provided that Cullinane "was required to be on call for emergencies, such as tree removal due to storm damage." Comp. at ¶ 5. The agreement further provided that Cullinane "was . . . to be paid an extra amount of money for every call to which he responded under certain circumstances." *Id.* at ¶ 6.

On October 29, 2017, Cullinane was not scheduled to work but was called out to remove a tree. He did so and went home. Later that night, he was called out again to another job. He carried out that task and again went home.

At the end of the week, he submitted a claim for additional payment for the two calls. His request for payment was denied, at least initially, by his supervisor, Keith Baldinger. Cullinane objected, and Baldinger repeated that Cullinane would not be paid

---

[1] Unless otherwise noted, the facts in this section are taken from the Complaint and Demand for Jury Trial ("Complaint," Paper No. 1). References to the Complaint are denoted by the abbreviation, "Comp.," followed by a paragraph citation. Additional detail appears in the "Analysis" section as necessary for context. As I must at this stage, I "accept[] the truth of all well-pleaded facts alleged by, and 'draw every reasonable inference in favor of, the [plaintiff] . . . .'" *UBS Financial Servs., Inc.* v. *Aliberti*, 483 Mass. 396, 405 (2019), quoting *Curtis* v. *Herb Chambers I-95, Inc.*, 458 Mass. 674, 676 (2011).

[2] The Complaint does not specify that this was the case. In the Town of Concord's Memorandum of Law in Support of its Motion for Judgment on the Pleadings ("Concord's Memorandum," Paper No. 7.1), references to which are denoted by the abbreviation, "Concord Memo.," followed by a page citation, the town alleges that, at all relevant times, Cullinane's employment was governed by a collective bargaining agreement. At the hearing on the Motion, Cullinane's counsel conceded that this was so. The town appended the Collective Bargaining Agreement Between the Town of Concord and The Teamsters Local Union 25 (Highway & Grounds Division Bargaining Unit) as Exhibit 1 to its Reply Memorandum in Support of its Motion for Judgment on the Pleadings (Paper No. 7.3).

for two separate call-outs. Cullinane complained to Pete Flynn, a town department manager. Also that day, Cullinane called Amy Foley, the town's Director of Human Resources. At a meeting later that week, called by Flynn and attended by Cullinane and several other town officials, Director of Public Works Rich Reine notified Cullinane that the town would pay him according to his submission but there would "not . . . be a next time." Comp. at ¶ 21. At the meeting, Baldinger told Cullinane, "the next time I am going to make you sit there for eight hours even if it takes fifteen minutes and pay you for four." *Id.* at ¶ 23. The town paid Cullinane for the work, but, after that, Baldinger and his supervisor, Dan Rowley "gave Cullinane ugly dagger-like looks as well as the cold shoulder." *Id.* at ¶ 25.

On or about December 5, 2017, Cullinane used his lunch hour to load into his truck scrap items that he had been told by his supervisor the town was going to throw away. Cullinane asked his supervisor if he could take some of the items for himself, and his supervisor said that he could.

Two days later, town officials took several actions. They issued a "No Trespass notice that prohibited Cullinane from 'non-public areas of Town of Concord Facilities, grounds and job sites.'" Comp. at ¶ 50. Also that day, Rowley went to the chief of the Concord Police Department, Joseph O'Connor, and reported that Cullinane was stealing town property. On December 8, 2017, the town suspended Cullinane from his job pending an investigation into allegations that he stole town property. On December 17, 2017, Cullinane was pulled over on his way to work by a Concord police officer. A magistrate who reviewed the Concord Police Department's application for a criminal complaint declined to issue it. On December 19, 2017, the town placed Cullinane on paid Family and Medical Leave Act ("FMLA") leave.

On December 29, 2017, Cullinane filed a workers compensation claim for physical and emotional distress caused by the town's actions against him. On January 16, 2018, the town notified Cullinane that its workers compensation insurer had denied the claim. On May 1, 2018, the town notified Cullinane by letter that Rich Reine, Concord's Public

Works Director had recommended his termination based on "job abandonment." Comp. at ¶ 63. Thereafter, Cullinane resigned his position.

Cullinane filed the Complaint in this case on October 15, 2020. The town filed its Motion on January 4, 2023, along with Cullinane's opposition, which included a cross-motion to amend his Complaint. On March 8, 2023, I conducted a hearing on Concord's Motion and Cullinane's cross-motion and took both under advisement.

ANALYSIS

**I.    The Town of Concord is Protected from Suit Under the Wage Act by the Doctrine of Sovereign Immunity.**

A motion for judgment on the pleadings pursuant to Mass. R. Civ. P. 12(c) "is akin to a motion [to dismiss] under Mass. R. Civ. P. 12[b][6]." *UBS Financial Servs., Inc.,* 483 Mass. at 405 (brackets in original), quoting *Jarosz v. Palmer,* 436 Mass. 526, 530 (2002). Thus, in deciding the motion, a court "accept[s] the truth of all well-pleaded facts alleged by, and 'draw[s] every reasonable inference in favor of, the non-moving party.'" *Id.,* quoting *Curtis,* 458 Mass. at 676. The motion should be denied if the complaint alleges facts "plausibly suggesting (not merely consistent with) an entitlement to relief." *Id.* (parentheses in original), quoting, *inter alia, Iannacchino v. Ford Motor Col,* 451 Mass. 623, 636 (2008).

The town's Motion is based on the application of the doctrine of sovereign immunity, which, if applicable, precludes a court from exercising jurisdiction over the Commonwealth or its subdivisions. See *Vining v. Commonwealth,* 63 Mass. App. Ct. 690, 696 (2005) ("Commonwealth's abrogation of sovereign immunity is treated as consent to jurisdiction"), citing *JA Sullivan Corp. v. Commonwealth,* 397 Mass. 789, 793 (1986). Sovereign immunity protects "the Commonwealth or any of its instrumentalities" from being sued "in its own courts except with its consent . . . ." *Lopez v. Commonwealth,* 463 Mass. 696, 701 (2012), quoting, *inter alia, DeRoche v. Massachusetts Comm'n Against Discrimination,* 447 Mass. 1, 12 (2006). Municipalities, like the Commonwealth, are "protected from liability in . . . civil suit[s] unless [their] sovereign immunity has been waived." *Bain v. City of Springfield,* 424 Mass. 758, 762 (1997). A waiver of sovereign

immunity must be "expressed by the terms of a statute, or [must] appear[] by necessary implication from them." *Randall* v. *Haddad*, 468 Mass. 347, 357 (2014), quoting *Bain*, 424 Mass. at 763. Section 148A of G. L. c. 149 – the anti-retaliation provision of the Wage Act – does not include a waiver of sovereign immunity. See *Harrison* v. *Massachusetts Bay Transp. Auth.*, 101 Mass. App. Ct. 659, 672 (2022), rev. denied, 491 Mass. 1104 (2023).

Cullinane responds by arguing that, under the reasoning in *Harrison*, municipalities are not "public employers" and, therefore, are not entitled to the protection of sovereign immunity. This argument requires little discussion. Municipalities in the Commonwealth are protected by the doctrine of sovereign immunity. *Bain*, 424 Mass. at 762. See also *Cosenza* v. *City of Worcester*, 2023 WL 3868389 at *3 (D. Mass. 2023) ("In contrast [to federal law], Massachusetts' 'internal' sovereign immunity does include municipalities."), citing *Bain*, 424 Mass. at 762. Nothing in the holding or the rationale of *Harrison* suggests – much less holds -- to the contrary.

Because the doctrine of sovereign immunity protects the town from suit under the anti-retaliation provision of the Wage Act, its Motion for Judgment on the Pleadings is **ALLOWED**.

## II.    Because Cullinane's Cross-Motion to Amend His Complaint Is Not Futile, his Cross-Motion is Allowed.

That the town is entitled to judgment on the pleadings as to Cullinane's claim under G. L. c. 149, § 148A, however, does not end the inquiry. This is because, perhaps anticipating this outcome, Cullinane has brought a cross-motion to amend his Complaint. The Cross-Motion seeks to add claims for: wrongful termination in violation of public policy (Count II); unlawful retaliation in violation of the FLSA, 29 U.S.C. § 215(a)(3) (Count III); and "Deprivation of Rights" under 42 U.S.C. § 1983. Because I conclude that the town has not demonstrated that the proposed new claims are futile, the Cross-Motion to Amend is **ALLOWED**.

### A.  The Legal Standard for a Motion to Amend

Leave to amend a pleading "shall be freely given when justice so requires." Mass. R. Civ. P. 15(a). A motion to amend should be allowed unless good cause exists for

denying it. See *Mathis* v. *Massachusetts Elec. Co.*, 409 Mass. 256, 264 (1991), quoting *Castellucci* v. *United States Fid. & Guar. Co.*, 372 Mass. 288, 289 (1977). Examples of good cause to deny a motion to amend include: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of the amendment," among others. *Id.*, quoting *Foman* v. *Davis*, 371 U.S. 178, 182 (1962).

### B. The Claim Under 42 U.S.C. § 1983

At the heart of the town's claim that Cullinane's cause of action under 42 U.S.C. § 1983 is futile is its position that the Concord Police had probable cause to arrest Cullinane for theft of town property. As there was probable cause, the argument proceeds, Cullinane cannot establish that his arrest was retaliatory. Although this argument may prevail at trial – or even on a motion for summary judgment – the town has not established that Cullinane will be unable, through discovery, to establish a claim under 42 U.S.C. § 1983 for retaliatory arrest.

As the town commendably concedes, "the First Amendment [to the United States Constitution] prohibits government officials from subjecting an individual to retaliatory actions, including criminal prosecutions, for speaking out." *Hartman* v. *Moore*, 547 U.S. 250, 256 (2006). As the town also notes, however, in cases of allegedly retaliatory arrests, a plaintiff must "plead and prove the absence of probable cause for the underlying criminal charge." *Nieves* v. *Bartlett*, ___ U.S. ___, 139 S. Ct. 1715, 1723 (2019). "Absent such a showing, a retaliatory arrest claim fails." *Id.*

The flaw in the town's argument on this point is that Cullinane *has* pled that there was no probable cause for his arrest. Indeed, his entire claim is based on his allegation that the town knew that he had been authorized to take for his own use junk that the town was preparing to throw out but caused the police to arrest him nonetheless. If proved, this claim would establish that there was no probable cause for his arrest – a conclusion that the magistrate who refused to issue the criminal complaint in this case apparently already reached.

The town's assertion – correct, as far as it goes – that probable cause is evaluated at the time of arrest is unavailing. Cullinane's claim is that officials of the Concord Public Works Department caused the Police Department to arrest him, all the while knowing that he had been authorized to take the town's castoff items. That the Concord Police – perhaps unaware of what the Public Works officials knew – may well have made the arrest in good faith does not establish that there was probable cause to arrest Cullinane for a crime.

The discovery process may – or may not – produce evidence that supports Cullinane's claim on this point. Under the circumstances *as pleaded*, Cullinane is entitled to discover what each of the relevant DPW officials knew, what information they shared among one another, and what they did – and did not – share with the police. Once Cullinane has that information, he may – or may not – be able to prove his claim that town officials conspired to have him arrested for a crime that they knew he did not commit. If so, he will recover on his civil rights claim under 42 U.S.C. § 1983; if not, he will not.

The town's claim at this preliminary stage, however, that Cullinane's claims are false as a matter of fact is premature. Viewing the pleadings in the light most favorable to the plaintiff and drawing all reasonable inferences in his favor, see *UBS Financial Servs., Inc.*, 483 Mass. at 405 (brackets in original), quoting *Curtis*, 458 Mass. at 676, the town has failed to demonstrate that Cullinane's claim under 42 U.S.C. § 1983 is futile.

### C. The Claim for Retaliatory Termination Under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 215(a)(3)

"The FLSA requires an employer to record, credit, and compensate employees for all of the time which the employer requires or permits employees to work . . . ." *Tum* v. *Barber Foods, Inc.*, 331 F.3d 1, 5 (2003). The statute also "makes it 'unlawful for any person to discharge or in any other manner discriminate against any employee because such employee has filed any complaint' related to the Act." *Claudio-Gotay* v. *Becton Dickinson Caribe, Ltd.*, 375 F. 3d 99, 102 (1st Cir. 2004). Cullinane's claim is not that the town violated the FLSA by failing to pay him for the two times he was called out while not at work.

Indeed, he concedes that, after he complained, he was, in fact, paid as required by the collective bargaining agreement. Instead, he claims that he was wrongfully terminated, under 29 U.S.C. § 215(a)(3) in retaliation for having complained about the town's initial denial of his request for pay.

The town's response that it did not violate the FLSA because it ultimately agreed to pay Cullinane what he contended he was owed is beside the point. The issue presented is not whether the town ultimately paid but, rather, whether it retaliated against Cullinane for having complained in the first place. Similarly, the town's claim that Cullinane's initial complaint that his request for pay was denied did not concern the protections of the FLSA also is unpersuasive. The town takes language from the Massachusetts Practice volume on Municipal Law and Practice (18 Mass. Prac., Municipal Law and Practice § 10.12 (5th ed. 2022), citing 29 U.S.C. § 207(a)(1)), and attempts to use it to limit the scope of the FLSA's protections. As noted above, however, the FLSA "requires an employer to . . . compensate employees for all of the time which the employer requires . . . employees to work . . . ." *Tum*, 331 F.3d at 5. In this case, Cullinane's initial complaint, which he took up the chain of command in the town, was that Concord was refusing to pay him for all the time that it had required him to work.

The FLSA prohibits retaliating against an employee who asserts a claim under the statute. See 29 U.S.C. § 215(a)(3), *Claudio-Gotay* 375 F.3d at 102. "The elements of a retaliation claim under the FLSA require, at a minimum, a showing that (1) the plaintiff engaged in a statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in protected activity." *Claudio-Gotay*, 375 F.3d at 102, citing *Blackie* v. *Maine*, 75 F.3d 716, 722 (1st Cir. 1996). The town has not demonstrated that the well-pleaded allegations in Cullinane's proposed amended complaint fail to make out these three elements as a matter of law. Thus, I conclude that the town has not established that this claim is futile.

### D. The Claim for Wrongful Termination in Violation of Public Policy

Finally, Cullinane's proposed cause of action for wrongful termination in violation of public policy presents an apparently novel question -- whether an employer,

particularly a unit of government, can be liable for wrongful termination in violation of public policy for using unlawful means to effect the termination. As the town notes, a cause of action for wrongful termination in violation of public policy requires that the termination at issue violate a "well[-]defined public policy principle." *Mello* v. *Stop & Shop Companies, Inc.*, 402 Mass. 555, 560 (1988). A firing for complaining about "internal matters," does not satisfy the requirements of the claim. *Id.* See *Meehan* v. *Medical Info. Tech., Inc.*, 488 Mass. 730, 733 (2021) ("[T]he internal administration, policy, functioning, and other matters of an organization cannot be the basis for a public policy exception to the general rule that at-will employees are terminable at any time with or without cause."), quoting, *inter alia*, *King* v. *Driscoll*, 418 Mass. 576, 582 (1994), S.C. 424 Mass. 1 (1996).

Cullinane contends that the town fired him in retaliation for his complaint that he was being denied pay for having been called out twice, separately on the same night. As Cullinane concedes that he was paid after he complained, however, the heart of his claim is that he was fired in retaliation for having complained. At first blush, this might appear to be an "internal matter" that is not comparable to cases in which terminations have been found to have violated public policy.

A closer look, however, suggests that the town's alleged actions in this case may well, in fact, constitute a violation of public policy. In *Mello*, the Supreme Judicial Court rejected a claim for wrongful termination. The plaintiff/employee alleged that he was fired for reporting "false claims against manufacturers and suppliers" made by fellow Bradlees employees. 402 Mass. at 561. In rejecting the plaintiff's claim, the SJC observed that, "[w]e are not dealing here . . . with a case in which the employer discharged an employee because the employee threatened to report the employer's criminal conduct to the authorities, nor are we concerned here with a case in which the employee was discharged because he agreed to testify against a fellow employee and to cooperate with law enforcement authorities . . . ." *Id.* at 559, citing *Palmateer* v. *International Harvester Co.*, 421 N.E. 2d 876 (Ill. 1981).

If, indeed, Cullinane can prove that the town procured his arrest on false pretenses – a question as to which I offer no view – then the case is much closer to the hypothetical situations postulated in *Mello* as examples of violation of public policy. In other words, a municipality's use of a false arrest to provide a basis to fire an employee without cause seems much closer to the examples of violations of public policy imagined by the SJC in *Mello* than to the cases that have denied causes of action based on purely internal matters.

Once again, this analysis circles back to the question whether Cullinane can prove his claims that the town acted in bad faith in arresting him and seeking to charge him with theft of town property. If he can, then his claim for wrongful termination in violation of public will succeed. If not, it will fail. He is, however, entitled to discovery to uncover whatever evidence there is, if any, to support his claim.

CONCLUSION

For the foregoing reasons, the Town of Concord's Motion for Judgment on the Pleadings is **ALLOWED,** and Cullinane's claim under the Wage Act is **DISMISSED**. Cullinane's Cross-Motion to Amend is also **ALLOWED**.

David A. Deakin
Justice of the Superior Court

June 27, 2023

10

# 12

COMMONWEALTH OF MASSACHUSETTS
TRIAL COURT OF THE COMMONWEALTH

Middlesex, ss.                                          Superior Court Department
                                                       Civil Action No. 2081-CV-02483

SCOTT CULLINANE,
                    Plaintiff
                                          **AMENDED COMPLAINT AND DEMAND**
                                                 **FOR JURY TRIAL**
v.

TOWN OF CONCORD                                              **RECEIVED**
                    Defendant                               06/30/2023

## **THE PARTIES**

1.    Scott Cullinane ("Cullinane") is a natural person residing in Lexington, Middlesex County,

      Massachusetts.

2.    The Town of Concord, Massachusetts ("Town") is a duly established municipality in the

      Commonwealth, located in Middlesex County, Massachusetts.

## **FACTS COMMON TO ALL COUNTS**

3.    Cullinane was a long-time employee of the Town.

4.    Specifically, since 1997 Cullinane was employed as a grounds specialist performing tree

      maintenance and removal, grounds work, and aerial lift operation work, a position in the

      Town's Department of Public Works ("DPW").

5.    In his role as a grounds specialist, Cullinane was required to be on call for emergencies,

      such as tree removal due to storm damage.

6.    As part of his employment agreement, Cullinane was supposed to be paid an extra amount

      of money for every call to which he responded under certain circumstances.

ac

7.  In October 2017, the Department of Public works was overseen by Daniel Rowley ("Rowley") and Rowley's assistant, Keith Baldinger ("Baldinger").

8.  On a day in the late fall of 2017, on or about October 29, Cullinane was not scheduled to work but was on call for the Town.

9.  On or about that date, Cullinane was called to a job to remove a tree.

10. Cullinane completed the job and after being cleared from this call by his supervisor, Cullinane left the site and proceeded home.

11. On the same night after Cullinane returned home, he was called again to another job for the Town.

12. Cullinane went to the second job, completed the work, and went home.

13. At the end of the week, Cullinane put in for payment for the two calls.

14. Cullinane reasonably believed that payment for the two calls was owed to him as wages under his employment agreement with the Town.

15. After Cullinane submitted his timesheet, Baldinger came into work area where Cullinane was sitting, slammed the time sheet paper on Cullinane's desk, and stated "we are not fucking paying you for this."

16. Cullinane responded that he had been called out twice and these were wages due under the agreement.

17. Baldinger repeated that he was not paying Cullinane for the two calls, to which Cullinane responded that he had to, it was "illegal" and that he had worked the calls and would complain to the Town administrators about this pay issue.

18. Indeed, Cullinane immediately verbally complained about the above referenced events to Pete Flynn ("Flynn"), a Town department manager.

19.    On the same day, Cullinane complained about the above-referenced events by reporting them by phone to the Town's Human Resource Director, Amy Foley ("Foley").

20.    Cullinane advised both Flynn and Foley that his wages were due and owed to him under his employment agreement with the Town.

21.    Foley stated that she would look into it.

22.    Days later, Flynn advised Cullinane to come into the lunchroom at work early to once again discuss this pay issue.

23.    Cullinane's supervisors, Baldinger and Rowley, as well as the Director of Public Works, Rich Reine ("Reine"), were in attendance.

24.    During this meeting, Reine told Cullinane that "we are going to pay you" but there is not going to be a next time.

25.    At this meeting both Baldinger and Rowley were visibly agitated and angry.

26.    At one point after this meeting on the same day, Baldinger threatened Cullinane and stated, "the next time I am going to make you sit there for eight hours even if it takes you fifteen minutes and pay you for four."

27.    Cullinane stated once again that such was not legal, nor would it motivate him to come into work in the middle of the night to take care of an emergency call.

28.    The Town ultimately paid Cullinane for this work, but thereafter his supervisors, Baldinger and Rowley, gave Cullinane ugly dagger-like looks as well as the cold shoulder.

29.    On or about December 5, 2017, Cullinane was working for the Town at the direction of his supervisors cleaning up assorted piles of scrap in the Town yard that the Town was throwing in the trash.

3

30. Doing this work, Cullinane was working under Jeffrey Koranda ("Koranda"), a line supervisor with the Town's Highway Department.

31. Koranda directed Cullinane to put the trash in a dumpster so that it could be taken away.

32. In doing this work, Cullinane came across several items of scrap that he believed would be useful to him in his home and as scrap metal.

33. Given that the items were just going to be thrown away, Cullinane asked Koranda if he could take some of the pieces.

34. Koranda told Cullinane to take whatever he wanted because it was just going to be thrown out, but to do so on his own time.

35. Specifically, Koranda told Cullinane to "take what you want" and confirmed that it was "trash."

36. With Koranda's permission, Cullinane took the trash and placed it in the back of his truck during his lunchtime which was "his own time."

37. Cullinane did not conceal or hide this trash and it remained in the back of his truck open and visible from December 7, 2017.

38. At some point, Rowley and Baldinger saw that Cullinane had the scrap in his truck.

39. On or about December 7, 2017, Rowley reported to the Town's Chief of Police, Joseph O'Connor ("Chief O'Connor"), that Cullinane was stealing the Town's property.

40. Neither Rowley nor Baldinger ever asked Cullinane if he had permission to take the items.

41. In fact, Rowley and Baldinger never asked Cullinane anything about the items before Rowley reported this event as a "crime" to Chief O'Connor.

42. At the time Rowley and Baldinger reported this "crime," the items had been in Cullinane's truck for two days and no one else from the Town had said anything to Cullinane, despite

4

the fact that Cullinane was going back to the Town yard to continue the clean up each day and the items were open and obvious.

43.  As a result of Rowley's report to O'Connor, on December 17, 2017, Cullinane was arrested in a highly public and unusual manner.

44.  Cullinane was pulled over by a police cruiser while on his way into the DPW about 500 yards from the DPW.

45.  Cullinane was placed in handcuffs by the arresting officers and placed in a back of a cruiser and transported to the jail.

46.  Officers in the police department hearing of the order to arrest Cullinane refused to participate in the call, and the arresting officers apologized for their part in this plan.

47.  Upon information and belief, the scrap had no value and, in any event, had a value of less than $250.00.

48.  Upon information and belief, it was custom and practice for the Town to seek a criminal complaint or show cause on such "crimes" and not to place a person under arrest in the manner Cullinane experienced.

49.  At all times relevant, the Town's agents did not act in good faith, nor did they have a good faith belief in its report of a "crime."

50.  The Town's agents, with improper motive, sought application for a criminal complaint drafted against Cullinane.

51.  The hearing on their application for a criminal complaint proceeded on the Monday after the December 17, 2021, arrest.

52. Based on the evidence presented at hearing, which mirrored the facts as stated above, the magistrate who heard the matter declined to issue a criminal complaint, calling the situation "ridiculous."

53. The magistrate also made statements that should have alerted the Town that its allegations of a crime were frivolous and fraudulent and should not be pursued.

54. Despite the magistrate's colloquy, the Town continued to correspond with Cullinane, allowing the threat of future criminal action to linger over his head.

55. On December 7, 2017, the Town issued other legal process against Cullinane, including a No Trespass notice that prohibited Cullinane from "non-public areas of Town of Concord Facilities, grounds and job sites."

56. On or about December 8, 2017, the Town also suspended Cullinane from his job pending an "investigation" concerning the removal of the trash.

57. Rowley and Baldinger maliciously and falsely accused Cullinane of theft in retaliation for Cullinane's wage claim/petitioning activity.

58. Based on information and belief, the manner of the arrest was a deviation from routine Town and police practices, especially in light of the fact that Cullinane was a longstanding, highly respected "integral" part of the Town DPW team.

59. As a result of the Town's above conduct resulting from Cullinane's exercised his wage and hour rights under Chapter 149, Cullinane suffered personal injuries (workers compensation injury), including but not limited to insomnia, high blood pressure, shortness of breath, dizziness, nausea, loss of appetite, and other gastrointestinal issues.

60. Cullinane also suffered significant emotional distress.

61. Cullinane's physical and emotional condition prevented him from working.

62.    As a result, Cullinane sought a medical leave of absence.

63.    On December 19, 2017, the Town placed Cullinane "provisionally" on a leave of absence under the Family and Medical Leave Act.

64.    On or about December 29, 2017, Cullinane notified the Town's Human Resources Director of his workers compensation injuries arising out of the above-referenced conduct.

65.    The Town acknowledged on January 16, 2018, that the claim had been "filed electronically" with the state and that the insurer had already "denied" the claim.

66.    While Cullinane was out on his leave of absence, the Town continued to retaliate, harass, and threaten him.

67.    On May 1, 2018, the Town notified Cullinane by way of a letter that Public Works Director Reine recommended his termination based on "job abandonment" and notified Cullinane that they intended to have a hearing on the matter.

68.    In this same letter, the Town again alluded to its ongoing "investigation" and criminal prosecution, and its "right to act on that matter if circumstances warrant."

69.    The letter instructed that Cullinane could not bring an attorney to this job abandonment hearing.

70.    The letter was ongoing retaliation due to fact that Cullinane exercised his wage and hour rights under Chapter 149 and for his complaints to both management and Human Resources.

71.    The Town caused the constructive discharge of Cullinane and/or terminated Cullinane in in May 2018 in violation of a well-defined public policy.

72.    No reasonable person could or would have returned to this workplace given the Town's conduct and ongoing threats of malicious prosecution, and no reasonable person with an

ongoing threat of criminal prosecution would have "testified" in the Town's planned hearing referenced in its May 1, 2018, letter.

73.   After the letter of May 1, 2018, Cullinane knew he would not get due process for any of the legitimate concerns he had and resigned.

74.   The Town's accepted Cullinane's "resignation" and discharged him, advising him that their investigation results would be placed in his personnel file.

75.   The Town knew or should have known that Cullinane's absence from work was caused by the Town's illegal, improper, and retaliatory conduct.

76.   At all times relevant, Cullinane had met or exceeded his performance standards.

77.   Cullinane's constructive discharge/termination was in retaliation for claiming/reporting his rightfully owed wages or, in the alternative, for his petitioning activity surrounding his right to be paid for his work and his right to be compensated for injuries sustained arising out of his complaint process.

78.   At all times relevant, there was a strong public policy supporting the right to be paid for work performed and/or the right to complain of the failure to be paid for work performed.

79.   At all times relevant, the Town had previously been sued specifically for wage and hour violations and for retaliation in response to complaints for failure to pay wages.

**COUNT I**
**Wrongful Termination in Violation of Public Policy**

80.   Cullinane repeats and re-alleges paragraphs 1-79 above and incorporates same by reference as if originally stated herein.

81.   Cullinane complained to agents of the Town, his employer, about wages rightfully owed to him under state and federal law.

8

Date Filed 6/30/2023 12:00 PM
Superior Court - Middlesex
Docket Number 2081CV02483

82. At all times relevant, Cullinane had a good faith belief that these monies were owed and were wages within meaning of the law.

83. After Cullinane made the complaints, the Town retaliated against Cullinane by wrongfully accusing him of a crime without probable cause and in bad faith, arresting him in a highly unusual and public manner, treating him poorly while out on medical leave, issuing a no trespass order, and ultimately terminating him.

84. By these actions, the Town constructively discharged/terminated Cullinane in violation of a well-defined public policy.

85. As a result, Cullinane suffered severe emotional distress, bodily injuries, economic harm, lost wages, and earning capacity, incurred attorney fees, and suffered other damages.

## COUNT II
### Unlawful Retaliation in Violation of the Fair Labor Standards Act of 1938, 29 U.S.C. § 215(a)(3)

86. Cullinane repeats and re-alleges paragraphs 1-85 above and incorporates same by reference as if originally stated herein.

87. At all times relevant, the Town employed Cullinane within the meaning of the Fair Labor Standards Act ("FLSA").

88. The Town is a municipal corporation.

89. 29 U.S.C. § 215(a)(3) prohibits an employer from discharging or discriminating against an employee for exercising rights under the FLSA.

90. Cullinane complained to agents of the Town, his employer, that he had not been paid wages rightfully owed to him under the FLSA.

91. At all times relevant, Cullinane had a good faith belief that these monies were owed and were wages within the meaning of the law.

92. After Cullinane made those complaints, the Town retaliated against Cullinane by wrongfully accusing him of a crime without probable cause and in bad faith, arresting him in a highly unusual and public manner, treating him poorly while out on medical leave, issuing a no trespass order, and ultimately terminating him.

93. The Town's conduct violated 29 U.S.C. § 215(a)(3).

94. As a result of the Town's retaliatory conduct, Cullinane suffered severe emotional distress, bodily injuries, economic harm, lost wages, and earning capacity, loss of reputation, incurred attorney fees, and suffered other damages.

## COUNT III
## Deprivation of Rights, 42 U.S.C. § 1983

95. Cullinane repeats and re-alleges paragraphs 1-94 above and incorporates same by reference as if originally stated herein.

96. At all times relevant, Baldinger, Rowley, and Reine were supervisory agents of the DPW of the Town in relation to the above referenced allegations.

97. The Town is a municipal corporation.

98. At all times relevant, The Town's supervisory agents, Reine, its human resource agents, and others, had an obligation to supervise, train and discipline its agents: (a) to prevent violations of clearly established state and federal laws regarding pay (payment for work performed); and (b) to protect employees from retaliation from its agents arising out of good faith complaints concerning state and federally protected wage rights.

99. The Town had prior notice of similar wage and hour/retaliation complaints and, specifically, Cullinane's complaints that it failed to act upon the same in any manner.

10

100.    The Town's failure to train, supervise, or discipline its agents despite notice in areas of the
        law that are federally/constitutionally protected such as the right to pay, demonstrates
        deliberate indifference.

101.    The Town, acting under color of law, deprived Cullinane of his federally protected right to
        pay and his rights to due process as protected by the Fourteenth Amendment of the United
        States Constitution.

102.    The Town's conduct demonstrated a deliberate indifference to Cullinane's rights, including
        his rights to: (a) pay under federal and state laws; (b) his right to petition or complain about
        the Town's refusal to pay him in violation of state or federal law; (c) Cullinane's right to
        complain about the Town's conduct as referenced above and to be free of threats
        intimidation or coercion in connection with his request for payment for time worked; (d)
        Cullinane's right to due process in connection with public employment; and (e) Cullinane's
        right to be free from an arrest made without probable cause and in bad faith with the motive
        to retaliate against Cullinane for his constitutionally and federally protected speech.

103.    Cullinane had a right to be free from retaliatory conduct and the right to be free from a
        retaliatory arrest which violated the Fourth and Fourteenth Amendments of the United
        States Constitution.

104.    The Town's conduct concerning the arrest not only lacked good faith, but also lacked any
        form of due process owed to Cullinane.

105.    The Town's conduct as described above demonstrated and was part of the Town's custom,
        policy, and official practice.

106.    The Town's conduct, in connection with its response to Cullinane's complaint about his
        wages, his arrest and his ultimate termination, was conscience shocking and exhibited not

11

only deliberate indifference to Cullinane's rights but intentional interference with the

Cullinane's substantive and procedural due process rights.

107.    As such, the Town deprived Cullinane of a federally protected right in violation of 42

U.S.C. § 1983.

108.    As a result of the Town's violation of 42 U.S.C. § 1983, Cullinane suffered harm including

retaliatory arrest, personal injuries, emotional distress, constructive discharge, violation of

due process, harm to reputation, incurred attorney fees and otherwise suffered harm.

**WHEREFORE,** Plaintiff, Scott Cullinane, demands judgment as against Defendant,

Town of Concord, in an amount the Court deems just, including but not limited to equitable relief

for emotional distress damages, damages to reputation, personal injury in connection with

retaliatory and unconstitutional arrest, reinstatement with back pay, front pay, loss of retirement

and other benefits, and any other relief that this Court deems appropriate, including compensatory

damages, punitive damages, attorney fees, and interest.

### PLAINTIFF HEREBY DEMANDS A JURY TRIAL ON ALL TRIABLE ISSUES.

PLAINTIFF, Scott Cullinane, on his behalf
and on behalf of all other similarly situated
individuals

Date: June 30, 2023                          */s/ Katharine E. Shove*

Lisa Brodeur-McGan (BBO# 556755)
Katharine E. Shove (BBO# 705877)
Brodeur-McGan, P.C.
1380 Main Street, Suite 202
Springfield, MA 01103
(413) 735-1775; Fax: (413) 735-1772
lbm@brodeurmcgan.com
kes@brodeurmcgan.com

CERTIFICATE OF SERVICE

I, Katharine E. Shove, do hereby certify that I made service of the foregoing document on this 30th day of June, by email AND/OR first class mail, postage prepaid, to: Justin L. Amos, Esq. (jamos@piercedavis.com), Pierce Davis & Perritano, LLP, 10 Post Office Square, Suite 1100N, Boston, MA 02109.

/s/ Katharine E. Shove

_____

Katharine E. Shove

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                      SUPERIOR COURT DEPARTMENT
                                                    C.A. NO. 2081-CV-02483

| | |
|---|---|
| SCOTT CULLINANE, | ) |
| *Plaintiff,* | ) |
| | ) |
| VS. | ) |
| | ) |
| TOWN OF CONCORD, | ) |
| *Defendant.* | ) |

**RECEIVED**

7/7/2023

## NOTICE OF FILING OF NOTICE OF REMOVAL

Please take notice that a Notice of Removal, a true and correct copy of which is attached

hereto as Exhibit 1, was filed by the defendant Town of Concord in the office of the Clerk of the

United States District Court for the District of Massachusetts on July 7, 2023, relative to the

removal and transfer of the above-captioned action. The Certified Notice of Removal from the

Clerk of the United States District Court for the District of Massachusetts is attached hereto as

Exhibit 2.

mr

Respectfully submitted,

The Defendant,

TOWN OF CONCORD,

By its attorneys

**PIERCE, DAVIS & PERRITANO, LLP**

*/s/ Justin L. Amos*

John J. Cloherty, III, BBO #566522
Justin L. Amos, BBO #697232
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jcloherty@piercedavis.com
jamos@piercedavis.com

Dated: July 7, 2023

## CERTIFICATE OF SERVICE

I, Justin L. Amos, certify that on July 7, 2023, a true copy of the aforementioned document was served on all counsel of record via electronic mail.

*/s/ Justin L. Amos*

Justin L. Amos, Esq.

# EXHIBIT 1

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SCOTT CULLINANE,                    )
    *Plaintiffs*,                  )
                                    )
VS.                                 )
                                    )   C.A. NO. 23-11526
TOWN OF CONCORD,                    )
    *Defendants.*                  )

## NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT
## 28 U.S.C. § 1441(a)

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS:

      Petitioner, Town of Concord (the "Town") respectfully petitions this Honorable Court,

pursuant to 28 U.S.C. § 1441(a), for removal of the above-entitled action to the United States

District Court for the District of Massachusetts, Civil Section, from the Superior Court of the

Commonwealth of Massachusetts in and for the County of Middlesex, and for its Notice of

Removal states as follows:

      1.    The Town is named as a defendant by the plaintiff, Scott Cullinane in a civil action

filed in the Superior Court of the Commonwealth of Massachusetts in and for the County of

Middlesex, entitled Scott Cullinane v. Town of Concord, Middlesex Superior Court, C.A. No.

2081-CV-02483. The matter began as a single count alleging violation of the Massachusetts Wage

Act, M.G.L. c. 249, § 148A. On January 4, 2023, the Town moved for judgment on the pleadings

and the plaintiff cross-moved for leave to amend. The Superior Court, (Deakin, J.) granted both

motions on June 27, 2023, and the decision was docketed on June 29, 2023. The Amended

Complaint was filed on June 30, 2023. See Exhibit 1. The Town has not yet answered or otherwise

responded to said Amended Complaint. There are no pending motions.

2.      This is a suit of a wholly civil nature brought in a Massachusetts state court. The action is pending in the Superior Court of the Commonwealth of Massachusetts in and for the County of Middlesex and, accordingly, under 28 U.S.C. § 101 and § 1441(a), the United States District Court for the District of Massachusetts is the proper forum for removal.

3.      In Count III of his Amended Complaint, the plaintiffs allege that the Town violated the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3). In Count IV of his Amended Complaint, the plaintiff alleges that the Town violated 42 U.S.C. § 1983.

4.      Because this civil action arises under the Constitution and laws of the United States, the United States District Court has original jurisdiction under 28 U.S.C. § 1331.

5.      This Court has supplemental jurisdiction over Count I of this civil action under 28 U.S.C. § 1367(a).

6.      The Town is filing this Notice of Removal within thirty days of the date this action became removable and within the time for filing this petition.  See 28 U.S.C. § 1446(b)(1).

7.      The Town will file a Notice of Filing of this Notice of Removal and a copy of this Notice of Removal with the Clerk of the Superior Court of Massachusetts, County of Middlesex.

8.      Pursuant to Local Rule 81.1(a), the Town shall request of the Clerk of the Superior Court of Massachusetts, County of Middlesex, certified or attested copies of all records and proceedings in the state court and certified or attested copies of all docket entries therein and shall file the same with this Court within thirty days after the filing of this Notice of Removal.

**WHEREFORE**, the petitioner, Town of Concord prays that the above-entitled action now pending in the Superior Court of the Commonwealth of Massachusetts in and for Middlesex County be removed from that Court to this United States District Court.

2

Respectfully submitted,

The Defendant,

TOWN OF CONCORD,

By their Attorneys,

**PIERCE DAVIS & PERRITANO** LLP

*/s/ Justin L. Amos*

John J. Cloherty, III, BBO #566522
Justin L. Amos, BBO #697232
Collen M. Howard, BBO #710250
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jcloherty@piercedavis.com
jamos@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on July 7, 2023.

*/s/ Justin L. Amos*

Justin L. Amos, Esq.

3

# EXHIBIT 2

Date Filed 7/7/2023 1:26 Case 1:23-cv-11526-JEK    Document 7    Filed 07/13/23    Page 166 of 168
Superior Court - Middlesex    Case 1:23-cv-11526-FDS    Document 2    Filed 07/07/23    Page 1 of 3
Docket Number 2081CV02483

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Certified to be a true and
correct copy of the original
Robert M. Farrell, Clerk
U. S. District Court
District of Massachusetts
By: _____
Deputy Clerk

Date: 07/07/2023

SCOTT CULLINANE,                    )
     *Plaintiffs*,               )
                                 )
VS.                                 )
                                 )    C.A. NO. 23-11526
TOWN OF CONCORD,                    )
     *Defendants*.               )

**NOTICE OF REMOVAL TO THE UNITED STATES DISTRICT COURT**
**28 U.S.C. § 1441(a)**

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MASSACHUSETTS:

       Petitioner, Town of Concord (the "Town") respectfully petitions this Honorable Court,

pursuant to 28 U.S.C. § 1441(a), for removal of the above-entitled action to the United States

District Court for the District of Massachusetts, Civil Section, from the Superior Court of the

Commonwealth of Massachusetts in and for the County of Middlesex, and for its Notice of

Removal states as follows:

       1.    The Town is named as a defendant by the plaintiff, Scott Cullinane in a civil action

filed in the Superior Court of the Commonwealth of Massachusetts in and for the County of

Middlesex, entitled <u>Scott Cullinane v. Town of Concord,</u> Middlesex Superior Court, C.A. No.

2081-CV-02483. The matter began as a single count alleging violation of the Massachusetts Wage

Act, M.G.L. c. 249, § 148A. On January 4, 2023, the Town moved for judgment on the pleadings

and the plaintiff cross-moved for leave to amend. The Superior Court, (Deakin, J.) granted both

motions on June 27, 2023, and the decision was docketed on June 29, 2023. The Amended

Complaint was filed on June 30, 2023. See <u>Exhibit 1</u>. The Town has not yet answered or otherwise

responded to said Amended Complaint. There are no pending motions.

Date Filed 7/7/2023 1:26 PM
Superior Court - Middlesex
Docket Number 2081CV02483    Case 1:23-cv-11526-JEK    Document 7    Filed 07/13/23    Page 167 of 168
Case 1:23-cv-11526-FDS    Document 2    Filed 07/07/23    Page 2 of 3

2.     This is a suit of a wholly civil nature brought in a Massachusetts state court. The action is pending in the Superior Court of the Commonwealth of Massachusetts in and for the County of Middlesex and, accordingly, under 28 U.S.C. § 101 and § 1441(a), the United States District Court for the District of Massachusetts is the proper forum for removal.

3.     In Count III of his Amended Complaint, the plaintiffs allege that the Town violated the Fair Labor Standards Act, 29 U.S.C. § 215(a)(3). In Count IV of his Amended Complaint, the plaintiff alleges that the Town violated 42 U.S.C. § 1983.

4.     Because this civil action arises under the Constitution and laws of the United States, the United States District Court has original jurisdiction under 28 U.S.C. § 1331.

5.     This Court has supplemental jurisdiction over Count I of this civil action under 28 U.S.C. § 1367(a).

6.     The Town is filing this Notice of Removal within thirty days of the date this action became removable and within the time for filing this petition.  See 28 U.S.C. § 1446(b)(1).

7.     The Town will file a Notice of Filing of this Notice of Removal and a copy of this Notice of Removal with the Clerk of the Superior Court of Massachusetts, County of Middlesex.

8.     Pursuant to Local Rule 81.1(a), the Town shall request of the Clerk of the Superior Court of Massachusetts, County of Middlesex, certified or attested copies of all records and proceedings in the state court and certified or attested copies of all docket entries therein and shall file the same with this Court within thirty days after the filing of this Notice of Removal.

**WHEREFORE**, the petitioner, Town of Concord prays that the above-entitled action now pending in the Superior Court of the Commonwealth of Massachusetts in and for Middlesex County be removed from that Court to this United States District Court.

Date Filed 7/7/2023 1:26 PM
Superior Court - Middlesex
Docket Number 2081CV02483

Case 1:23-cv-11526-JEK    Document 7    Filed 07/13/23    Page 168 of 168
Case 1:23-cv-11526-FDS    Document 2    Filed 07/07/23    Page 3 of 3

Respectfully submitted,

The Defendant,

TOWN OF CONCORD,

By their Attorneys,

**PIERCE DAVIS & PERRITANO** LLP

*/s/ Justin L. Amos*

John J. Cloherty, III, BBO #566522
Justin L. Amos, BBO #697232
Collen M. Howard, BBO #710250
10 Post Office Square, Suite 1100N
Boston, MA 02109
(617) 350-0950
jcloherty@piercedavis.com
jamos@piercedavis.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing, filed through the Electronic Case Filing System, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing and that a paper copy shall be served upon those indicated as non-registered participants on July 7, 2023.

*/s/ Justin L. Amos*

Justin L. Amos, Esq.

3